## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

TINA PETERS

      Plaintiff,

v.

UNITED STATES OF AMERICA,
MERRICK B. GARLAND, Attorney General of the United States in his official capacity,
JENA GRISWOLD, Colorado Secretary of State, in her official capacity, and
DANIEL P. RUBINSTEIN, District Attorney of the Twenty-First Judicial District, in his official capacity,

      Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

1.    This is an action for declaratory and injunctive relief seeking to prohibit the United States and its agents and agents of the State of Colorado from conducting criminal and other proceedings against Plaintiff, Tina Peters, for the unlawful purpose of retaliating against her:

    (a) for exercising her freedom of speech, freedom of association, and her right to petition the government for the redress of grievances, which are

1

guaranteed by the First Amendment and the Fourteenth Amendment of the Constitution of the United States, and

(b) for her efforts, as Mesa County Clerk and by law the designated election official, to preserve election records in compliance with federal and state law in violation of her right to due process of law and her privileges and immunities as a citizen of the United States guaranteed by the Fourteenth Amendment of the Constitution of the United States.

2.  This action is grounded on the elementary proposition of law that a command of a state officer, in whatever form, which as applied would compel a county official to violate a federal or state statute has no standing as a legitimate, legally binding command, and so has no force or effect. And when that command is designed to conceal official malfeasance affecting the public interest in accurate and fair elections, which the county official discovers by her efforts to faithfully comply with those federal and state statutes, her truthful public disclosures of the facts of that malfeasance are protected by the most fundamental principles of the First Amendment. The importance of that protection is at its highest in the face of grossly untrue calumny by that state official and the use of government power to retaliate against the county official.

3.      Furthermore, under the Fourteenth Amendment it is a privilege and immunity of national citizenship to comply with federal law and engage in the administration of government functions free from retaliation by state and local officials. And the due process of law guaranteed by the Fourteenth Amendment shields a citizen of the United States from the use of the instrumentalities of state or local government, including criminal prosecution, to retaliate against that citizen for her compliance with federal law.

4.      Defendants' conduct exposes their singular goal of achieving political power and maintaining it, even at the cost of undermining the system of fair and trustworthy election that is a cornerstone of our democracy.

## PARTIES

5.      Plaintiff Tina Peters is a citizen of the United States, a resident of the State of Colorado, and the former Mesa County Clerk and Recorder.

6.      Defendant United States is the government established by the Constitution of the United States.

7.      Defendant Merrick B. Garland is sued in his official capacity as Attorney General of the United States. Defendants Garland and the United States may be collectively referred to herein as the "Federal Defendants."

8.     Defendant Jena Griswold is sued in her official capacity as Secretary of State of Colorado.

9.     Defendant Daniel P. Rubinstein is sued in his official capacity as District Attorney of the 21st Judicial District of Colorado. Defendants Rubinstein and Griswold may be referred to collectively as the "State Defendants."

## JURISDICTION AND VENUE

10.     Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(a)(3), and 1346(a)(2).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in Denver, Colorado, in this District.

## PETERS' DUTIES AS COUNTY CLERK
## AND THE DESIGNATED ELECTION OFFICIAL

12.     On November 8, 2018, Peters was elected County Clerk and Recorder of Mesa County, Colorado for a four-year term.

13.     As County Clerk and Recorder, Peters served as the designated election official who exercised authority and was charged with responsibility for, among other things, the "running" of the 2020 election of presidential electors in Mesa County and the 2021 municipal elections in the City of Grand Junction, Colorado. C.R.S. § 1-1-104(8).

14.   The Mesa County election management system ("EMS") server contained electronic records of the November 2020 election, and the 2021 municipal election.

15.   Under federal statutes, voting systems must "produce a record with audit capacity," 52 U.S.C. § 21081(a)(2)(A), and every officer of election must retain and preserve, for a period of twenty-two months, "all records and papers" related to any federal election. 52 U.S.C. § 20701.

16.   The criminal penalty for violating 52 U.S.C. § 20701 is a fine of up to $1,000 or imprisonment for up to one year or both.

17.   Griswold and Peters were both "officers of election" as defined in 52 U.S.C. § 20706.

18.   C.R.S. § 1-7-802 requires every designated election official to preserve "any election records" for a period of at least twenty-five months after the election.

19.   Peters had independent statutory duties to preserve election records under both federal and state law.

20.    The purposes of preserving electronic election records are, among other things, to detect and prosecute civil rights violations and election crimes, to

audit the performance of the computer voting system, and to reconstruct an election when necessary to confirm its legitimacy.

## FACTUAL ALLEGATIONS

### A. Peters' Efforts to Preserve Election Records

21.  On April 21, 2021, Peters requested the Mesa County Information Technology Department to make a copy of the Mesa County EMS hard drive, which would have preserved all election records on the physical server.  That request was denied.

22.  On April 30, 2021, Griswold issued a directive (the "Griswold directive") requiring county election officials, including Peters, to participate in installing a "Trusted Build" software upgrade to the hard drives of county computer voting systems.  A copy of the directive is Exhibit 1.

23.  Griswold and Dominion Voting Systems, Inc. ("Dominion") jointly developed the protocol and requirements for the installation of the Trusted Build upgrade.

24.  Before the installation of the Trusted Build upgrade, Peters was advised by David Stahl, a Dominion employee, during a telephone conversation in April 2021 that one effect of the Trusted Build upgrade would be to make it impossible to read the digital election records used in the 2020 election of

presidential electors in Mesa County and the 2021 municipal election in Grand Junction.

