| | |
|---|---|
| **DISTRICT COURT**<br>**125 North Spruce St.**<br>**Grand Junction, Mesa County, Colorado** | DATE FILED: May 10, 2022 4:44 PM<br>CASE NUMBER: 2022CV30007 |
| **Petitioners:**<br>**JENA GRISWOLD, in her official capacity as**<br>**Colorado Secretary of State; HEIDI JEANNE HESS, in**<br>**her capacity as a Mesa County registered elector,**<br><br>**v.**<br><br>**Respondents:**<br>**TINA PETERS, in her official capacity as the Clerk**<br>**and Recorder for Mesa County, Colorado; BELINDA**<br>**KNISLEY, in her official capacity as the Deputy Clerk**<br>**and Recorder for Mesa County, Colorado; and JULIE**<br>**E. FISHER, in her official capacity as the Second**<br>**Chief Deputy Clerk and Recorder for Mesa County,**<br>**Colorado,**<br><br>**and**<br><br>**Intervenor:**<br>**THE BOARD OF COUNTY COMMISSIONERS OF**<br>**THE COUNTY OF MESA** | |
| | **▲COURT USE ONLY▲** |
| | **Case Number:  22CV30007**<br><br>**Division:     5**<br>**Courtroom:  Robison** |
| **COMBINED ORDER RE: VERIFIED PETITION FOR RELIEF UNDER**<br>**C.R.S. §1-1-113 AND MOTION TO DISMISS** | |

This matter comes before the Court on the Petitioners' Verified Petition for Relief

Under C.R.S. §1-1-113 (hereafter "Petition") and the Respondents' Motion to Dismiss

(hereafter "Motion").  On April 18, 2022, and April 21, 2022, the Court held a two-day

hearing on the Petition and Motion.  Appearing at the hearing were: the Petitioner, Jena

Griswold, who appeared via the Deputy Secretary of State, Christopher Beall[1], and was

---

[1] Mr. Beall was not present on April 21, 2022.

represented by Leeann Morrill, Esq., and Michael Kotlarczyk, Esq.; the Petitioner, Heidi Hess, appeared personally and was represented by Eric Maxfield, Esq.; the Respondent, Julie Fisher appeared personally and was represented by Scott Gessler, Esq.; the Respondents, Tina Peters and Belinda Knisley, did not appear personally, and were also represented by Scott Gessler, Esq.; and, the Intervenor, Board of County Commissioners of County of Mesa, was represented by Todd Starr, Esq., Heather Mosher, Esq., and John Rhoads, Esq.  At the conclusion of the hearing, the Court took these matters under advisement.

The Court considered the testimony of the witnesses, the evidence presented at the hearing, and arguments of counsel.  Based upon the testimony of the witnesses, the Court's assessment of credibility, assessment of the weight of the evidence, reasonable inferences and reasonable conclusions drawn from the assessment of the evidence and credibility, the Court now issues this Order.  All findings are made by a preponderance of the evidence.

## I.  BACKGROUND

This case began with the filing of the Verified Petition for Relief Under C.R.S. Section 1-1-113, on January 18, 2022.  The case was transferred to this Court on February 28, 2022.  The Partially Unopposed Motion to Intervene by the Board of County Commissioners of Mesa County, Colorado was granted on March 5, 2022.  After the parties filed respective briefs on the issues, the Court held the two-day hearing.

The Petitioners, Jena Griswold, in her official capacity as Colorado Secretary of State (hereafter "Secretary") and Heidi Jeanne Hess, in her capacity as a Mesa County registered elector (hereafter "Hess"), seek a determination that the Mesa County Clerk

and Recorder, Tina Peters (hereafter "Peters"), the Mesa County Deputy Clerk and Recorder, Belinda Knisley (hereafter "Knisley"), and Julie Fisher, the person designated by Peters as a Second Chief Deputy Mesa Clerk and Recorder (hereafter "Fisher"), are unable to perform the functions of the Designated Election Official (hereafter "DEO") for the 2022 election cycle. The Petitioners request that the Court determine that Brandi Bantz (hereafter "Bantz") be designated as the Mesa County DEO for all duties related to the 2022 election cycle.

The Respondents filed a Motion to Dismiss on February 16, 2022. The parties filed combined briefs that addressed the Petition and the Motion. The Respondents argued that: the Secretary did not have standing to bring the instant action; Hess did not validly sign the verification for the Petition; and, that the Petitioners claims pursuant to C.R.S. §§1-1-107 and 1-1.5-105, as well as the request pursuant to C.R.C.P. Rule 57, could not be combined with the request pursuant to C.R.S. §1-1-113.

The Respondents also argued that the Petitioners have not met their burden of showing that the Respondents, particularly Fisher, cannot perform their duties. Therefore, the Respondents urge the Court to deny the Petition.

The Intervenor, the Board of County Commissioners of the County of Mesa (hereafter "Board"), largely supports the requests of the Petitioners. However, the Board argues that the Secretary may not determine the DEO. Instead, that it is the prerogative of the Board. Irrespective, like the Petitioners, the Board also requests the Court designate Bantz as the DEO for the 2022 elections.

## II.  FACTS OF THE CASE[2]

The Petitioner, Heidi Hess, is a registered elector in Mesa County.  On January 18, 2022, Hess signed the Petition, verifying "under penalty of perjury … that the factual allegations … are true and correct to the best of [her] knowledge, information, and belief." *See Petition, pg. 17.*  Prior to signing the Petition, Hess did not conduct a specific independent investigation regarding the facts of the Petition.  However, she did listen to the statements that were attributed to Peters and were contained in the Petition.  Hess also had various conversations with her attorney about the Petition.  She did not speak with the Secretary after October 13, 2021.

The Petitioner, Jena Griswold, is the duly elected Colorado Secretary of State.  The Secretary of State is a constitutional position and the designated chief state election official.  *C.R.S. §1-1-107(1)(e).*  The Secretary is also tasked with enforcing the provisions of the Uniform Election Code of 1992 (hereafter "Election Code").  *C.R.S. §1-1-107(1)(d).*  The Election Code consists of Articles 1 through 13 of Title 1.  *C.R.S. §1-1-101.*

In conducting elections, the Secretary is assisted by the elected clerk and recorders for each of the 64 counties in the state.  Each of the counties' elected clerk and recorders are the designated election official for their respective counties.  *C.R.S. §1-1-110(3).*  In the absence or inability of a county clerk and recorder to perform their duties, a deputy clerk may exercise "[a]ll the powers and authority granted to the county clerk and recorder".  *C.R.S. §1-1-110(2).*

---

[2] Some of the facts in this section, particularly related to events regarding the "trusted build" are derived from the Court's Order re: Verified Petition for Relief Under C.R.S. §1-1-113 issued on October 13, 2021, in Mesa County Case No. 21CV30214.

