# DANIEL P. RUBINSTEIN
## DISTRICT ATTORNEY

---

TWENTY-FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE
Mesa County Justice Center ~ P.O. Box 20,000 - Dept. 5031 Grand Junction, CO 81502-5031 (970) 244-1730

May 19, 2022

Mesa County Commissioners
544 Rood Ave
Grand Junction, CO 81501

Grand Junction City Counsel
250 North 5th Street
Grand Junction, CO 81501

Re: Conclusion of investigation of Report 3 re: Elections

Mesa County Commissioners and Grand Junction City Council Members,

On March 23, 2022, a report was submitted to the Twenty-First Judicial District Attorney's Office (DA's Office) by Garfield County, Colorado resident Sherronna Bishop and Mesa County, Colorado resident Cory Anderson. I will refer to the report as "Report 3." The report alleges that there is "evidence of potentially unauthorized and illegal manipulation of tabulated vote data during the 2020 General Election and 2021 Grand Junction Municipal Election." As the duly elected representatives of each of these political subdivisions, this letter of my findings of fact and conclusions of law are presented to you in support of my decision that Report 3 incorrectly attributes the anomaly of a second adjudication database to something other than human action. This investigation has revealed that the second adjudication database in both the November, 2020 General Election, and the April, 2021 Grand Junction Municipal Election was caused by direct action of the former Back Office Elections Manager, Sandra Brown. There is no evidence of any other person, program or outside influence leading to the anomaly referenced in Report 3. Further investigation would be required to determine if Sandra Brown's actions resulted in a failure of the Designated Elections Official to be able to preserve the election records as required by statute. However, this investigation has not uncovered any evidence to suggest that the vote count for both elections was not complete and proper.[1]

---

[1]     In Report 3, and in some of the earlier reports submitted to the DA's Office, there is a call to decertify the election results. While my investigation has revealed that the drafters of the report misunderstand the data and that there is no evidence that the vote count was incorrect, my role and the scope of my decision is limited to a conclusion about potential criminal activity. I find no evidence that votes were intentionally counted improperly. My role does not include decisions on certifying or decertifying elections.

## BACKGROUND

On August 9, 2021, I received a phone call from Chris Beall, Deputy Secretary of State, informing me that there was a security breach involving the voting equipment for Mesa County, and advising that his security team would be coming to investigate. Deputy Secretary Beall advised that his team does not conduct criminal investigations, but merely administrative investigations for purposes of certifying or decertifying voting equipment. The purpose of his call was to see if I wanted to assign a criminal investigator to concurrently conduct a criminal investigation as well, as he believed that it was likely crimes were committed which led to the security breach.

C.R.S. § 1-13-101 directs district attorneys to investigate violations of Title I, Article 13 violations under certain circumstances, and to prosecute. While this did not meet the mandatory conditions for investigation, given the source, it seemed prudent to launch an investigation. This investigation led to a criminal indictment. During the investigation, and prior to the indictment, one of the targets, Mesa County Clerk Tina Peters, was making her own allegations of criminal behavior. Clerk Peters claimed that she had made images of the computer system before and after a software upgrade, which would show that others had committed crimes, including the Colorado Secretary of State's Office and Dominion Voting Systems. Two reports had been made available to the DA's Office, including one through Clerk Peters' attorney. Neither report made allegations of criminal behavior, but rather theorized about vulnerabilities that could only manifest upon unauthorized, internal tampering with the equipment. Neither report made claims that those vulnerabilities resulted in any actual compromise of the election.

On March 23, 2022, while the investigation leading to the Grand Jury indictment was still ongoing, Report 3 was delivered to the DA's Office. Clerk Peters has made many claims that this report was drafted from the forensic images she made, and that it proves that election crimes have been committed in Mesa County, Colorado. Having taken the word of representatives of the Colorado Secretary of State and determined that an investigation was appropriate, I concluded that I should also investigate the claims of criminal activity made by Clerk Peters.[2]

## BASIC ALLEGATIONS IN REPORT 3

Report 3 identifies the creation of new adjudication and tabulation databases on October 21, 2020 and classifies that event as "unauthorized."  It concludes that this action makes "the original voter intent recorded from the ballots unknown."  Report 3 states, "The same unauthorized creation of new election databases occurred during the 2021 Grand Junction

---

[2]       **C.R.S. § 1-13-101**(1) Any person may file an affidavit with the district attorney stating the name of any person who has violated any of the provisions of this code and stating the facts which constitute the alleged offense. Upon the filing of such affidavit, the district attorney shall forthwith investigate, and, if reasonable grounds appear therefor, he shall prosecute the violator.

