## DECLARATION OF TINA PETERS

I, Tina M. Peters, make this declaration pursuant to 28 U.S.C. § 1746.

1.  I am a citizen of the United States and a resident of Mesa County, Colorado.

2.  I am over the age of 21 years and competent to make this declaration.

3.  I was elected Mesa County Clerk and Recorder in November 2018 for a term of four years.

4.  I served in 2021 as the designated election official of Mesa County. As such, I was responsible for preserving election records. Federal law requires all officers of election to preserve election records for 22 months in case of audits, recounts, or litigation. Colorado statute requires county clerks to preserve election records for 25 months.

5.  Many constituents requested an audit of the November 2020 election. Others were suspicious of the outcome of the March 2021 municipal election.

6.  On April 30, 2021, my office received an email from the office of Secretary Griswold. The email is Exhibit 1. It directed me to participate in the installation on the Mesa County election management system ("EMS") server of an upgrade that was referred to as the "Trusted Build."

7.  In an April 2021 telephone conversation with David Stahl, a Dominion employee, I learned that the Trusted Build upgrade would delete the QR code program that allows the system to read certain ballots. I understood that erasure of this information during the Trusted Build would make results of the 2020 and 2021 elections impossible to verify.

8.  I then confirmed in a telephone conversation with a member of Griswold's staff that the Trusted Build would erase the electronic records that Mr. Stahl had identified.

9.  It was my responsibility as County Clerk and Recorder and the designated election official of Mesa County to know the laws that apply to my job. I had studied 52 U.S.C. § 20701 and Colorado Revised Statute 1-7-802. These laws require preservation of election records for 22 months and 25 months,

1

respectively, following an election. The federal statute carries a criminal penalty. My office took the law seriously. During elections, we were instructed to save any paper found on the floor of a voting service polling center, and to place the paper in a box marked "Trash" and save it for 25 months.

10. I was concerned that the Trusted Build would delete from the EMS server digital information that I was required by law to preserve.

11. The email from Secretary Griswold's office had the unavoidable effect of forcing me to participate in the deletion of election records from county voting system computers, in violation of the election records preservation statutes.

12. The Secretary required all local election officials to back up "election project" records before the Trusted Build installation, which I did.

13. The Mesa County "election project" records retained the results of the election, but not how the results were obtained. "Election project" records did not include all electronic information that experts said was essential for a post-election audit.

14. I did not trust the Secretary of State because she applied partisan views in a non-partisan office. The Secretary appointed a Democrat to oversee my office. Employees of the Secretary collaborated with a recall election effort, which failed. I concluded that it would be futile to resist the Trusted Build upgrade.

15. I had to choose between violating election preservation laws, or going against the Secretary's email. I chose to go against the email.

16. At the time, as County Clerk and Recorder, it was legal for me to engage a consultant to make a forensic image of the EMS server.

17. I engaged a consultant to make a forensic image of the server. The consultant's name was Hayes.

18. My understanding is that a forensic image is a bit-by-bit, unalterable (read only) copy of all election records stored on the election management system. I understood that a forensic image is admissible in court as evidence.

2

19. I authorized the consultant to enter the secured area and make the forensic images under the supervision of myself and elections manager Sandra Brown, as provided in Election Rule 20.5.3(b) [Exhibit 3].

20. Making the forensic images did not violate any statute, rule, or order in effect at the time.

21. Making the forensic images caused no harm or damage to the computer voting system of Mesa County.

22. Making the forensic images of the Mesa County EMS server did not interfere with or obstruct in any way the installation of the Trusted Build upgrade nor did it breach security in any way.

23. Secretary Griswold's email protocol had the effect of concealing unlawful deletion of election records, by preventing expert oversight of the Trusted Build.

24. I concluded that, to preserve election records as required by law, I had no reasonable alternative except to ignore Secretary Griswold's unlawful email.

25. My staff provided the consultant with the electronic access badge of Gerald Wood, so that the consultant could enter the secured area. Mr. Wood voluntarily consented to his badge being used by the consultant.

26. On May 23, 2021, two days before the Trusted Build, Hayes made a forensic image of the EMS server hard drive. Sandra Brown and I were present. On May 26, 2021, after the Trusted Build was completed, Hayes made a second forensic image of the EMS server hard drive.

27. During an election, when ballots are being processed, access to secured areas is strictly controlled. The Trusted Build was presented as a benign computer upgrade that did not take place during an election. Access badges were often issued labeled "Temp 1," "Temp 2," and so on, for vendors and others who were not county employees but needed access to secure areas to perform functions authorized by the clerk.

28. When the consultant was in the secure area during the Trusted Build, he was supervised by an employee with authorized access in compliance with Election Rule 20.5.3(b).

29. Secretary Griswold and District Attorney Daniel Rubinstein contend that my noncompliance with Griswold's email violated CRS 1-13107(1), 1-13-114, 18-2-201, 18-5-113(1)(B)(I), 18-5-902(1), and 18-8-306. I have been indicted for violating those statutory provisions.