25.     Though the Griswold directive instructed local election officials to backup "election projects" before the upgrade, those "projects" did not include all the records that are essential for a post-election audit, such as audit logs, access logs, and an image of the hard drive of the County's EMS server.

26.     The federal and Colorado statutes requiring election records to be preserved had not yet expired when the Trusted Build upgrade was scheduled to occur.

27.     Peters understood from her communications with Griswold's staff that Griswold was fully aware that the Trusted Build upgrade would erase at least some of the existing election records on the Mesa County EMS server in violation of federal and Colorado laws. And Griswold's actions in 2021 and 2022 during which Griswold had repeatedly interfered with Peters' supervision of the Mesa County election function and falsely accused Peters of violating Griswold's rules convinced Peters that Griswold was determined to delete the records of the recent elections and that it would be futile to request that Trusted Build not be installed.

28.     The official website of the Colorado Secretary of State stated that the federal election records preservation statute is binding on all election officials,

which confirms that Griswold knew or was charged with knowledge that the destruction, deletion, alteration, or overwriting of election records by any election official within the specified period after a federal election was prohibited by federal law.

29.    Similarly, Peters was aware when she learned of the Griswold directive that Peters had a duty under both federal and Colorado law to assure the preservation of all election records on the Mesa County EMS server.

30.    The Griswold directive requiring Peters and other local election officials to assist in the Trusted Build upgrade violated Griswold's own duty under federal and Colorado laws to preserve all election records for prescribed periods and compelled Colorado election officials, including Peters, to violate those laws.

31.    To comply with her legal obligations to preserve election records, Peters lawfully exercised her authority to arrange for a consultant on May 23, 2021, before the upgrade, to make a forensic image of the Mesa County EMS hard drive. A "forensic image" is a bit-by-bit, non-modifiable (read only)  copy of all the digital data stored on a disk drive.

32.    On May 25, 2021, agents of Griswold performed the Trusted Build upgrade, which caused election records and data, including at least operating system log files, on the Mesa County EMS server to be overwritten and to be no

longer recoverable in violation of federal and Colorado records-preservation statutes.

33.　　On May 26, 2021, after the upgrade, Peters again lawfully exercised her authority to arrange for a consultant to make a forensic image of the Mesa County EMS server.

34.　　At all times when that consultant was in a secure area, he was supervised by an employee with authorized access in compliance with Election Rule 20.5.3(b).

35.　　The making of the forensic images of the Mesa County EMS server did not interfere with or obstruct in any way the installation of the Trusted Build upgrade nor did it breach security in any way.

36.　　Upon receiving the forensic images, Peters provided them to cyber security expert Douglas W. Gould for analysis.

37.　　Mr. Gould served as Chief Cyber Security Strategist for AT&T. He has been involved in cybersecurity issues at the highest levels of government and corporate entities for decades. He served as Chief Security Officer at the World Institute for Security Enhancement and is currently Chief Technical Officer at CyberTeamUS.

38.    The forensic images were also later provided to computer experts
Walter C. Daugherity, Ed.D. and Jeffrey O'Donnell. Dr. Daugherity received his
Masters in the Art of Teaching Mathematics from Harvard University in 1967 (at
the age of 20), and received his doctorate in Mathematical Education, also from
Harvard, in 1977. Dr. Daugherity works as a computer consultant, and in that
capacity has worked for clients in the private and public sectors, including the New
York Times, the Washington Post, IBM's Federal Systems Division, Southwestern
Bell Telephone, the Texas Department of Agriculture, and the U.S. Customs
Service.  He currently is also a Visiting Assistant Professor at Texas A & M
University in the Departments of Computer Science and Engineering. He has also
worked as a Teaching Fellow in the Division of Engineering and Applied Sciences
and as a Systems Programmer in the Computer-Aided Instruction Laboratory, both
at Harvard. He is the author of numerous refereed publications and other technical
papers and presentations.

39.    O'Donnell is a Full Stack software and database developer and analyst
with degrees in Computer Science and Mathematics from the University of
Pittsburgh. He has been a consultant to numerous American corporations and
private entities, including Rockwell International, Westinghouse Electric Nuclear,
General Defense, U.S. Steel, Mellon Bank, IOTA 360, and the Penn State Applied

Research Laboratory. He currently serves as President of Qest Development, a full

service software consulting and publishing company, and Chief Information

Officer of Ordros Analytics, which specializes in election analytics of all types.

40.     These experts analyzed the forensic images. They concluded that the

Mesa County disk drive images revealed an unusual phenomenon that occurred

during both the November 2020, General Election and the April 2021, Grand

Junction municipal election.  After some of the ballots were processed and their

information recorded in a set of Microsoft SQL database tables for the respective

election ("Set 1"), no further data were entered in Set 1 even though ballot

processing was not complete.  Rather, data from processing additional ballots were

entered into a separate, newly created set of tables ("Set 2").  Further, some but not

all of the data from Set 1 was copied into Set 2.  Accordingly, neither Set 1 nor Set

2 contained all the data from counting all the ballots.  Because the creation of Set 2

hid Set 1 from election workers, breaking the chain of custody and violating

federal auditability requirements, election officials had no way to examine or

review the ballots in Set 1 which were not copied to Set 2.  This calls into question

the integrity of the vote counting process and the validity of the election results.

The experts issued Mesa Report 3, which explains why the authors believe the

unusual creation of Set 2 and the partial copying of some but not all of the data from Set 1 did not result from intervention by Mesa County election personnel.