In 2018, Peters was elected as the Mesa County Clerk and Recorder.  Peters took the oath[3] and began her duties in January of 2019.  After taking office, Peters appointed Knisley as the Mesa County Chief Deputy Clerk and Recorder.  The Mesa County Chief Deputy Clerk and Recorder is a specific position allowed by the Mesa County Human Resources Department and listed on the "authorized personnel listing" of employee positions.

Prior to Peters taking office, Mesa County had entered into an agreement for electronic vote-tabulating equipment in March of 2016.  *Exhibit 1, pg. 35*.  The agreement was entered into between Mesa County and Dominion Voting Systems, Inc. (hereafter "Dominion").  *Id.* The term of the agreement was from March 21, 2016 to December 31, 2023.  *Id.*

In November of 2020, a coordinated election was held.  Mesa County used the Dominion electronic vote-tabulating equipment to scan ballots, interpret marks on the ballots as votes, and tabulate the votes for the final results of the election.

Following the 2020 election and in anticipation of the next election in 2021, a "trusted build" process began in April of 2021.  The "trusted build" would ensure a chain-of-custody for the voting system.  Part of the "trusted build" process was a software build where a source code would be converted to machine-readable binary instructions (executable code) for the computer.  Because voting equipment cannot be connected to the Internet, which prevents any remote tampering with the voting equipment[4], any

---

[3] The Court makes the inference that Peters took the oath as it is a constitutional and statutory requirement.

[4] The Court uses the term "voting equipment" to include "vote-tabulating equipment".

software updates or equipment changes that follow an election must be accomplished manually and in-person at the site of the voting equipment.

The "trusted build" was scheduled for May 25 and 26, 2021.  Prior to the arrival of staff from the Secretary's office, Knisley facilitated the deactivation of the cameras for the secured area where the Mesa County election equipment was stored.   On Sunday, May 23, 2021, Peters allowed a "consultant" to enter the secured area with the election equipment and allowed the "consultant" to take an image of the equipment.   The "consultant", described by Peters as an employee, was also present during the "trusted build".  During the "trusted build", Peters took a video recording and still photographs of the "trusted build" process.   Following the "trusted build", the "consultant" took another image of the electronic vote-tabulating equipment.

After the "trusted build" confidential passwords were publicly disseminated and the Secretary began an investigation.  On August 12, 2021, the Secretary "decertified" the Mesa County voting equipment, asserting that the equipment had been compromised by the actions of Peters and Knisley.  The "decertification" prohibited Mesa County from using the election equipment in the upcoming November 2021 election.

On August 23, 2021, Knisley was suspended.  *See Exhibit 6.*  The suspension was based on an investigation that had begun related to complaints received from other employees of "inappropriate, unprofessional conduct in the workplace", as well as a pending criminal investigation "into the acts that resulted in the decertification of the voting machines".  *Id.*  The suspension letter prohibited Knisley from being at the "work

site" and instructed Knisley "to refrain from conduct which might be perceived as intimidating to other Mesa County employees. *Id.*

Brenda Moore, the Mesa County Human Resources Director, delivered the suspension letter to Knisley on August 23, 2021, and escorted Knisley out of the Mesa County building. Fisher saw Knisley being walked out of the offices on August 23, 2021. As Knisley passed Fisher, Knisley told Fisher "I have to leave", gave Fisher a key (presumably to Knisley's office), told Fisher to keep the key, and told Fisher to call Peters. Thereafter, Fisher called Peters.

However, despite her suspension and instruction, Knisley had returned to the offices on August 25, 2021. Ms. Moore was notified of the possibility of Knisley's presence by Stephanie Wenholz. Ms. Wenholz, the Elections Manager for the Mesa County Elections Office, had been told by another employee in a different division (who received an email from Peters) that Knisley would be in the office later that day. Ms. Wenholz conveyed the information to Ms. Moore, asking for direction. Ms. Wenholz was asked to notify Moore if Knisley appeared at the office.

Later, Ms. Wenholz saw Knisley drive up to the building, exit her car, and walk toward the Motor Vehicle offices (which are in the same building as the Election offices, but use a different entrance). After a short time, Ms. Wenholz saw Knisley and Fisher coming from the secured area into an unsecured hallway in the elections portion of the offices. Ms. Wenholz was positive that Knisley had been in the secured area as she heard a security door unlock.

Fisher did not dispute that Knisley was in the secured area of the offices.  Fisher testified that she had been told by Peters that Knisley was going to be in the offices and Knisley would be "getting things done for [Peters]".  Fisher facilitated Knisley's entry into secured areas[5], not questioning why they were using Fisher's security access and not Knisley's.  Fisher stated she knew Knisley did not have a key card that would be necessary to get into the secured areas.  Despite knowing that Knisley had been suspended two days prior and was without an access card to get into the secured area of the election offices, Fisher testified that she "did not know" that Knisley was still on administrate leave on August 25, 2021.

During the time Knisley was in the offices, she asked Fisher to print a document.  Because a badge was necessary to use the printer and Knisley did not have a badge, Knisley could not use the printer.  Fisher printed the document for Knisley but testified that she did not give the document to Knisley.  Instead, Fisher testified that she was asked by Knisley to print the document and call Peters.  Fisher did so.  Sometime after the document was printed, Ms. Moore arrived and Knisley was escorted out of the offices once again.  It is unclear what happened to the printed document.

On September 1, 2021, employees were provided with an email notifying staff that Knisley had "been court ordered not to have any contact, direct or indirect, with any Clerk and Recorder employees" and was "not to be present" at the offices of the Clerk and Recorder.  *See Exhibit DD*.  Knisley remains on suspension.

---

[5] The Court recognizes that Fisher's testimony changed on cross-examination by her attorney.  The Court does not find the changed testimony credible based on the unequivocal testimony initially provided.

The Secretary and Hess later filed a court action to prohibit Peters and Knisley from being the DEO for the November 2021 election.  On October 13, 2021, the Court issued the Order re: Verified Petition for Relief Under C.R.S. §1-1-113 in Mesa County Case No. 21CV30214 (hereafter *"Mesa I Order"*).