While neither the report from Deputy Secretary Beall, nor Clerk Peters technically meet the requirements to compel an investigation under this statute, I made the decision that my constituents elected me, as their District Attorney, to act in their best interest. Given that these reports were made by elected officials or representatives of elected officials in their official capacity, I believed an investigation was appropriate in both situations.

Municipal Election on March 30, 2021." Report 3 asserts that "there is no function or feature on the EMS server that could be executed inadvertently or deliberately by a local election official that would cause this...[and]…this combination of events could not have been the result of either deliberate or inadvertent actions by those officials."

Report 3 dismisses the possibility of human action in favor of an "external trigger," "signal," or "software algorithm." Report 3 minimizes the human element and suggests that the Mesa County voting equipment has software "preprogrammed" that "could have made the decision to perform the new database creations and the selected record manipulation." In essence, Report 3 makes the allegation that the Dominion EMS server had programing within it designed to disrupt and alter ballot processing based on the computer's detection of "unexpected voting patterns." This claim, in layman's terms, alleges that the human users who were on-site with the Dominion machines on October 21, 2020 and March 30, 2021 did not cause the observed effects, rather the computers caused the observed effects. The unstated, but necessary conclusion to that suggestion is that the humans who manufactured and programmed the computers are culpable, since it is widely understood that computers cannot create or program themselves.

Report 3 makes key distinctions between the November 2020 General Election and the 2021 Grand Junction Municipal Election. According to the authors, their apparent questioning of Mesa County employees ruled out the employees' involvement in creating new databases on both occasions; however, employees apparently recalled irregularities causing "confusion" in 2020, leading them to seek support from Dominion during that election. Report 3 states that the employees specifically recall contacting Dominion support on October 21, 2020, at about 4:00pm because of perceived errors regarding what ballots were being sent to adjudication. Conversely, Mesa County employees apparently reported to the authors that there were no observable errors, unusual activity, or unexpected issues during the 2021 Municipal Election.

<u>REPORT 3 REGARDING HUMAN INVOLVEMENT ON OCTOBER 21, 2020</u>

Regarding any human involvement in the creation of new adjudication and tabulation databases on October 21, 2020, the authors assert:

· "Our analysis shows manipulation, which was neither initiated nor authorized by Mesa County election clerks, of the batches and ballots processed during the first three days of ballot processing in the November 2020 General Election" (p. 9).
· "Mesa County election clerks reported no unusual activity or errors encountered during the processing [prior to October 21, 2020, at 1414 hours] of these 267 batches" (p. 10).
· "Mesa County election clerks were unaware of these batch timestamps, or any issue which could explain them" (p. 10).
· "It has been observed that a clerk giving the EMS [Election Management System] system a command to stop and then restart adjudication in an election again creates new Adjudication and Tabulation databases. Mesa County clerks are very certain that they did not initiate any such action in either the November 2020 or the April 2021 elections. Therefore, it is likely that a procedure internal to the DVS [Dominion Voting Systems] software had to perform a stop and restart of the adjudication services…" (p. 11).

·      "There are only a few possibilities which would explain how the database copying process was initiated."

o    **1. Direct action by Mesa County personnel**…The client application used by election clerks does give them the ability to stop and restart adjudication, which would create the new databases.  However, Mesa County personnel are very clear that they did nothing of the sort and explained that they would only do such a thing in an extreme emergency, as the process would have made the production of legally mandated reports very difficult" (pp. 11-12).