30. I believe that I did not violate any criminal statute, because my actions preserved election records that I was required by law to preserve.

31. If I had not made the forensic images, election records of the November 2020 election, and the March 2021 municipal election, would have been irretrievably lost.

32. Before August of 2021, I advocated to County Commissioner Janet Rowland that Mesa County use the Clear Ballot voting system instead of Dominion. I also spoke publicly questioning the security of Dominion voting systems.

33. I attended the Sioux Falls, South Dakota symposium. I made a presentation that was broadcast on television.

34. I communicated before and after the installation of the Trusted Build with many citizens who shared my concerns about the need for election integrity and ending the use of computerized vote tabulation. I believed then, and I continue to believe, that hand counting ballots is the only secure way to tabulate votes. I understand that any computer can be hacked. As a result, all computer voting systems are insecure. I also understand that after votes are counted by computers, it is impossible to reconstruct exactly how the scanners and computers counted the votes. We are told by the Secretary to simply trust the computers and accept the results. The system cannot be audited as required by federal law.

35. On August 10, 2021, I learned that agents from the offices of the Secretary and the District Attorney were in my office. I learned later that Mr. Rubinstein's agents had on a date unknown to me, obtained possession of the entire Mesa County computer voting system, including all computer equipment and software. I do not know if he obtained possession of the voting system by

executing a search and seizure warrant, or if possession was voluntarily transferred to him by the Board of County Commissioners.

36. I received credible reports that the Federal Bureau of Investigation was monitoring my travel to Sioux Falls.

37. After the Lindell conference, I was advised that there were credible threats against my life. I flew to Texas. After my hotel room was broken into, I was protected by 24/7 armed security.

38. On September 17, 2021, I submitted a written petition to the Mesa County Board of County Commissioners ("County Board"), asking them to discontinue use of Dominion computer voting systems in Mesa County [Exhibit 4].

39. In early October 2021, I went to the assisted living facility in Grand Junction to see my husband, Thomas Peters, who had been diagnosed with Parkinson's Disease and early onset dementia. The facility told me that another person had Power of Attorney, and they refused to allow me to see Tom in person.

40. In a later phone call, Tom said some people came to him at the facility and had him sign a paper. He said he didn't know what he signed. He asked me to contact our attorneys for help.

41. I requested an opportunity to meet with our attorney Zachary Reams. Mr. Reams advised me by email on November 2, 2021, that he had received a voicemail from the District Attorney's office that mentioned an investigation into my actions as agent under the power of attorney. Mr. Reams said that with the DA and Adult Protection involved, he had a conflict of interest, and he could not represent either Tom or me. He recommended that I hire a criminal lawyer to deal with these new accusations. Mr. Reams email is Exhibit 5.

42. The District Attorney never brought any charges against me for my actions as Tom's agent under the power of attorney. However, I have not been allowed to see my husband in person since October of 2021.

43. On November 16, 2021, the FBI executed several search warrants on me and my political associates. This resulted in the seizure of numerous computers, cell phones, removable storage devices, and iPads belonging to me and others.

44. The FBI has held those electronic devices for more than two years. They have had access to private communications among many of my associates, some of whom wished to remain anonymous.

45. The tactics used by the FBI in executing those warrants were abusive and had the chilling effect of intimidating individuals who would associate with my effort to question the integrity and transparency of elections, and to advocate for reform of election laws.

46. The investigations launched by the Secretary, the District Attorney, and the U.S. Department of Justice in August 2021, which led to the execution of search warrants, continue to affect my ability to communicate and associate with others. Mr. Rubinstein and the FBI intimidated other county clerks from associating with me and speaking out for election transparency. See Declaration of Dallas Schroeder, Exhibit 6.

47. On February 14, 2022, I announced my candidacy for the Republican nomination for the office of Colorado Secretary of State. My mission was to reform the election system and return the state of Colorado to counting ballots by hand. This made me a direct competitor of Jena Griswold.

48. On March 1, 2022, I presented a second written petition to the County Board, asking them to stop using insecure voting systems [Exhibit 7].

49. On March 8, 2022, District Attorney Rubinstein announced the indictment of me and my Deputy Clerk, Belinda Knisley [Exhibit 8].

50. The indictment occurred 22 days after I announced my candidacy for Secretary of State, and only seven days after I delivered my second petition to the Board of County Commissioners. The indictment was followed by actions against me and my family members, some of which are set forth below.

51.   When I learned about the indictment, I turned myself in.  My father was near death.  I was not allowed to go to my father, and he died while I was in jail.

52.   The District Attorney advocated for an excessive cash bond of $500,000.

53.   The Court set bond at $25,000.  However, the Judge granted the District Attorney's request to prohibit me from having any contact with any of my employees in all five divisions of the Clerk and Recorder office (elections, motor vehicle, recording, accounting, and clerk to the Board of County Commissioners).  The District Attorney also asked the Court prohibit me from entering any of the three office locations of the clerk and recorder.  The bond restrictions made it impossible to do my job, so it had the effect of removing me from office.  A copy of the bond is Exhibit 9.