41.     The experts also concluded that Dominion's Trusted Build upgrade overwrote the entire EMS operating system, including electronic system log files containing auditable election records of the 2020 and 2021 elections.

42.     Evidence of unexplained multiple ballot databases on the Mesa County EMS server, as well as log files and other 2020 and 2021 election records, all of which were subsequently overwritten by the Trusted Build upgrade, were election records required to be preserved by federal and Colorado law and regulations.

43.     On July 28, 2021, the Department of Justice published a report announcing that those who insist on conducting election audits could be subject to federal investigation and prosecution.  That report committed the Department to "ensure full compliance with all federal laws that govern the retention and preservation of election records."
https://www.justice.gov/ag/page/file/1438936/download.  The publication confirmed that state election officials "must therefore also retain and preserve records created in digital or electronic form."

## B.     Retaliation and Harassment by State and Federal Officials

44.     Griswold's response upon learning on or about August 2, 2021, that an image of the Mesa County EMS hard drive had been made was to order several of her staff members to take control of the office of the Mesa County Clerk and Recorder and to begin an investigation.

45.     The making and dissemination of the forensic images violated no statute, administrative regulation, rule, or order in existence at any relevant time.

46.     Nevertheless, Griswold has described the forensic images made of EMS as "unauthorized" and sought prosecutions of Peters and others in Peters' office for making the forensic images.  But Griswold has not investigated the creation of additional ballot databases on the Mesa County EMS during the 2020 and 2021 elections, nor has she acknowledged the illegality of her own directive that caused election records to be deleted when the trusted build was installed.

47.     Griswold's characterization that the making of forensic images was somehow unlawful or improper is unequivocally untrue, as her own deputy admitted under oath. Appearing on behalf of the Secretary of State in *Griswold v. Schroeder,* Case No.  in the District Court of Elbert County on November 2, 2022, Deputy Secretary Christopher Beall testified that Elbert County Clerk and

Recorder Dallas Schroeder had lawfully made an image of that County's EMS server in August 2021.

48.     Beall testified further that neither Colorado law nor a rule or order of the Secretary prohibited Schroeder from making the image in August 2021.

49.     Schroeder's conduct causing an image to be made of the Elbert County EMS server was substantially the same as Peters' conduct causing Mesa County's forensic images to be made.

50.     Beall also admitted that the installation of the Trusted Build update in May 2021 overwrote the memory contained on the hard drives that are a component of the EMS server. This overwritten memory is where log files created by the EMS server are stored.

51.     Defendant Rubinstein initiated an investigation of Peters and members of her office on or about August 9, 2021, at the request of Griswold.

52.     Rubinstein requested the involvement of the Office of Colorado Attorney General Philip Jacob Weiser in the investigation of the making of the forensic images.

53.     Rubinstein then communicated with federal law enforcement officials and requested that they investigate Peters.

54.     Rubinstein and the federal and state law enforcement officials involved in the investigation knew that deletion of election records by an election official constitutes a violation of federal and Colorado law in the circumstances of this case, but they declined to pursue Griswold's potential violations of federal and Colorado election records preservation laws.

55.     Rubinstein and Weiser joined forces in August 2021 to conduct a joint investigation of the circumstances surrounding the making of the forensic images in Mesa County but have not brought a charge against Griswold for violating Colorado's election records preservation statute or investigated whether there was a violation of Colorado law in the unexplained creation of additional ballot databases in two consecutive elections on the Mesa County EMS.

56.     On August 9, 2021, Griswold issued Election Order 2021-01 (Exhibit 2), ordering Peters to permit an investigation of the voting system components and security protocol, and requiring Peters to produce records.  The order stated that the "breach in security protocol has not created an imminent direct security risk to Colorado's elections."

57.     On August 10, 2021, while Peters was participating in a Cyber Symposium in South Dakota sponsored by Michael J. Lindell, at which she made a presentation on the findings of the computer experts who had analyzed the Mesa

County EMS server images, Griswold's agents, accompanied by Rubinstein's agents, inspected Mesa County voting system components and records at the Mesa County Clerk and Recorder's Office.

58.     During the inspection on August 10, 2021, Griswold's agents found no damage to Mesa County voting system components or software.

59.     On August 12, 2021, Griswold issued Election Order 2021-02 (Exhibit 3), which prohibited Peters and Mesa County from using its computer voting system "because the Department could not establish that the voting system was not compromised."

60.     Election order 2021-02 was unnecessary.  Making the forensic images had caused no harm to the voting system hardware or software.  Election Order 2021-02 served to humiliate Peters and make her unpopular with voters by requiring Mesa County to purchase a new voting system.  It was intended to silence Peters and other critics of computer voting systems.

61.     On information and belief, Rubinstein obtained possession of the Mesa County voting system components that were listed in Election Order 2021-02, and subsequently delivered possession of the components to agents of the Federal Bureau of Investigation in Denver, Colorado. On information and belief,

the Denver FBI office still has possession of the Mesa County voting system equipment.

62.     On August 17, 2021, Griswold issued Election Order 2021-03 (Exhibit 4) assuming responsibility for the supervision of elections in Mesa County, prohibiting Peters' staff from any involvement in elections, and appointing Sheila Reiner to supervise all elections in the County.

63.     Under Colorado law, an elected official cannot be removed without a recall vote by voters in the district or county in which she was elected.

64.     Prior to August 2021, Griswold advocated to the Mesa County Board of County Commissioners (the "County Board") to replace the Dominion voting system, with a different system from the vendor Clear Ballot.