As a result of the actions of Peters and Knisley and the decertification of the election equipment, the Board was forced to quickly obtain voting equipment that could be used in the November 2021 election.  Mesa County Commissioner, Scott McInnis, described how the Board had been "blindsided" by the actions of Peters and the repercussions that resulted in equipment that could not be used.  A new agreement had to be quickly negotiated due to the fast-approaching election.  Commissioner McInnis described how Mesa County had 18 days to get certified equipment and to get ballots approved to send to those in the military.

On August 24, 2021, the Board entered into the Second Amendment to and Extension of Voting System and Managed Services Agreement by and Between Dominion Voting Systems, Inc. and Mesa County, Colorado (hereafter "Dominion Extension").  *See Exhibit 1, Exhibit C.*  A significant part of the Dominion Extension was Dominion's agreement to release any claims against Mesa County.  Commissioner McInnis testified that the Board was very concerned that Dominion would file a lawsuit against Mesa County based on the statements and actions of Peters, as they had heard about such lawsuits in other parts of the country.  Therefore, the release of claims was an important part of the Dominion Extension.  Although they considered an alternative vendor, the Board would have had increased expenses, including:  a buyout fee for the

remaining two year term on the 2016 Dominion contract; whatever payment would have been required to independently secure a release from Dominion; and, payments to the new vendor, during a time that would overlap the payments being made to Dominion based on the prior contract.   Therefore, given their situation, the Board determined that the Dominion Extension was the most feasible option.

In the *Mesa I Order*, the Court determined that Peters and Knisley were "unable or unwilling to appropriately perform the duties of the Mesa County Designated Election Official."   The Court also entered an injunction "prohibiting Peters and Knisley from performing as the Designated Election Official for Mesa County."   Finally, the Court designated Wayne Williams as the DEO for the November 2021 election and Sheila Reiner as the Election Supervisor.

Once the DEO issues had been adjudicated and Mesa County had operable equipment, the election was conducted in November of 2021.   In order to assure the citizens of Mesa County that the election equipment was accurate in tabulating ballots, the Board authorized the ballots to be re-tabulated by another voter equipment system, the Clear Ballot system.   The Board also conducted a hand-count and purchased software to allow citizens to independently tabulate the votes.   Ultimately, the increased costs to the Board (i.e., the citizens of Mesa County) for the November 2021 election was described as "north of $100,000".   This did not include the major disruption to the county processes, including numerous executive sessions by the Board.   Commissioner McInnis testified that "tomorrow" would be the 30th executive session related to the "Tina Peters situation".

Following the 2020 election, Peters made various allegations regarding irregularities and fraud in tabulating the 2020 election votes that had occurred. Commissioner McInnis testified that the Board investigated each and every allegation made by Peters. Based on its investigation, the Board determined there had been no showing that "one fraudulent vote" took place in Mesa County. Irrespective of the extensive efforts and investigation regarding the allegations of fraud, Peters continued to make claims related to the 2020 election.

On or about December 30, 2021, Peters appointed Julie Fisher as the "Second Chief Deputy Clerk and Recorder". This was not a position contained in the "authorized position listing" for authorized employees of Mesa County. Fisher had been originally hired to work in the Motor Vehicle Division of the Clerk and Recorders Office in 2020 and had little experience in conducting an election. Fisher's election experience consisted of having worked during the 2006 election in Adams County verifying signatures and doing new registrations. In 2008, Fisher had also worked as an election judge. Other election experience Fisher had was minimal and she acknowledged that she had never conducted an election. Additionally, Fisher testified that she had not completed the training offered by the Secretary, had never been a DEO, had never been an Election Director, and had never held any job with the word "election" in the title. The criteria used by Peters to appoint Fisher as the "Second Chief Deputy Clerk and Recorder" was not explained.

Brenda Moore, the Mesa County Human Resources Director testified that she keeps the "authorized position listing" which records the authorized positions for

employees hired by Mesa County.  Ms. Moore testified that Fisher is not listed as a "chief deputy" of the Mesa County Clerk and Recorder's Office, second or otherwise.  Instead, Fisher is an hourly employee that was hired to work in the Mesa County Motor Vehicle Division.

Having continuing concerns but wanting to give Peters an opportunity to work with the Secretary in conducting the 2022 election, the Secretary issued Election Order 2022-01 on January 10, 2022 (hereafter "EO 2022-01").  Christopher Beall, the Deputy Secretary of State, was the principal drafter of EO 2022-01.  EO 2022-01 was drafted to ensure compliance with the Election Code and the authority of the Secretary.  EO 2022-01 included various requirements that Peters was required to follow if she was going to conduct the 2022 election.

The concerns that led to the issuance of EO 2022-01 were based, in part, by the actions of Peters in 2021.  However, of greater concern were statements Peters made after she was removed as the DEO for the 2021 election.  EO 2022-01 set out several instances of statements made by Peters.  On November 18, 2021, Peters participated in a FacebookLive broadcast stating, "They're the ones that cheated. They're the ones that destroyed election records. They're the ones that are allowing influences to come into our computers changing votes and doing all these things." *See Exhibit 1, pg. 3.*  On December 1, 2021, during a Truth and Liberty Rally in Grand Junction, Peters stated "So I did what any business person would do and anyone that is elected by the people, and one of their main jobs is to protect election records, that doesn't fall on anyone else, that falls on me and I will keep fighting." *Id.* Also, on January 6, 2022, during another FacebookLive

broadcast, Peters stated, "We're not backing down. If we don't get this election irregularity solved, problem solved, there's not going to be any fair elections. … We've got to get those machines so that they are transparent to the people and, they're not able to do what they're designed to do." *Id.* Peters did not dispute the statements attributed to her in EO 2022-01.

Due to numerous statements by Peters, the Secretary determined that Peters "continues to present a danger to the security of elections in Mesa County". *See Exhibit 1, pg. 2.* As a result of various concerns regarding Peters, as well as her willingness and ability to run the 2022 election, EO 2022-01 required Peters to do the following[6]:

1. Peters was required to execute the Certification and Attestation of Compliance under penalty of perjury within seventy-two (72) hours of receiving the EO 2022-01.

2. Upon resuming the DEO duties for Mesa County, Peters was required to deliver a copy of EO 2022-01 to all employees of the Mesa County Clerk and Recorder's Office and ensure that any new employee hired for her office during 2022 was provided with a copy.

3. Peters was notified that an "Election Supervisor" would be appointed by the Secretary who would have the "authority to oversee all decisions made and actions taken by Clerk Peters in connection with any election-related matter related to the 2022 Primary Election and 2022 General Election in Mesa County."