The authors go on to detail other "possibilities" for how the databases were created, which they essentially limit to "triggered remotely" and "algorithmically triggered." At this juncture in Report 3, by the authors' own admissions and assertions, the "manipulation" that they observe could be explained by actions of Mesa County employees, meaning it is possible that the effects the authors see are able to be caused by humans interacting with the voting equipment. The authors continue to address – yet dismiss – this possibility of human involvement:

·      "At this point [October 21, 2020, shortly after 1434 hours], as reported by Mesa County election officials, some Mesa County adjudication officials began noticing that they were being asked to look at ballots that they had already adjudicated.  This is consistent with these ballots and batches being reprocessed in the new Adjudication database" (p. 17).

·      "This caused confusion among the election staff who were assigned the duty of manual adjudication…" (p. 17).

·      "This caused the Adjudication officials to assume that there had been an error and, in some cases, to attempt additional manual adjudications…" (p. 17).

·      "According to several Mesa County election officials, DVS support was contacted at approximately 4PM [1600 hours] on the 21st of October, [2020,] and while the support representative claimed to not have a solution for the issue Mesa County was seeing, that issue ceased soon afterwards" (p. 17).

·      "Extensive questioning of Mesa County election clerks has ruled out human error as the reason for the unauthorized creation of election databases on October 21, 2020, followed by reprocessing of 20,346 ballots.  These personnel have a strong recollection of the events of October 21, 2020, and because of the timelines established both by their recollection and corresponding database time stamps, it is evident that any and all unusual actions they might have taken on that day were in response to the new database's creation…" (p. 27).

<u>FINDINDGS OF FACT AND CONCLUSIONS OF LAW REGARDING OCTOBER 21 ANOMALY</u>

Despite repeated claims that there was extensive questioning of the Mesa County election officials, we were not able to locate a single person who said that they were interviewed by the drafters of Report 3. Investigator Struwe interviewed 11 people who were in the tabulation room and who were involved with tabulation or adjudication. All of them told him that they were not interviewed. The only Mesa County employee with administrative rights to the voting equipment, Former Back Office Elections Manger Sandra Brown, was contacted for an interview, by Investigator Struwe, but refused through counsel. Clerk Peters was contacted through counsel, and declined to cooperate with the investigation. The drafters of Report 3 were contacted. Walter Daugherity advised that he did not interview anyone and that all of the

interviews were done by his co-author, Jeffrey O'Donnell. Mr. O'Donnell declined to be interviewed, and sent Investigator Struwe an email referring him to Clerk Peters' lawyer.

Through video evidence, review of various records and first-hand experience with the Dominion user interface, Investigator Struwe was able to clarify what occurred during the October 21, 2020 anomaly. Prior to the election commencing, logic and accuracy testing occurred. The machines were determined to be working properly, and all test ballots were purged and deleted from the system in accordance with Colorado election rules and laws. On October 19, 2020, the Mesa County elections judges began tabulating (scanning) batches of ballots about an hour before any efforts were made to start the adjudication process.  The below screenshot depicts the moment the first batch of ballots was tabulated, as Elections Manager Brown watches:



The scanned batches, 10 of them, were "submitted" to the internal computer network. When the adjudication process was commenced, the scanned batches were not automatically retrieved into the adjudication session.

On October 19, 2020 at about 12:11pm Sandra Brown enabled automatic result loading, a setting that tells the software to automatically retrieve tabulated batches into adjudication. Immediately, the ten batches that were tabulated during the preceding hour were retrieved into the adjudication session. Subsequent batches were automatically pulled into the adjudication session upon being submitted at tabulation. Elections Manager Brown can be seen enabling the automatic results loading setting in the below screenshot, followed by a screenshot of the election judges apparently viewing the first ballot image for adjudication:





On October 21, 2020, from video evidence, it is clear that election judges are drawing Ms. Brown's attention to a problem during adjudication. From viewing the video, it appears that she tries a trouble-shooting procedure called "reset in progress batches." The objective of this procedure is to refresh the in progress batches so ballot images that need to be adjudicated will appear on the screen for election judges to adjudicate. Dominion support confirmed that if Elections Manager Brown was in fact encountering the problem she appears to be trouble-shooting, a "reset in progress batches" procedure would be appropriate. It is apparent from watching the video that the problem persists.