54.   The day after the bond hearing, an investigator in the District Attorney's office made harassing telephone calls to my 93 year old mother, my daughter, and my sisters.

55.   After the indictment, I continued to speak publicly about the insecurity of computer voting systems, and to advocate for election transparency.  I proposed hand counting ballots, as many countries do.  To silence me, the District Attorney opposed my travel requests and tried to revoke my bond for trivial reasons.  Some specific examples are below.

56.   In July 2022, the District Attorney requested that the court revoke my bond because I left Colorado to speak at the Constitutional Sheriffs and Peace Officers Conference [Exhibit 10].  My lawyer at the time told me he had obtained Court approval before I left.

57.   In August 2022, the District Attorney opposed my request to travel to Springfield Missouri to attend the premiere of "Selection Code," a movie in which I participated.  He stated: "Ms. Peters is seeking permission to leave the state so that she can be celebrated as a hero for the conduct that a grand jury has indicted her for. . . .The undersigned, on behalf of the county I represent, object to this request, do not believe it is necessary, and represent to the Court that this may be the most offensive travel request the undersigned has ever seen."  See Exhibit 11.  Based on Mr. Rubinstein's recommendation, the judge ordered me not to travel.

7

58. Although I have never failed to appear in court, Mr. Rubinstein claimed that I was a "flight risk" when I asked court permission to use my passport to obtain TSA pre-check flight status for domestic travel [Exhibit 12].

59. When I requested and paid for a recount of the 2022 Republican primary race for Secretary of State, I sent notice by email to county clerks in all 64 counties. Fruita police applied for an arrest warrant, claiming that by emailing notice to the clerk of Mesa County, I violated the protection order in my bond that prohibited me from contacting any employee of the clerk. [Exhibit 13, Part1]. The District Attorney used the trivial alleged violation of the protection order to convince the court to deny my request for travel. [Exhibit 13, Part 2].

60. Recently I was in conversation with a friend in the Dollar store. My friend had just lost her husband. A former employee from the clerk's office walked by. The police called and demanded to know who I had been in conversation with. Police told my attorney that they were investigating whether I had violated my bond by speaking to someone in the Dollar Store.

61. On July 11, 2022, an investigator for District Attorney Rubinstein declared under oath to the district judge presiding over my criminal case that I "<u>unlawfully</u> took a digital image of the entire Dominion hard drive" [Exhibit 14 at page 9]. The allegation was false. Deputy Secretary of State Christopher Beall admitted under oath in a different case involving the Clerk and Recorder of Elbert County that making a forensic image of an EMS server was legal at the time it was done [Exhibit 15].

62. District Attorney Rubinstein obtained a search warrant for my iPad, based on his false assertion to the judge that my iPad contained a prohibited video recording of a judicial proceeding. The judge issued a contempt citation based on Rubinstein's false representation. Another judge found me guilty of contempt for denying that I had recorded a judicial proceeding on the iPad. Rubinstein personally tried the contempt hearing. At the time, the police still had possession of the iPad. Rubinstein's assertion was later shown to be baseless, after examination of my iPad by a forensic expert, who found that no such recording had ever occurred.

63. I am scheduled to stand trial in February 2024 on the indictment issued on March 8, 2022.

8

64. The actions of the District Attorney and his office have punished me for, and attempted to deter me from, exercising my right to speak freely, to associate freely with those who share my beliefs, and to petition the government for the redress of grievances.

65. Those actions have had a significant adverse effect on my ability to associate and communicate with citizens who previously associated and communicated with me, as well as others who might have been enlisted to investigate election irregularities.

66. By indicting me, Mr. Rubinstein intimidated county clerks and other elected officials from associating and communicating with me. His actions have restricted my freedom to urge elected officials to discontinue reliance on computerized voting systems, and to reform election laws.

67. At the urging of Mr. Rubinstein, the Judge presiding over my criminal trial will not allow me to present evidence that exposes problems in the voting system, and Griswold's erasure of election records during the Trusted Build installation. Such evidence would show the jury why, under the law, I was required to make the forensic images. The Judge's order is Exhibit 16.

68. On November 24, 2023, the Secretary posted the following message on X (formerly Twitter):

> Tina Peters compromised her own voting equipment in an attempt to prove the Big Lie and risked her constituents constitutional right to vote," Griswold said. [Peter's] attempts to evade accountability with this frivolous lawsuit will not work."

Exhibit 17.

69. The post is intended to convince the public, including potential jurors in Mesa County, that I committed a crime when I made a legal backup copy of the voting system hard drive.

70. I do not see how the criminal trial can be fair under these circumstances.

I declare under penalty of perjury that the information contained in the foregoing paragraphs is true and correct based upon my knowledge and belief.

Dated: November 25, 2023

*/s/ Tina M. Peters*
Tina M. Peters