65.     On August 24, 2021, the County Board entered into an agreement with Dominion Voting Systems, Inc. for Dominion to replace the computer voting system equipment.  A copy of the Agreement is attached as Exhibit 5.

66.     On August 30, 2021, Griswold filed a petition in the District Court of Mesa County (Civil Action 2021-CV-30214) requesting the District Court to replace Peters as Mesa County's designated election official with Wayne Williams for the 2021 election.

67.     On September 1, 2021, a meeting requested by Peters' political associate Sherronna Bishop to allow her to present her concerns about computerized voting systems was held in the offices of the Mesa County government attended in person or virtually by  representatives of U.S. Attorney General Garland, Rubinstein and members of his staff, personnel from the office of Secretary of State Griswold, officers of Dominion, an FBI Special Agent, members of the Mesa County Board of County Commissioners, Ryan Macias, a critic of those who questioned the regularity of elections, Ms. Bishop, and retired U.S. Air Force Colonel Shawn Smith.

68.     At the September 1, 2021, meeting, Colonel Smith presented his position and evidence that there are multiple vulnerabilities in the Dominion voting machines, which others at the meeting declined to address.

69.     On September 3, 2021, Griswold approved the County Board's lease of new equipment from Dominion and disposal of the old equipment.  A copy of the approval is attached as Exhibit 6.

70.     On September 17, 2021, Peters presented a petition to the County Board to discontinue the use of computer voting systems in Mesa County supported by a report concerning the two forensic images made of the Mesa County EMS server in May 2021 prepared by Mr. Gould entitled *Forensic*

*Examination and Analysis Report (Mesa Report 1).* Copies of the petition and the report are attached as Exhibit 7.

71.     The report concluded that election records that were required to be preserved pursuant to federal and Colorado law had been destroyed, that any comprehensive forensic audit of the elections in 2020 and 2021 would be impossible, and that the certification by the Secretary of State of the Mesa County computerized voting system had been vitiated.

72.     On October 13, 2021, the Mesa County District Court issued its order appointing Wayne Williams as the designated election official for Mesa County for the 2021 election and confirming Sheila Reiner's appointment as Election Supervisor.  A copy of the Order is attached as Exhibit 8.

73.     On October 20, 2021, the Colorado Supreme Court declined to exercise its jurisdiction to review the District Court's October 13 Order.  A copy of the Supreme Court's Order is attached as Exhibit 9.

74.     On November 16, 2021, agents of the Federal Bureau of Investigation, under the ultimate direction of Garland, accompanied by state and local law enforcement personnel executed search-and-seizure warrants on the residences of Peters, Sherronna Bishop, Sandra Brown, and Gerald Wood.

75.     Those warrants were executed in a manner that involved excessive force and unnecessary damage to private property.

76.     The following day, on November 17, 2021, Rubinstein and Colorado Attorney General Philip J. Weiser issued a joint press release stating that the execution of search and seizure warrants was a joint operation involving agents of the FBI, Colorado Attorney General, and Rubinstein.

77.     On January 10, 2022, Griswold issued Election Order 2022-01 (Exhibit 10), which recited public statements made by Peters asserting, among other things, that Griswold's Department had "destroyed election records" and "allow[ed] influences to come into our computers changing votes…." That order required Peters to "repudiate, in writing, both the statement she made on January 5, 2022, in a FacebookLive broadcast indicating [Peters'] willingness to compromise voting equipment, that is, [Peters'] assertion that 'we've got to get those machines so… they're not able to do what they're designed to do,' and further all other statements [Peters]has made indicating a willingness to compromise voting system equipment."

78.     This "repudiation" was to be expressed within 72 hours by a "Certification and Attestation," which is attached as Exhibit 11.

79.     Peters has never stated or intimated any willingness to compromise the lawful operation of Mesa County's or any other voting system equipment.

80.     When Peters did not sign the "Certification and Attestation" within 72 hours, on January 18, 2022, Griswold filed civil action 2022CV3007 in the District Court of Mesa County, requesting that Peters be replaced as designated election official for Mesa County for the remainder of her four-year term of office.

81.     On March 1, 2022, Peters again petitioned the County Board to discontinue using computer voting systems in Mesa County.  Peters supported her petition with the second report of Mr. Gould (Mesa Report 2). A copy of Peters' petition and Mr. Gould's report are attached collectively as Exhibit 12.

82.     On April 23, 2022, citizens Cory Anderson and Sherronna Bishop submitted Mesa Report 3 to Rubinstein. A copy of the report is attached as Exhibit 13.

83.     Based on their detailed analysis, Dr. Daugherity and Mr. O'Donnell determined that the forensic image made before the trusted build showed that ballot tabulations had been interrupted, and ballot tabulation databases had been altered, during both the November 3, 2020, election and the 2021 municipal elections.

84.     Dr. Daugherity and Mr. O'Donnell further determined that the forensic image showed the unexpected and anomalous creation of a second set of ballot databases and a digital transfer of selected batches of thousands of previously tabulated ballots into those databases.

85.     As demonstrated by the report of Dr. Daugherity and Mr. O'Donnell, the unexplained and unexpected creation of a second set of ballot databases during two consecutive elections, could not have been triggered by Dominion's certified software, leading to the conclusion that uncertified software may have been clandestinely installed on the Mesa County EMS.

86.     On May 10, 2022, in civil action 2022CV3007, the Mesa County District Court granted Griswold's petition to permanently replace Peters as the designated election official for Mesa County.  A copy of the court's Order is attached as Exhibit 14.