4. The Secretary would also designate staff in her office with authority act to on her behalf.

5. Peters could not make any "election-related" decisions without submitting the proposed decision to the Election Supervisor[7], in writing. Until the Election Supervisor approved the decision in writing, no actions could be taken by Peters.

---

[6] The requirements are not set out verbatim. Rather this the Court's summary of the various provisions.

[7] The Order also allowed for another Secretary designated person to approve the decision. This alternative applied to all paragraphs.

6.  Peters was required to provide every written election-related communication made by Peters as Mesa Clerk or Mesa DEO, both internal and external, to the Secretary on a daily basis.

7.  Peters was prohibited from being physically present in an area where the voting equipment was stored unless the Elections Supervisor was also physically present.

8.  Peters was prohibited from being in locations where any voting equipment was in use, unless the Elections Supervisor was also physically present.

9.  Peters was prohibited from using the centralized statewide voter registration system known as "SCORE" until Peters successfully completed the applicable training.  After completing the training, Peters could only use "SCORE" under the supervision of the Elections Supervisor.

10.  Peters was prohibited from "directing, instructing, suggesting, participating with, or assisting any other person" in connection with the voting equipment, SCORE system, or other confidential voter information without first receiving written permission from the Election Supervisor.

11.  Peters was prohibited from approving or granting key-card badge access to the room where the voting equipment was located without first providing a criminal background check for the person receiving the key-card badge access and obtaining approval from the Election Supervisor.

12.  Peters was required to provide, on a daily basis, "true and correct copies of all electronic logs for the key-card swipes" of each door to the "Mesa County Elections Division".

13.  Peters was required to ensure that video surveillance of the voting equipment and entrances to the rooms was continuously available to the Secretary 24-hours per day and 7 days a week, without interruption.  Peters was also required to ensure that log-in access to storage of video or video files were delivered on a daily basis so they could be reviewed at any time.

14.  Peters was required to ensure that no single person would be alone in any room where the voting equipment was located and stored and that the Election Supervisor would be present with anyone accessing the voting equipment at all times.

15.  Peters was required to submit weekly written progress reports regarding "any and all election related matters".  The reports had to confirm "in detail that [Peters]

was meeting each statutory or administrative milestone and requirement related to any upcoming election".

16. Peters was required to "make herself … available to consult with the Election Supervisor … to discuss any election-related matters".

17. Peters was prohibited from directing someone else to take actions that Peters was prohibited from performing.

18. Peters was required to conduct "all 2022 elections" using the "Mesa County's certified Dominion Voting Systems Democracy Suite voting system and voting equipment" based on the contracts for use.

19. Peters was prohibited from acting, failing to act, encouraging others, or enabling others to act in a manner that compromised the continuous security and certification of the current voting system in Mesa County.

20. Sandra Brown and Belinda Knisley were prohibited from any involvement in the Mesa County Elections Division and were prohibited from being physically present at any of the facilities of the Mesa County Elections Division.

21. Peters was required to "repudiate, in writing" statements she made on January 6, 2022, and Peters' "assertion that 'We've got to get those machines so... they're not able to do what they're designed to do,' and further all other statements she has made indicating a willingness to compromise voting system equipment."

22. Peters was required to notify "all current and future employee *sic* of the Mesa County Elections Division in writing that they must promptly report any actual or potential violations of this Election Order 2022-01 or of the Election Code to the Elections Supervisor or the Secretary's Designee[s]."

   *See Exhibit 1, pg. 4-7.*

Peters was given 72 hours from receipt of EO 2022-01 to sign the Certification and Attestation. Based upon the date of EO 2022-01, the Court infers that the deadline was approximately January 13, 2022.

   Peters never signed the required Certification and Attestation. Mr. Beale testified that Peters did not contact the Secretary to discuss the various provisions, request any

language changes, or remove of any provisions.  Likewise, Peters did not challenge EO 2022-01 or request judicial review of the final order pursuant to C.R.S. §1-1-110.  If Peters had signed the Certification and Attestation, the Secretary would not have filed the instant action or sought Peters' removal as the DEO.

On January 18, 2022, the Board adopted Resolution 2022-5 (hereafter "Board's 2022-5").  *See Intervenor Exhibit 1A.*  In the Board's 2022-5, the Board designated Bantz as the County's DEO for the 2022 election.  Bantz's term was to begin following the conclusion of Wayne Williams' term as DEO for the 2021 election.

The instant action was filed on January 18, 2022.

Following the filing of the Petition, on March 9, 2022, a Grand Jury issued indictments for Peters and Knisley in two separate criminal cases.  *See Mesa County District Court Case Nos. 22CR371 and 22CR372, respectively.*  As a result of the indictments, Peters and Knisley were criminally charged with various offenses related to their actions prior to the 2021 election.  In the criminal cases protection orders were entered and Peters and Knisley posted bond.  Bond conditions for both Peters and Knisley included:  no contact with any employees of the Clerk and Recorders Office; and, no contact with the Clerk and Recorders office at 3225 I-70B Suite A2 Clifton, CO, or 200 S. Spruce St. Grand Junction, CO.  The protection orders were substantially similar.  Since the filing of the respective actions, there have been requests to modify bond.  To date, the conditions of bond with respect to contact with employees or the offices have not change.  As a result of the bond conditions and protection orders, the Respondents agreed that Peters and Knisley are currently unable to perform the duties of the DEO.

In the Petition, the Secretary and Hess requested: a declaration that Peters is absent and/or unable to perform the required duties and enjoin Peters from acting as the Mesa County DEO for the election cycle in 2022; a declaration that Knisley is likewise absent and/or unable to perform the required duties and enjoin Knisley from serving as the Mesa County DEO; a declaration that Fisher is unable to serve as the Mesa County DEO based on her lack of training and experience; and a declaration that Brandi Bantz serve as the Mesa County DEO for the 2022 elections.

The Board makes substantially the same requests.

The Respondents assert that there is no legal basis for the Petitioners' requests and ask that the requests be denied. However, if it is determined that Peters and Knisley are unable to be the Mesa County DEO for the 2022 elections, the Respondents request the Court recognize Fisher as the Second Chief Deputy and thereby the Mesa County DEO.