Dominion support advised that if they were contacted at this point, they may have coached Ms. Brown through another trouble-shooting procedure called "reject and delete." Despite the report's claims that elections staff was sure they spoke to Dominion support about this problem, video and phone records confirm that no one called Dominion support from the tabulation room on 10/21/20. Instead, Elections Manager Brown had all six elections judges stop adjudicating ballot images and take a break while she went to the EMS client computer; stopped the current adjudication session, and started a new one. Video evidence, first hand investigation using a test election environment, and the user logs confirm that she was the cause of the stopped adjudication session and the starting of a new one. Starting a new adjudication session creates a

new adjudication database in the computer file structure, just as Report 3 observes. Stopping adjudication is a specific procedure that in most cases, should not be done during ballot processing and should only be done at the completion of an election. Dominion user manuals in the Mesa County tabulation room note this, specifically:



> The **Stop Adjudication** button is located in the **Report** section of the application.
>
> *NOTE: The Stop Adjudication button is used when an election is complete, certified and all reporting has been finalized or when you want to select another project.*
>
> The following steps can be performed as an *Adjudication Administrator* on the EMS Standard Server, EMS Express Server or Adjudication client machines.
>
> Colorado Ballot Handling and Post-Election Guide
> Democracy Suite 5.13 – March 2021 – v0.4
>
> DOMINION VOTING
>
> Page 39 of 199

Ms. Brown also halts tabulation and waits for the system to reload previously scanned batches into the new adjudication session she just created. Previously tabulated (scanned) batches do not need to be tabulated again once they have been properly scanned; the ballot images are stored on the system and are digitally retrieved into the adjudication session.

During this time, Elections Manager Brown also retrieves a different computer from the storage closet and replaces the computer at the location where the original elections judges drew her attention to a problem. Replacing a computer during an election is not unheard of, but is atypical. After approximately 15 minutes of processing, the system loads the new adjudication session and tabulation and adjudication operations resume, apparently without issue, for the remainder of the day.

The below screenshots depict the moments when Elections Manager Brown starts a new adjudication session, waits for it to load, and replaces an elections equipment computer:

EXHIBIT 15, Page 9









It should be noted that Report 3 indicates that elections staff has a strong recollection of the above events, and specify that DVS support was contacted at approximately 4:00pm on October 21, 2020. In fact DVS support was not contacted at all on October 21, 2020 or any day thereafter during this election. It is unknown what specifically resolved the apparent error Ms. Brown encountered, but she took one basic measure and two extreme measures on October 21, 2020. The remainder of the election has been unchallenged by Report 3, and no other anomalies appear to have occurred. A random audit sampling of ballot images that went through both adjudication sessions disclose no reason to question the cast vote record.

At this time it is unclear if Elections Manager Brown conducted any actions which resulted in the deletion of any election records that are required to be maintained. To date, we have found no evidence that she, or anyone else, did. We have found extensive evidence that the conclusions in Report 3 are false. Finally, and most significantly, this investigation uncovered no evidence that would indicated outside interference with the election, and further has found evidence specifically contradicting the assertion that ballots could have been preloaded.

<u>REPORT #3 REGARDING HUMAN INVOLVEMENT ON MARCH 30, 2021</u>

Similar to the assertions that new adjudication and tabulation databases were created on October 21, 2020, the authors of Report 3 identify that the same thing happened on March 30, 2021, during the 2021 Grand Junction Municipal Election.  However, the authors make distinct caveats regarding human involvement on March 30, 2021:

·      "It has been observed that a clerk giving the EMS [Election Management System] system a command to stop and then restart adjudication in an election again creates new Adjudication and Tabulation databases.  Mesa County clerks are very certain that they did not initiate any such action in either the November 2020 or the April 2021 elections.  Therefore, it is likely that a procedure internal to the DVS [Dominion Voting Systems] software had to perform a stop and restart of the adjudication services…" (p. 11).
·      "County Election clerks report no unusual activity or errors encountered *at any time* during the election counting process [for the 2021 Municipal Election]" (p. 19, emphasis in original).
·      "Mesa County election clerks state that they did not take any action to reprocess or re-scan any batches on that day [March 30, 2021], nor did they at any time stop and restart the Adjudication software process" (p. 21).
·      "No further anomalies are shown in the Adjudication database records during the Election counting process, nor did Mesa County election clerks encounter any unexpected issues" (p. 22).
·      "…Mesa County election officials have a strong recollection of the events of March 30, 2021.  They state that they did not take any steps that would have given rise to the unauthorized creation of new election databases during the 2021 Grand Junction Municipal Election on that day, followed by the reprocessing of 2,974 ballots" (p. 27).

## FINDINDGS OF FACT AND CONCLUSIONS OF LAW REGARDING MARCH 30, 2021 ANOMALY

Despite the claims that the authors interviewed multiple employees, they do not identify the Mesa County employees they spoke with. Investigator Struwe interviewed every single person involved in tabulation or adjudication on March 30, 2021. Not one of them was interviewed about this election prior to Investigator Struwe contacting them for an interview, and none have ever heard of Jeffrey O'Donnell.

During the 2021 Grand Junction Municipal Election the Clerk and Recorder's Office was using more of their own staff to handle tabulation and adjudication than in the general election. As such, there were fewer people in the room on March 30, 2021 than on October 21, 2020.  By March 30, 2021 ballot processing for the election had been ongoing for about a week, but most of the ballot processing occurred on March 29, 2021.  Elections Manager Sandra Brown was training Tiffany Sealey, an elections specialist, during this time. During the interview with Ms. Sealey, she indicated that she was being trained to eventually administer the tabulation process. In the video from March 30, 2021, both Ms. Brown and Ms. Sealey periodically use the EMS client, access the adjudication system, and check on batch progress. During the day there are several hours where Ms. Brown is gone from the room.

As election judges tabulate batches, and separate judges adjudicate ballot images, the EMS client monitor is largely visible and it is clear that batches are properly processing through the system. New batches populate the "review" and "in-progress" categories accordingly. Throughout the day, Ms. Sealey moves batches from "review" to "submitted."  All of this indicates that the system is working properly.  The screenshot below depicts what the adjudication and tabulation processes looked like on March 30, 2021, when working properly:



At approximately 2:49pm on March 30, 2021, Ms. Sealey appears to highlight a batch or batches in the "review" column, but walks away before dragging the selected batch or batches to "review." Several minutes later the adjudication screens are not displaying ballot images even though batches containing ballot images needing adjudication continue to populate the "in progress" column. A short time later, Ms. Sealey directs Elections Manager Brown to the EMS client computer and it appears Ms. Brown does a trouble-shooting procedure called "reset in progress batches." This is the same trouble-shooting procedure she initially tried during the apparent problems on October 21, 2020. This procedure is a way to force a refresh of the "in progress" batches to get them to be visible at an adjudication station. The Colorado Ballot Handling and Post-Election Guide provided by Dominion does support this step as a recommended solution to the problem "batch remains in progress" which Ms. Brown appeared to be trying to solve. This does not appear to fix the problem. The below screenshots depict Ms. Brown apparently trying a "reset in progress batches" procedure:

EXHIBIT 15, Page 14







Over the next several minutes, Ms. Brown accesses a program screen that would allow her to try the next recommended trouble-shooting procedure – called "reject and delete" – but it is clear from the user logs that she did NOT complete the procedure at this time. Surveillance video at this point did not detect any motion, and stopped recording for 2 minutes and 34 seconds. This would indicate that remained at the computer with little to no motion. When the video resumes, it is evident from the screen, and from the user logs, that Ms. Brown had stopped the previous adjudication session and started a new one. This would not be recommended by Dominion support. When the new adjudication session loads, the "submitted" batches column is *empty*, and the batches for "review" and "in progress" are seen populating. This is indicative of a new adjudication session. Below are before, during and after screenshots showing the "submitted" batches during the first session, the new session while it's loading, and the empty "submitted" column of the newly created session:

EXHIBIT 15, Page 16











After the new session loads, Ms. Brown moves the election judges to a different computer to allow them to continue to adjudicate ballots, but it appears she has much closer oversight and intermittent involvement. About eleven minutes later, Brandi Bantz, Elections Director and Ms. Brown's supervisor, enters the room. The two of them have a short conversation and Ms. Bantz believes that she advised Ms. Brown to call Dominion support. At 15:25pm Ms. Brown begins her attempt to contact Dominion support.[3]  Screenshots of Ms. Brown on the phone, corroborated by phone records, are show below:



_____

[3] The video and call log confirms that Ms. Brown made several attempts to reach Dominion support. Approximately 17 minutes later, one of the two Colorado representatives calls back.



| 03/30/2021 | 3:25:00 PM | 00:00:02 | O | 1- (303)▇▇▇▇ | DENVER, CO | $0.06 |
| 03/30/2021 | 3:26:00 PM | 00:00:07 | O | 1- (720)▇ | DENVER, CO | $0.06 |
| 03/30/2021 | 3:27:00 PM | 00:00:52 | O | 1- (303)▇ | DENVER, CO | $0.10 |
| 03/30/2021 | 3:42:00 PM | 00:11:30 | I | (303)▇ | DENVER, CO | $0.00 |
| 03/30/2021 | 4:38:00 PM | 00:25:08 | O | 1- (303)▇ | DENVER, CO | $2.90 |

Over approximately an eleven minute phone conversation, Ms. Brown is walked through the "reject and delete" procedure which she would likely have been recommended to do earlier. This procedure is a procedure that requires the administrator to select specific problematic batches to be rejected and deleted so that the system can retrieve them back into the adjudication session. The video, the interview with the Dominion support employee, and the user logs all corroborate the initiation of the "reject and delete" solution by Ms. Brown. After the phone call with Dominion, Ms. Brown does additional "reject and delete" procedures on select batches and the elections team is able to continue to adjudicate for approximately ten more minutes. They achieve obvious success. At one point, Elections Director Bantz walks into the room and Ms. Brown nods her head in the affirmative toward her. Director Bantz starts dancing, apparently celebrating. Moments later, Ms. Brown checks the administrator screen and some of the "in progress" batches go away and batches appear in the "in review" column, indicating that adjudication is once again progressing. Ms. Brown reacts with an open mouth and Ms. Sealey covers her face with her hands, apparently relieved. The below screenshots depict when batches move from "in progress" to "review," indicating adjudication is working again:













Although adjudication resumes, for the remainder of March 30, 2021, it is not apparent that any batches move to the "in review" column as they should. Ms. Brown has a second phone call with Dominion support and the day ends with Ms. Brown and the rest of elections staff leaving for the night. The user logs show that the "reject and delete" option was again completed on select batches on March 31, 2021 and April 5, 2021. Ultimately, the elections team processed all ballots through adjudication and was able to validate and publish the results.

At this time it is unclear if Elections Manager Brown conducted any actions which resulted in the deletion of any election records that are required to be maintained. To date, we have found no evidence that she did. We have also found no evidence that anyone else has done so. We have found extensive evidence that the conclusions in Report 3 are false. Finally, and most significantly, this investigation uncovered no evidence that would indicated outside interference with the election.

<u>SUMMARY</u>

This investigation is being closed with no finding of probable cause that a crime was committed by any person. There appears to be anomalies in the election logs, caused by intentional actions of Sandra Brown, Elections Manager for the Mesa County Clerk's Office. No evidence exists that would indicate that Ms. Brown had any nefarious or criminal motive in those actions, but rather appears to have been trouble-shooting problems in the flow of the adjudication process during the elections. These actions were verified to have been done by her through video evidence, corroboration of records, audit of randomly selected ballot images, interviews with witnesses and experts, and recreation of the certain scenarios using a test election environment and prove that the conclusions of Report 3 are incorrect claims of what may have occurred. At this time, no evidence suggests that these actions negatively impacted the election.

Respectfully,

*/s/ Daniel P. Rubinstein*

Daniel P. Rubinstein
District Attorney