87.     In response to Mesa Report 3, Rubinstein and Investigator Michael Struwe presented a report to the Mesa County Board on May 19, 2022.  A copy of that report is attached as Exhibit 15.

88.     Rubinstein's report was prepared and submitted in bad faith and for the purpose of intimidating and deterring Peters from continuing to speak out about

2020 election anomalies and weak election security, and from continuing to advocate for ending reliance on computerized voting systems, such as Dominion's.

89.     The findings of Rubinstein and Struwe have been challenged by Walter Daugherty in his declaration, which is attached as Exhibit 16.

90.     Rubinstein and Struwe have no expertise in cyber or database matters and did not have the benefit of independent cyber or database expertise in preparing their findings.

91.     On information and belief, the only advice or assistance that Rubinstein and Struwe received in preparing their findings was from the office of the Colorado Secretary of State and Dominion.

92.     Exhibit 16 explains that the Rubinstein report wrongly claimed that Sandra Brown caused the creation of the second ballot database by halting and re-starting the adjudication of ballots.  In fact, Rubinstein had never interviewed Sandra Brown.  When Sandra Brown was interviewed by Jeff O'Donnell, Ms. Brown stated that she never initiated a "halt and re-start" of ballot adjudication, as the Rubinstein report claimed.  The Rubinstein report failed to mention or explain the fact that in two consecutive elections, the Mesa County voting system created an extra database that masked the actual election results.

93.     The campaign launched by the State Defendants against Peters in retaliation for her obedience to the law and her truth-telling concerning the malfeasance she discovered was punctuated by an aggressive campaign to personally disparage and denigrate Peters, falsely accusing her of illegal conduct.

94.     For example, in a news release published by Griswold on January 18, 2022, announcing her action to remove Peters as the Designated Election Official, Griswold stated:

> Clerk Peters' actions constituted one of the nation's first insider threats where an official, elected to uphold free, fair, and secure selections risked the integrity of the election system in an effort to prove unfounded conspiracy theories.

95.     Griswold stated to a media outlet in February 2022: "Our expectations of elected officials is to follow the law and election rules and protocols. We unfortunately are seeing the clerk [Peters] spread misinformation about Colorado elections."

96.     Griswold did not apply that same expectation to herself by evaluating her own failure to follow laws mandating the preservation of election records.

97.     Griswold has taken no action in response either to the discovery of problems on the EMS server, or to Griswold's own unlawful directive that caused the deletion of election records.

98.     This unbridled viciousness directed at Peters reached the point where on July 11, 2022, Rubinstein's investigator, James Cannon, would falsely state in an affidavit to the judge presiding over Peters' criminal trial that making a digital image of the EMS' hard drive was unlawful.  Affidavit of James Cannon, at 9 (July 11, 2022) (attached as Exhibit 17). It was only four months later, as described above, that Griswold's deputy, Beall, admitted under oath that making such an image was not unlawful.

### i. The Federal Investigation

99.     The administration of President Joe Biden assumed power on January 20, 2021, and shortly thereafter announced its National Strategy for Countering Domestic Terrorism. https://www.whitehouse.gov/wp-content/uploads/2021/06/National-Strategy -for-Countering-Terrorism.pdf.

100.    Several cabinet officers issued reports, press releases, or public statements announcing that they would attempt to suppress speech that questioned the legitimacy of Biden's election. These actions were part of the administration's campaign to punish citizens for, and to discourage citizens from, exercising their rights of free speech, association, the press, and the right to petition for the redress of grievances by speaking out about election fraud in the 2020 election.

101.    Director of National Intelligence Avril Haines issued a report on March 1, 2021, asserting that those who espouse "narratives of fraud in the recent election…will almost certainly spur some [domestic violent extremists] to try to engage in violence…." https://www.dni.gov/documents/assessments/Unclass-SummaryofDVEAssessment-17MAR21.pdf.

102.    Newly confirmed United States Attorney General Merrick Garland gratuitously announced in July 2021 that claims of vote fraud in the 2020 presidential election were baseless and the Department of Justice would investigate and prosecute individuals who pursued audits of elections that violated federal law. https://www.bloomberg.com/articles/2021-03-01/doj-pick-garland-disputes-trump-claims-of-widespread-voter-fraud#xj4y7vzkg.

103.    On May 14, 2021, in a National Terrorism Advisory Bulletin, the Department of Homeland Security referenced a heightened threat environment fueled by disinformation, conspiracy theories, and false narratives. https://www.dhs.gov/news/2021/05/14/dhs-issues-national-advisory-system-ntas-bulletin. *See also* https://www.dhs.gov/news/2021/01/27/dhs-issues-national-terrorism-advisory-system-ntas-bulletin."

104.    Secretary of Homeland Security Alejandro Mayorkas published a document in March 2021 in support of the National Strategy for Countering

Terrorism that associated domestic extremism with "sociopolitical developments such as narratives of fraud in the recent general election."

https://www.dhs.gov/sites/default/files/publication/21_0301_odni_unclass-summary-of-dve-assessment-17_march-final_508.pdf.

105.    Attorney General Garland published a report on July 28, 2021, threatening to investigate and prosecute those citizens who pursued forensic audits of the 2020 election. https://www.justice.gov/ag/page/file/1438936/download.

106.    Rubinstein communicated with federal law enforcement officials about the state investigation of Peters, knowing that Biden Administration officials had published such statements threatening federal investigation of those who challenged the result of the 2020 general election or sought audits of that election. A federal investigation of Peters was initiated in August 2021.