### III. LEGAL ANALYSIS

**A. The Parties and the Colorado Election Code**

*Secretary of State*

The secretary of state is a constitutional office which is part of the executive department and is elected by the citizens of the State of Colorado. *CO Const. Art. 4, §1.* The secretary of state must perform the duties prescribed by the constitution or by law. *Id.* Some of the duties set out in the Colorado Revised Statutes are to supervise general and statewide ballot issue elections and to enforce the Election Code. *C.R.S. §1-1-107(1)(a) and (b).* The secretary of state also serves as the "chief state election official" and must

coordinate the responsibilities of the State of Colorado under federal acts in accordance with the requirements of the Election Code.  *C.R.S. §1-1-107(1)(d) and (e).*

The secretary of state has various powers, including: the power to promulgate, publish and distribute "such rules as the secretary of state finds necessary for the proper administration and enforcement of the election laws"; to "review the practices and procedures of county clerk and recorders, their employees, and other election officials in the conduct of … general … elections …"; and, to "enforce the provisions of this code by injunctive action … in the district court for the judicial district in which any violation occurs."  *C.R.S. §1-1-107(2)(a)(b) and (d).*

To promote the Election Code, specific requirements have been adopted in the Code of Colorado Regulations (CCR).  The CCR provisions are more detailed than the Colorado Revised Statutes and are regulations that have been found to be necessary for the proper administration and enforcement of election laws.  *See C.R.S. §1-1-107(2)(a).*

*Petitioner, Heidi Jeanne Hess*

It was undisputed that Hess resides in Mesa County, Colorado.  It was also undisputed that Hess is a registered elector of Mesa County, Colorado.  In this case, Hess signed the Petition after reading the Petition and listening to the various statements attributed to Peters.

*Mesa County*

Mesa County is a political subdivision of the State of Colorado and a creation of statute.  The location and boundaries were determined by the General Legislature in 1883.  *C.R.S. §30-5-143.*  As political subdivision of the state, Mesa County has only those

powers that are expressly granted to them by the Colorado Constitution or by the General Assembly. *Board of County Com'rs of Douglas County, Colo. v. Bainbridge, Inc.*, 929 P.2d 691, 699 (Colo.,1996). The powers of Mesa County and the Board are set out in the statutes. *See C.R.S. §§30-11-101 and 30-11-107*. C.R.S. §30-11-117 instructs that "[i]n case a vacancy occurs in any county office, … by reason of death, resignation, removal, or otherwise, the board of county commissioners of such county has power to fill such vacancy by appointment …" Likewise, the Election Code provides that "[a]ll vacancies in any county office, except that of county commissioner, shall be filled by appointment by the board of county commissioners of the county in which the vacancy occurs, until the next general election, at which time the vacancy shall be filled by election." *C.R.S. §1-12-205.*

*Clerk and Recorder & Deputy*

Each county shall have an elected county clerk. *CO Const. Art. 14 §8.* The county clerk shall be the ex officio recorder of the deeds and clerk to the board of county commissioners. *Id.* All other duties and powers of a county clerk, including election administration, are limited to those derived from statute. *Bd. of Cnty. Comm'rs v. Love*, 470 P.2d 861, 862-63 (Colo. 1970). Before any county clerk and recorder "enters upon the duties of [the] office," they must "take and subscribe an oath or affirmation . . . to faithfully perform the duties of the office upon which [they] shall be about to enter." *CO Const. Art. 12 §8.* Each county clerk and recorder is required to consult with the secretary of state in making decisions and interpretations of the Election Code. *C.R.S. §1-1-110(1).* The county clerk and recorder is also required to "follow the rules and orders promulgated by the secretary of state pursuant to [the election] code." *Id.*

Additionally, when a clerk is elected, the clerk is required to "execute … and file … a bond … with conditions in substance as follows:  'Whereas, The above bounden ........ was elected to the office of the county clerk of ........, on the ........ day of ........, Now, therefore, if the said ........ shall faithfully perform all the duties of the office …"  *C.R.S. §30-10-401(1).*

Each county clerk and recorder is considered the "chief election official for the county" and is the "chief designated election official for all coordinated elections."  *C.R.S. §1-1-110(3).*  A "designated election official" is the "member of a governing board, secretary of the board, county clerk and recorder, or other person designated by the governing body as the person who is responsible for the running of an election."  *C.R.S. §1-1-104(8).*

If the county clerk and recorder is absent or "for any reason is unable to perform the required duties", all powers and authority granted to the county clerk and recorder "may be exercised by the deputy clerk".  *C.R.S.  §1-1-110(2).*  There is no position recognized in the Colorado Revised Statutes with a title of "Second Chief Deputy", or in the "authorized position listing" kept by the Mesa County Human Resources Department.

*Colorado Election Code*

Elections are governed by the Election Code, which includes the CCRs.  Various types of elections are defined, including primary and general elections.  A "primary election" is "the election held on the last Tuesday in June of each even-numbered year and the presidential primary election held in accordance with part 12 of article 4 of [] title

1." *C.R.S. §1-1-104(32)*. A "general election" is "the election held on the Tuesday succeeding the first Monday of November in each even-numbered year." *C.R.S. §1-1-104(17)*.

In Colorado primary and general elections votes may be cast, registered, scanned, and tabulated via an electromechanical or electronic voting system that must be certified by the Secretary of State. *C.R.S. §§§ 1-5-601(1), 1-5-612, 1-5-623*. Access to such electronic or electromechanical voting systems and voting equipment[8] is strictly limited by Colorado law and the rules promulgated by the Secretary of State. Such rules include: a requirement that chain-of-custody evidence be maintained (8 CCR 1505-1:20, Election Rules 20.3); the use of physical locks and seals (*Id.* at 20.4); restrictions to access of secured areas to certain employees who have also passed background checks (*Id.* at 20.5); limitations on users to those who have electronic access to voting equipment (*Id.* at 20.6); requirements for video surveillance of voting equipment at certain times (*Id.* at 20.9); prohibitions on elected officials from personally preparing, maintaining, or repairing voting equipment (C.R.S. §1-5-607(1); and, requirements that DEOs establish their own security plans for the equipment, subject to the approval of the Secretary of State. *C.R.S. §1-5-616(5)*. Additionally, Colorado's voting systems are prohibited from being connected to the Internet. *8 CCR 1505-1:20, Election Rule 20.19.1*.