107.    In 2022, the U.S. Department of Justice convened a federal grand jury to investigate Tina Peters and the forensic imaging of the Mesa County EMS server.

108.    Speaking out and associating with others of like mind to advance a message about the need for election integrity is protected by the First Amendment, regardless of whether the statements contained in the message are accurate.

109.    The investigation of Peters by the Department of Justice was undertaken to punish and retaliate against her for having exercised her rights guaranteed by the First Amendment to question the integrity of the November 2020 election and to intimidate and discourage her from continuing to do so.

110.    The tactics used by the FBI during the investigation into the making and publishing of the Mesa County forensic images were intended to intimidate and deter citizens from associating with those, including Peters, who advocate ending the use of computerized voting systems, such as Dominion's. Such intimidation tactics burden Peters' ability to engage in protected First Amendment communications and associational activity.

111.    The Department of Justice exercised bad faith in launching the investigation of Peters because it knew or should have known it had no reasonable prospect of obtaining convictions on the basis of charges under the three statutes it has invoked: 18 U.S.C. §§ 371, 1028(a)(7), and 1030(a)(2)(A).

112.    The charge of a violation of 18 U.S.C. § 1028(a)(7) is legally insufficient because there was no intent to violate another statute, the access card involved was not "issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance," and there was no federal nexus giving the court jurisdiction.

113.   The charge of a violation of 18 U.S.C. § 1030(a)(2)(A) fails because there was no damage to the EMS server caused by the making of the forensic images.

114.   The charge of a violation of 18 U.S.C. § 371 fails because there was no violation of either of the other two statutes.

115.   On information and belief, the Federal Defendants have not pursued any investigation to determine how additional databases were created on the Mesa County EMS during ballot tabulations in two consecutive elections.

116.   At the conclusion of the state investigation conducted jointly by District Attorney Rubinstein and the Colorado Attorney General, Rubinstein issued a press release on August 30, 2022, announcing that he and Attorney General Weiser had asked the United States Attorney to continue his federal investigation of Peters. The press release is attached as Exhibit 18.

117.   The Department of Justice, including the FBI, has continued its investigation to determine if any federal crime had been committed by Peters but ignored Griswold's violation of the federal election records preservation statutes.

**ii.  The State Prosecution**

118.   After launching his investigation of Peters and the making of the images of the Mesa County EMS hard drive, Rubinstein convened a grand jury in

Mesa County to investigate Tina Peters and the forensic imaging of the Mesa County EMS

119.   In bad faith, Rubinstein submitted applications to magistrates for search warrants and arrest warrants and asked the Mesa County grand jury to indict Peters without advising the grand jury that the deletion of election records of the 2020 presidential election ordered by Griswold as a result of the installation of the Trusted Build upgrade violated federal and Colorado law, or that Peters and the other individuals charged had a legal obligation to preserve the election record that Griswold had directed them to delete.

120.   The grand jury returned the indictment against Peters on March 8, 2022.  A copy of the indictment is attached as Exhibit 19.

121.   Rubinstein acted in bad faith to present the indictment of Peters to the grand jury because none of the counts has a reasonable prospect of justifying a conviction.

122.   The bad faith of Rubinstein is underscored by the fatally flawed charges he has brought against Peters, in particular the failure of the indictment to address Peters' understanding of her duty under federal and Colorado laws to preserve election records on the Mesa County EMS server, negating the criminal intent required to establish the offenses charged.

123.   An equally fundamental legal insufficiency of the indictment is the absence of clear allegations giving at least the bare bones detail needed to put Peters on notice of the charges against her and to define exactly what the prosecution must prove.

124.   The charges set out against Peters fail to pass muster as a minimally sufficient indictment under basic norms of due process because they fail to allege facts supporting critical elements of the offenses charged. For example,

a) Counts 1, 2, and 5 allege attempts to influence public servants by "deceit," which Colorado law understands as a *fraudulent* misrepresentation or conduct designed to *defraud* another, but these counts contain no factual allegations of fraud by Peters.

b) Counts 4, 6, and 7 charge criminal impersonation, which under Colorado law must be undertaken for *unlawful* purposes with the intent to *unlawfully* gain a benefit or to *injure* or *defraud* another. No factual allegations can be found in the indictment supporting such characterizations of Peters' conduct.

c) Count 8 charges identity theft which must be done to obtain money or, other thing of value, but includes no factual allegations to this effect. Even more fundamentally troubling, the indictment fails to include the undisputed fact that

the individual whose information was purportedly stolen gave his permission for Peters to use it.

    d) Count 9 charges first degree official misconduct, which requires conduct done to obtain a benefit or maliciously cause harm to another. Again, no factual allegations are included in the indictment supporting such a characterization of Peters' conduct.

    e) Count 10 charges a violation of duty and Count 11 charges a failure to comply with requirements of the Secretary of State. While it is not clear what specific conduct is being alleged in these counts, Peters violated no lawful "requirement" of the Secretary of State but rather fulfilled her duty to preserve election records as required by federal and state laws.

125.   Rubinstein's investigator falsely represented in his affidavit in support of the application for an arrest warrant for Sandra Brown, who was Peters' elections manager, that Belinda Knisley had stated in her proffer interview with Rubinstein and the investigator that Peters had instructed Knisley to lie to the Mesa County Human Resources Department about Gerald Wood when the transcript of the interview showed that Knisley made no such statement.

126.   Rubinstein sought an extraordinary, unnecessary, and plainly punitive amount of bond at $500,000.00 after Peters was arrested following her indictment.