In the event of a controversy between an official and any officer of a political party, a verified petition may be filed "alleging that a person charged with a duty under this

---

[8] C.R.S. §1-1-104(50.7) defines voting equipment as "electronic or electromechanical voting systems, electronic voting devices, and electronic vote-tabulating equipment, as well as materials, parts, or other equipment necessary for the operation and maintenance of such systems, devices, or equipment".

code has committed or is about to commit a breach or neglect of duty or other wrongful act, after notice to the official which includes an opportunity to be heard, upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of this [election] code." *C.R.S. §1-1-113(1)*. The burden of proving the allegations is on the petitioner. *Id.*

C.R.S. §1-1-107(2)(d) provides the secretary of state with the power to "enforce the provisions of [the election] code by injunctive action".

## B. Motion to Dismiss

### 1. Standing

The Respondents argue that the Secretary does not have standing to bring an action pursuant to C.R.S. §1-1-113. This was an argument made during the prior case and addressed in the *Mesa I Order*. The *Mesa I Order* became a final order and binding on the parties after the Colorado Supreme Court declined to review the *Mesa I Order*. Unsurprisingly, the Court disagrees with the Respondent's current assertion that the Court "got it wrong".

Irrespective, the Court restates and supplements its earlier analysis.

In order to bring an action before a court, the claimant must have standing to bring the action. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.,2004). Standing has been described as "a threshold issue that must be satisfied in order to decide a case on the merits." *Id.*, *see also HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 892 (Colo.2002). "Standing is a judicially developed test … [and] much of the standard is a prudential exercise of

judicial restraint." *Id.* In Colorado, parties benefit from a relatively broad definition of standing. *Id.*

Here, the Court determines that Hess has standing. Hess is an "eligible elector" of Mesa County who filed a "verified" petition and alleged that the Respondents "committed or [are] about to commit a breach or neglect of duty or other wrongful act[.]" *See C.R.S. §1-1-113(1).* Although counsel for the Respondents questioned Hess' independence, the Court determines that Hess provided credible testimony at the hearing held in this case and is an independent party who made the decision to be part of bringing this litigation.

Irrespective of Hess' standing, the Respondents argue that the Secretary does not have standing. The Court disagrees. Rather, the Court determines that when "at least one individual plaintiff has standing," the Court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977); *see also Weld Air & Water v. Colorado Oil and Gas Conservation Commission*, 457 P.3d 727, 732 n.4 (Colo. App. 2019). Although the Respondents argue that Hess lacked personal knowledge of the facts alleged in the Petition, Hess' testimony contradicted the assertion. Furthermore, lack of personal knowledge and standing are two vastly different concepts. One is an evidentiary issue (lack of knowledge), the other a jurisdictional issue (lack of standing). The foundational requirements of the Colorado Rules of Evidence have no bearing on the factual determinations in this case or whether Hess and the Secretary have standing.

The Court also notes the Colorado Supreme Court's holding in *Carson v. Reiner*, 370 P.3d 1137, 1141 (Colo. 2016), which expressly "requires the district court, upon a finding of good cause, to issue an order requiring substantial compliance with the provisions of the election code whenever any eligible elector files a verified petition alleging that a person charged with a duty under the code has committed a breach or neglect of that duty or other wrongful act." Here, an eligible elector has filed a verified petition alleging breach or neglect of duty or other wrongful acts.

Therefore, based upon the above and the applicable legal authority, the Court determines that Hess satisfies the statutory requirements for standing to maintain a claim against Respondents under § 1-1-113(1). Furthermore, since Hess has standing, the Court determines that it is appropriate for the claims of the Secretary to be included in the Petition.

### 2. Verified Petition

The Respondents also argue that there must be a "verified petition". The Court agrees that a verified petition is required pursuant to C.R.S. §1-1-113. In this case, the Verified Petition for Relief Under C.R.S. §1-1-113 was, in fact, verified by Hess. To the extent the Respondents are arguing that each Petitioner verify the Petition, this is not required by the statute. Instead, C.R.S. §1-1-113(1) requires that "when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty under this code has committed or is about to commit a breach or neglect of duty or other wrongful act …" the Court may take action. Here, Hess, the

eligible elector, signed and verified the Petition.  She reaffirmed her signature during her testimony.

Therefore, the Court determines that the requirement of a "verified petition" has been met.

### 3. Inclusion of claims under C.R.S. §1-1-107(2)(d) and 1-1.5-104(1)(d) or C.R.C.P. Rule 57

#### i. *Fraizer*

Next, the Respondents argue that if the Court determines that the claims pursuant to C.R.S. §1-1-113 can proceed, the Petitioners cannot include claims pursuant to C.R.S. §1-1-107(2)(d), 1-1.5-104(1)(d) or C.R.C.P. Rule 57.  The basis of this argument is the holding in *Frazier v. Williams,* 2017 CO 85, 401 P.3d 541 (Colo.,2017). The Respondent argues that in *Frazier v. Williams* "the Supreme Court made clear that Section 113 proceedings stand on their own and may not be combined with other proceedings." However, *Frazier's* holding was not so broad.

*Frazier* involved a case where the plaintiff brought a claim pursuant to C.R.S. §1-1-113 and a separate claim pursuant to 42 U.S.C. § 1983.  In deciding that the claim pursuant to 42 U.S.C. §1983 could not be included with the claims pursuant to C.R.S. §1-1-113, the Supreme Court primarily relied on the Supremacy Clause and concerns regarding the import of state procedures to the federal claim.

Here, no federal claim has been alleged.  Instead, the claims brought by the Petitioners are all derived from the Election Code and allegations of breach or neglect of duty and/or inability to meet the requirements of the Election Code.  C.R.S. §1-1-113(4)

specifically references other provisions of the Election Code stating, "[e]xcept as otherwise provided in this part 1, the procedure specified in this section shall be the exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election."

Therefore, the Court determines that neither *Fraizer* nor C.R.S. §1-1-113 preclude the Petitioners claims pursuant C.R.S. §§1-1-107(2)(d) and 1-1.5-104(1)(d).

### ii.   *Summary Proceeding*

The Respondents also argue that C.R.S. §1-1-113 is a summary proceeding and claims pursuant to C.R.S. §1-1-107 and 1-1.5-104 are not.  The Respondents do not cite any legal authority to support the position that other claims cannot be included on the basis that they are not "summary proceedings".  Accordingly, the Court determines that this is not a basis to dismiss this action.

### iii.   *Remedy under Section 113*

Finally, the Respondents argue that C.R.S. §1-1-113 provides specific remedies and no remedies may be allowed beyond the language in C.R.S. §1-1-113.  The Court disagrees and determines that the Petitioners claims are not limited to C.R.S. §1-1-113.  Rather, the Court must read the Election Code as a whole and make a determination based upon all claims that have been brought.  C.R.S. §1-1-107(2)(d) provides the secretary of state with the power to "enforce the provisions of [the election] code by injunctive action".