127.   Rubinstein maliciously forced Peters to remain in jail after her arrest on February 9, 2022, although he knew that her father was dying and, in fact, did die on February 10, 2022, while she was in jail.

128.   Rubinstein refused to support Peters' request to travel outside Colorado for her father's funeral in a malicious effort to punish and retaliate against her for her outspoken concern about 2020 election anomalies, weak election security, and Griswold's violations of the federal and Colorado election records preservation statutes.

129.   In July 2022, Rubinstein requested revocation of Peters' bond to punish and retaliate against her for making public statements on matters of grave public concern when she left Colorado to speak about illegal activity by Griswold and Dominion.

130.   In August 2022, Rubinstein again maliciously opposed Peters' request to travel outside Colorado to engage in protected First Amendment activity, saying: "Ms. Peters is seeking permission to leave the state so that she can be celebrated as a hero for the conduct that a grand jury has indicted her for…."  His opposition was plainly prompted by his expressly articulated disapproval of Peters' repeated assertions that Griswold had violated federal and Colorado law by ordering the deletion of election records.

131.   After the death of Peters' father, Struwe contacted Peters' 93-year-old mother, her sister, her daughter, and other members of Peters' family pressing them for information about Peters as a method of harassing Peters and her family members as retaliation against Peters for her role in the making and publishing of the forensic images, her outspoken criticism of Griswold, and her statements about the need to end the use of computerized voting systems, such as Dominion's.

132.   Personnel from Rubinstein's office contacted Peters' husband, who was suffering from Parkinson's Disease and dementia at an adult care facility in Mesa County and pressured him to execute certain documents.

133.   A lawyer representing Peters and her husband in November 2021 in connection with domestic matters emailed Peters to advise her that a member of the District Attorney's office had left a voicemail on the lawyer's telephone notifying the lawyer that Peters was the subject of a potential investigation into her actions as an agent under a power of attorney. The voicemail prompted the lawyer to advise Peters that he had a conflict of interest and could no longer represent her and her husband.

134.   Despite the insistence by Peters' counsel that her experts only be contacted through him, Rubinstein's investigator Struwe repeatedly contacted

Peters' expert Mr. O'Donnell directly in violation of the Colorado Rules of Professional Conduct.

135.   On June 5, 2022, the state court judge presiding over Peters' criminal prosecution ruled that she may not present evidence at trial to support her First and Fourteenth Amendment defenses to the charges against her (Exhibit 20).  The effect of the ruling is to deny Peters the opportunity (a) to introduce evidence of Griswold's violation of federal and Colorado election-record preservation statutes and Griswold's directive that local election officials must participate in those violations, (b) to assert as a defense Peters' constitutional immunity from retaliation, including spurious criminal prosecution, for making forensic images to preserve election records, and (c) to invoke the protections of the United States Constitution's First, Fifth, and Fourteenth Amendments.

136.   Strikingly, even though Peters has not violated any state statute, the Department of Justice itself has nonetheless conceded in related litigation that violating a state statute cannot be criminally sanctioned where the individual "would be forced to choose between 'intentionally flouting state law' and 'forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in (another) criminal proceeding.'" *Lindell v. United States,* No. 22-3510 (8th Cir.) (Appellees' Response Brief at 15).

35

## PETERS' CONSTITUTIONALLY PROTECTED ACTIVITIES

137. Government misconduct and the legitimacy of elections are matters of public concern.

138. Speech concerning election integrity and government misconduct is protected by the First Amendment.

139. Investigation of government misconduct and election irregularities is activity protected by the First Amendment.

140. Pursuant to the Privileges and Immunities Clause in the Fourteenth Amendment and the Supremacy Clause in Article VI of the United States Constitution, a citizen of the United States, including a state or local official like Peters, is immune from prosecution for alleged violations of state law when that law is applied to prevent that citizen from complying with the requirements of a federal statute.

141. Under the unambiguous language of the federal and Colorado election records preservation laws, Peters had an overriding obligation to preserve all election records on the Mesa County EMS server for the prescribed periods and she cannot be held criminally liable – or be prosecuted -- for failing to comply with any directive from Griswold requiring Peters to violate, or cooperate in the violation of, those laws.

142.   All directives from Griswold that were intended to cause, and had the effect of causing, the deletion of election records which must be preserved under federal and Colorado law were unlawful, beyond Griswold's authority, void, and not binding on Peters.

143.   The callous malfeasance of the State Defendants in their unrestrained, vicious attacks on Peters and her family is highlighted by the fact that they were well-aware of the requirements of the federal election records preservation statute. The official website of the Colorado Secretary of State stated at all relevant times that that statute is binding on all election officials.

144.   The use of the instrumentalities of state or local government, including criminal prosecution, to retaliate against a citizen of the United States for compliance with federal law is a violation of that citizen's right to due process of law guaranteed by the Fourteenth Amendment.

145.   If a forensic image of the EMS hard drive had not been made before the Trusted Build upgrade was installed, all election records showing the creation of the second set of ballot databases and the digital transfer of selected batches of thousands of previously tabulated Mesa County ballots would have been overwritten, deleted, and made no longer recoverable.

146.   Peters exercised her rights to free speech, free association, and to petition for the redress of grievances when she informed others about the existence and contents of the forensic images and about the conclusions of the cyber experts for the ultimate purpose of publicizing to authorities and the general public the unlawful deletion of election records at the direction of Griswold in violation of federal and Colorado election records preservation laws, and problems with the Mesa County computer voting system.  Peters violated no laws when she publicized either the forensic images or the cyber and database experts' findings.