Therefore, to the extent the Respondents argue that the Court is limited to the language of C.R.S. §1-1-113, the Court disagrees.

The Court also notes that in the Respondents' Combined Hearing Brief and Reply in Support of Motion to Dismiss, the Respondents concluded with a request to "dismiss this matter or alternatively set this matter for a hearing".  The hearing was held.

Therefore, based upon the findings above and other findings made in this Order, the Respondents' Motion to Dismiss is denied.

### C.  Petitioners' Claims

The essence of the claims in Petition are that Peters and Knisley are absent and/or unable to perform their required duties related to the Election Code.  The Petitioners also claim that Fisher is not qualified and should not be designated as the DEO.

The Court finds the following facts:

- Peters, as the Clerk and Recorder, is required to comply with the law.

- Peters, as the Clerk and Recorder, is required to comply with the Election Code.

- Peters, as the Clerk and Recorder, is required to "follow the rules and orders promulgated by the secretary of state" pursuant to the Election Code.  *C.R.S. §1-1-110(1).*

- Knisley was suspended from her position as Chief Deputy Clerk and Recorder on August 23, 2021.  The suspension included a prohibition from being present at the worksite.

- On August 25, 2021, Knisley went to her worksite.

- On August 25, 2021, Fisher facilitated Knisley's entry into secured areas of the Clerk and Recorder's offices and printed a document at the request of Knisley.

- Based on the actions of Peters and Knisley, they were removed as the DEO for the November 2021 election.

- To hold the November 2021 election, the Board was forced to obtain alternative election equipment.  The Dominion Extension was entered into on August 24, 2021.

- To assure the Mesa County citizens that the election was secure, and their votes were correctly tabulated, the Board spent "north of $100,000" to: have the votes re-tabulated by Clear Ballot; conduct a hand count; and purchase software so the citizens of Mesa County could independently tabulate the votes.

- The Board investigated the allegations brought by Peters and determined that there was no showing that "one fraudulent vote" took place in Mesa County.

- Irrespective of the Board's efforts, Peters continued to make claims of voting irregularities and fraud.

- On November 18, 2021, Peters participated in a FacebookLive broadcast stating, "They're the ones that cheated. They're the ones that destroyed election records. They're the ones that are allowing influences to come into our computers changing votes and doing all these things." *See Exhibit 1, pg. 3.*

- On December 1, 2021, during a Truth and Liberty Rally in Grand Junction, Peters stated "So I did what any business person would do and anyone that is elected by the people, and one of their main jobs is to protect election records, that doesn't fall on anyone else, that falls on me and I will keep fighting." *Id.*

- On December 31, 2021, Peters designated and appointed Fisher as a "Second Chief Deputy Clerk".

- There is no official position listed in the Mesa County "authorized position listing" that is designated as the "Second Chief Deputy Clerk".

- On January 6, 2022, during another FacebookLive broadcast, Peters stated, "We're not backing down. If we don't get this election irregularity solved, problem solved, there's not going to be any fair elections. … We've got to get those machines so that they are transparent to the people and, they're not able to do what they're designed to do." *Id.*

- On January 10, 2022, the Secretary issued EO 2022-01.

- A requirement of EO 2022-01 was that Peters sign the Certification and Attestation within 72 hours of receiving EO 2022-01.

- Peters never signed the Certification and Attestation.

- Peters did not challenge EO 2022-01 or request judicial review of the final order pursuant to C.R.S. §1-1-110.

- On January 18, 2022, the Board adopted the Board's 2022-5 designating Bantz as the County's DEO for the 2022 election cycle.

- On March 9, 2022, Peters and Knisley were indicted in separate criminal actions.

- In Mesa County District Court Case No. 22CR371, Peters was indicted on charges of: three counts of Attempt to Influence a Public Servant; two counts of Conspiracy to Commit Criminal Impersonation; Criminal Impersonation; Identity Theft; First

Degree Official Misconduct; Violation of Duty; and, Failure to Comply with Requirements of Secretary of State.

- In Mesa County District Court Case No. 22CR372, Knisley was indicted on charges of: three counts of Attempt to Influence a Public Servant; Conspiracy to Commit Criminal Impersonation; Violation of Duty; and Failure to Comply with Requirements of Secretary of State.

- As part of each of the two criminal cases above, Peters and Knisley posted bond on March 10, 2022. The bond conditions of Peter and Knisley include: no contact with any employees of the clerk and recorder's office[9]; no contact with the clerk and records office at 3225 I-70B suite A2, Clifton CO or 200 S. Spruce St., Grand Junction, CO. Additionally, Peters may not have contact with Knisley, and Knisley may not have contact with Peters.

- On April 14, 2022, a protection order was issued in both of the criminal cases with the same conditions.

Peters took an oath to "faithfully perform the duties of the office" as was required by the Colorado Constitution and the Colorado Revised Statutes. *CO Const. Art. 12 §8 and C.R.S. §30-10-401.* Those duties included following the rules and orders promulgated by the Secretary pursuant to the Election Code.

EO 2022-01 required that Peters sign the Certification and Attestation within 72 hours. She did not. While Peters argues that EO 2022-01 should be rendered invalid as,

---

[9] Knisley has an exception of Alex Walker.

in part, a violation of free speech, this could have been something that Peters argued had she requested a review of EO 2022-01 as provided for in C.R.S. §1-1-110. Furthermore, the only speech that was sought to be curtailed was speech that would "indicate a willingness to compromise the voting system equipment", which was not an unreasonable requirement. Irrespective, despite the protests of the Respondents, the Court determines that EO 2022-01 is now a final rule that has not been challenged, nor was there ever a request for judicial review.

Here, Peters has been previously determined to be untruthful with the Secretary and her staff, and she has previously failed to follow the rules and orders of the Secretary. Knisley has been determined to have aided Peters in her wrongful acts. Based upon the prior acts, as well as the acts of Peters that followed, the Secretary issued EO 2022-01.

Once again, Peters failed to follow the orders of the Secretary.

Furthermore, criminal indictments have now been generated where there are bond conditions and protection orders in place which preclude Peters and Knisley from participating in any of the election duties at this time.

Therefore, the Court finds that Peters has breached her duties by failing to follow the order of the Secretary. The Court further finds that Peters and Knisley have committed a neglect of duty or other wrongful act such that they are unable to perform the duties required under the Election Code due to the allegations of criminal acts that are currently pending and the bond conditions, as well as protection orders, that are currently in place.