147.   Peters has spoken at numerous rallies and other gatherings on the subjects of election security, Griswold's unlawful directive to delete election records, and the software installed on the Mesa County EMS server. Peters violated no laws by her actions participating at these events.

148.   Peters' actions to secure a forensic image of the EMS server before the trusted build was an exercise of her privilege to comply with federal law with immunity from retaliatory action from state or local officials.

## COUNT 1

**Violations by the Federal Defendants of Plaintiff's First Amendment Rights of Freedom of Speech, Freedom of Association, and the Right to Petition for the Redress of Grievances**

149.   The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

150.   Any form of official retaliation for exercising Plaintiff's freedoms guaranteed by the First Amendment, including prosecution, threatened prosecution, bad faith investigation, and legal harassment constitutes a violation of the First Amendment.

151.   The Federal Defendants' past and ongoing retaliatory and punitive conduct toward Peters was and is substantially motivated by Peters' constitutionally protected activity. Federal Defendants' conduct has caused and continues to threaten injuries to Peters that would chill a person of ordinary firmness from continuing to engage in Peters' constitutionally protected conduct.

152.   Based upon the foregoing allegations and assertions, Defendant the United States has investigated Plaintiff to punish her for exercising her First Amendment free speech right for the purpose of informing her fellow citizens of illegal actions of Griswold and problems with the computer voting system in Mesa County, to petition for the redress of grievances, to associate for the purpose of

expressive advocacy, and to discourage her and those who would associate with her from exercising their right to associate, to petition for redress of grievances, and to speak freely and publicly about the need for reform of the election system.

153.   Peters' First Amendment rights will be violated by any further action of Defendants to investigate and prosecute her because of Defendants' bad faith and retaliatory actions and because Colorado courts have barred Peters from asserting in her criminal case the right not to be punished for exercising federal constitutional rights to engage in free speech, free association, and petitioning the government for redress of grievances.

154.   Plaintiff is entitled to prospective injunctive relief from federal constitutional violations by federal officials.

155.   Plaintiff is entitled to declaratory relief under 28 U.S.C. § 2201.

## COUNT 2

**Violations by the State Defendants of Plaintiff's Rights, Privileges, and Immunities Secured by the United States Constitution**

156.   The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

157.   State Defendants Rubinstein and Griswold, acting under color of Colorado law, have undertaken an investigation and prosecution of Plaintiff to punish Peters, in violation of federal law,

(a) for the exercise of her First Amendment rights to inform her fellow citizens of illegal actions of Griswold and problems with the computer voting system in Mesa County, to associate for the purpose of expressive advocacy, and to discourage Plaintiff and other citizens who have associated with Plaintiff or might associate in the future from exercising their right to associate, to petition for the redress of grievances, and to speak publicly for reform of the election system; and

(b) for her efforts to comply with federal law governing the maintenance of election records in violation of her right to the due process of the laws and her privileges and immunities as a citizen of the United States guaranteed by the Fourteenth Amendment.

This conduct is ongoing and threatens continuing and future injury to Peters.

158.   State Defendants' past and ongoing retaliatory and punitive conduct toward Peters was and is substantially motivated by Peters' constitutionally protected activity. State Defendants' conduct has caused and continues to threaten injuries to Peters that would chill a person of ordinary firmness from continuing to engage in Peters' constitutionally protected conduct.

159.   Plaintiff is entitled to prospective injunctive relief from federal constitutional violations by state officials under 42 U.S.C. § 1983 and *Ex parte Young,* 209 U.S. 123 (1908).

160.   Plaintiff is entitled to declaratory relief under 42 U.S.C. § 1983, *Ex parte Young,* 209 U.S. 123 (1908), and 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the entry of an Order or Orders:

(a) Granting preliminary and permanent injunctive relief prohibiting Defendants from conducting and proceeding with criminal proceedings, including investigations and prosecutions, against the Plaintiff pending the resolution of Plaintiff's claims brought in this action;

(b) Declaring that Defendants' actions alleged herein have violated Plaintiff's First Amendment rights of freedom of speech, freedom of association, freedom of the press, right to petition for the redress of grievances, and the Supremacy Clause, as well as Plaintiff's rights to due process and to enjoy her privileges and immunities as a citizen of the United States under the Fourteenth Amendment.

(c) Declaring that all warrants issued were in violation of the First and Fourteenth Amendments and, therefore, invalid;

(d) Declaring that subpoenas issued by the 21st Judicial District grand jury were in violation of the First and Fourteenth Amendments;

(e) Declaring that the indictment of Plaintiff by the 21st Judicial District grand jury was in violation of the First and Fourteenth Amendments;

(f) Granting reasonable attorneys' fees to Plaintiff pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988 and any other applicable laws; and

(g) Granting such other and further relief as the Court deems just and proper.

Respectfully submitted November 14, 2023

s/*John Case*  
John Case  
John Case, P.C.  
6901 South Pierce St. #340  
Littleton CO 80128  
Phone|303-667-7407  
brief@johncaselaw.com  
Co-Counsel for Plaintiff

Patrick M. McSweeney  
Robert J. Cynkar  
Christopher I. Kachouroff  
Lyndsey L. Bisch  
*McSweeney, Cynkar & Kachouroff, PLLC*  
3358 John Tree Hill Road  
Powhatan, VA 23139  
(804) 937-0895  
FAX (877) 598-4668  
Co-Counsel for Plaintiff