### D.  C.R.S. §1-1-107 Claims

C.R.S. §1-1-107(2)(d) provides the Secretary with the power to enforce the provisions of the Code by injunctive action.  Here, the Secretary requests that the Court enforce the provisions of the Code by prohibiting Peters, Knisley, and Fisher from performing as the DEO.  The Board joins in the request.

*Peters*

Each county clerk and recorder, serving as the coordinated election official and DEO, is required to follow the rules, conditions of use, and orders promulgated by the Secretary of State when fulfilling duties and functions under the Code. *C.R.S. §§1-1-110(1), 1-7.5-104.*  In this case, the Court determines that Peters is unable, and has expressed her unwillingness, to follow the rules, conditions of use, and order promulgated by the Secretary.

*Knisley*

Knisley had been appointed as the Chief Deputy for Peters.  Pursuant to C.R.S. §30-10-403, a "chief deputy" is implied in the language that the county clerk "shall appoint a deputy, …; and such deputy, in case of the absence or disability of the county clerk, or in case of a vacancy in the office thereof, shall perform all the duties of the county clerk during such absence or until such vacancy is filled."  C.R.S. §30-10-403 goes on to allow the county clerk to "appoint other deputies".

If a county clerk and recorder is absent or unable for any reason to perform the required duties under the Election Code, all power and authority granted to the county clerk and recorder may be exercised by a deputy county clerk. *C.R.S. §1-1-110(2).*

There is no specific provision in the Election Code that addresses the situation where both the county clerk and recorder and the chief deputy county clerk are unable to perform their required duties under the Election Code. "When the language of a statute is susceptible of more than one reasonable interpretation, and is therefore considered ambiguous, or when there is conflicting language in different provisions, intrinsic and extrinsic aids may be employed to determine which reasonable interpretation actually reflects the legislative intent." *Carson v. Reiner*, 370 P.3d 1137, 1140, 2016 CO 38, ¶ 13 (Colo., 2016).

Here, the Court determines that Knisley, like Peters, is unable to follow the rules, conditions of use, and order promulgated by the Secretary. Based on the statutory language, "a deputy" shall have all power and authority granted to the county clerk and recorder. *C.R.S. §1-1-110(2)*. This does not, necessarily, require that the power and authority be exercised by a "Second Chief Deputy Clerk".

*Fisher*

On December 30, 2021, Peters appointed Fisher as the "Second Chief Deputy Clerk". *See Exhibit AA.* However, this position is not authorized by any statute or by the "authorized position listing" of Mesa County kept by the Mesa County Human Resources Department.

On May 12, 2020, Brandi Bantz was appointed by Peters as "A Deputy County Clerk". *See Exhibit 5.*

The Court determines that there is no special status in the appointment of Fisher as the "Second Chief Deputy Clerk" for the purposes of the DEO.

Fisher was originally hired to work in the Motor Vehicle Division of the Clerk and Recorders Office.  While Fisher has extensive experience in the Motor Vehicle Division, her election experience consists of having worked approximately 15 years ago in the 2006 election in Adams County verifying signatures and doing new registrations, and working approximately 13 years ago in 2008 as an election judge.  Other election experience Fisher has is minimal and she acknowledged that she had never conducted an election.  Fisher has not completed the election training offered by the Secretary, has never been a DEO, has never been an Election Director, nor has she held any job with "election" in the title.

*Bantz*

On January 18, 2022, the Board designated Bantz as the Designated Election Official.  *See C.R.S. §§30-11-117 and 1-1-104(8).*  Since that time, Bantz has performed the duties of the DEO.  No evidence was submitted to indicate that Peters objected to Bantz's designation as DEO or that Peters attended the session of the Board where the designation was established by the Board.

Bantz was hired in June of 2020 to be the Election Director for Mesa County.  Prior to her employment with Mesa County, Bantz had been the Director of Elections for Teller County and had been an Election Specialist in El Paso County working with Wayne Williams.  Before leaving her position in El Paso County, Bantz had been promoted to Senior Election Specialist.  Mr. Williams, testifying as an expert in election administration, specifically the conduct and supervision of statewide and federal coordinated elections in Colorado, recommended that Bantz be designated the DEO for the 2022 election cycle.

Since her designation as the DEO, Bantz has ensured ballot stock was ordered in a timely manner, provided a proposed contract to the Board, has been cleaning up voting rolls, has been reviewing petitions submitted by those seeking election, and, has completed other duties typically performed by a DEO.

*DEO*

Pursuant to C.R.S. §1-1-110(2) when the clerk and recorder is unable to perform the required duties "a deputy clerk" may exercise all powers and authority granted to the clerk and recorder. There is no requirement that "the" deputy clerk exercise the powers and authority or that a "Second Chief Deputy" take up that mantel.

Here, the Court determines that Fisher has no specific claim to being appointed as the DEO. Furthermore, the Petitioners have requested the Court name Bantz as the DEO, and, significantly, the Board has designated Bantz as the DEO in Board's 2022-5. Finally, Bantz is clearly more qualified for the position of DEO than Fisher.

Therefore, the Court adopts the Board's designation of Bantz as the DEO and grants the Petitioners and Intervenor's requests to appoint Bantz as the DEO.

## IV. CONCLUSION

Based on the circumstances of this case, including the findings of the Court pursuant to C.R.S. 1-1-113, the Court determines that the Petitioners have met the burden of showing that Peters and Knisley have committed a neglect of duty and are unable to perform the duties of the Mesa County Designated Election Official. The Court further determines that substantial compliance with the provisions of the Election Code requires

an injunction prohibiting Peters and Knisley from performing the duties of the Designated Election Official. *C.R.S. §1-1-113(1).*

Therefore, the request for an injunction pursuant to C.R.S. §1-1-107(2)(d) is granted. An injunction is entered prohibiting Peters and Knisley from performing as the Designated Election Official for Mesa County.

The Court determines that there is no statutory provision for the position of "Second Chief Deputy" for the Clerk and Recorder's office and no such position exists in the "authorized position listing" with Mesa County. Therefore, there is no statutory priority that would cause Fisher to be designated the Designated Election Official for Mesa County.

The Court confirms that Brandi Bantz shall be the Mesa County Designated Election Official until the completion of the 2022 election cycle. "Completion" includes the tabulation and re-tabulation of ballots using voting machines, alternate voting machines, and a hand-count.

DATED this 10th day of May, 2022.

BY THE COURT:

Valerie J. Robison,
District Court Judge