EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.1:23-cv-03014

TINA PETERS

    Plaintiff,

v.

UNITED STATES OF AMERICA,
MERRICK B. GARLAND, Attorney General of the United States in his official capacity,
JENA GRISWOLD, Colorado Secretary of State, in her official capacity, and
DANIEL P. RUBINSTEIN, District Attorney of the Twenty-First Judicial District, in his official capacity,

    Defendants.
_____

**PLAINTIFF'S AMENDED OPPOSITION TO
DEFENDANT RUBINSTEIN'S MOTION TO DISMISS**
_____

Rubinstein's Motion to Dismiss fails to acknowledge the holdings in *Dombrowski v. Pfister,* 380 U.S. 479 (1965) and *Phelps v. Hamilton,* 59 F.3d 1058 (10th Cir. 1995) that abstention in a case such as this is inappropriate. The doctrine established by *Younger v. Harris,* 401 U.S. 37 (1971) does not bar an injunction in this case.

*Dombrowski* expressly rejected the assertion made by Rubinstein that a federal court must abstain from entertaining an action to enjoin a state prosecution

where "the chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." 380 U.S. at 487. That opinion left no doubt that abstention is not appropriate in a First Amendment case such as the instant case:

> We hold the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, [319 U.S. 157,] statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.

*Id.,* at 489-90. That rule is not limited to challenges to statutes and applies as well to bad faith prosecutions. *E.g., Phelps,* 59 F.3d at 1063-64.

> *Phelps* noted the exceptions to the *Younger* abstention rule:
>
> *Younger* authorizes federal courts to enjoin a pending state criminal prosecution provided that it was (1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of "irreparable injury" both great and immediate.

59 F.3d at 1063-64 (citing *Dombrowski,* 401 U.S. at 53-54). Both *Dombrowski* and *Phelps* are settled and binding authorities. Counsel for Peters has not identified a single case since the *Phelps* decision in which the *Younger* doctrine has been invoked in this Circuit in an attempt to bar an injunction of a criminal proceeding in a First Amendment retaliation claim—until this case.[1]

---

[1] Courts in other circuits have uniformly adopted the reasoning in *Dombrowski* and rejected the argument that the *Younger* doctrine bars federal court injunctions of state criminal or disciplinary proceedings in the exceptional circumstances described in *Younger. E.g., Lacey v. Maricopa Cnty.,* 593 F.3d 896, 936-37 (9th Cir.

2

None of the decisions cited by Rubinstein in support of his jurisdictional contention is apposite. None involves a claim of retaliation for the exercise of First Amendment rights.

**Peters' First Amendment interests outweigh the State's interests.**

Rubinstein argues that the State's "important" interests warrant abstention. ECF No. 23 at 9. But it is well-recognized that those interests pale before the constitutional interests in jeopardy in cases like this one. As the Supreme Court has explained, what is at stake is "free expression – of transcendent value to all society, and not merely to those exercising their rights." *Dombrowski,* 380 U.S. at 486. Reflecting the constitutional solicitude for this "transcendent value," the Tenth Circuit has repeatedly held that a plaintiff's First Amendment interests outweigh the kind of "important" and "substantial" state interests that Rubinstein posits here. *Planned Parenthood Ass'n of Utah v. Herbert,* 828 F.3d 1245, 1265 (10th Cir. 2018); *Bass v. Richards,* 362 F.3d 1081, 1089 (10th Cir. 2012); *Utah Licensed Beverage Ass'n v. Leavitt,* 256 F.3d 1061, 1069-75 (10th Cir. 2001).

---

2012); *Cullen v. Fliegner,* 18 F.3d 96, 103-05 (2d Cir. 1994); *Lewellen v. Raff,* 843 F.2d 1103, 1109-10 (8th Cir. 1988); *Wilson v. Thompson,* 593 F.2d 1375, 1381 (5th Cir. 1979); *Timmerman v. Brown,* 528 F.2d 811, 814-15 (4th Cir. 1975); *Ruscavage v. Zuratt,* 821 F.Supp. 1078,1081-83 (E.D.Pa. 1993).

**The State Court is not an adequate forum in these circumstances.**

The Mesa County District Court will not provide Peters with an adequate opportunity to litigate the federal constitutional issues essential to prevailing on her First Amendment claim. *See Younger,* 401 U.S. at 48-49; *Dombrowski,* 380 U.S. at 486.  Peters has asserted her right and duty pursuant to the Privileges or Immunities Clause of the Fourteenth Amendment to enforce and comply with the federal statute mandating that all election officials preserve election records when she made the forensic images for the purpose of complying with that statute. 52 U.S.C. § 20701. Although she referred to her right to make a record of government misconduct (*i.e.,* make the forensic images) to expose problems with the computerized voting system and her duty under federal law to preserve election records, the state court has refused to rule on any federal constitutional issues. In a June 5, 2022 ruling, the state court rejected any application of the statutory choice-of-evils defense, but went further, ruling that "[t]he jury will not be asked to address any questions regarding the functioning of the election equipment." Ex. 16 at 3. In so doing, the state court effectively barred Peters from demonstrating that the installation of the Trusted Build upgrade deleted election records in violation of the federal and Colorado election records preservation statutes. That deprives Peters of due process by preventing her from asserting her Privileges or Immunities Clause defense and her right and duty to take action to preserve the

election records as required by the federal statute. "[The] State's criminal prosecution will not assure adequate vindication of constitutional rights." *Younger,* 401 U.S. at 48-49.

Rubinstein's discussion of the Colorado statutory defense of choice-of-evils (C.R.S. § 18-1-702(1)) is entirely beside the point. ECF No. 23 at 8-9. Peters did not confront any "choice of evils" because she violated no law in making the forensic images of the EMS server. The state law choice-of-evils defense is distinct from the federal constitutional issue of whether the prosecution itself is an unlawful retaliatory action in violation of the First Amendment. *Dombrowski,* 380 U.S. at 487. Even if these two issues were not distinct, Peters should not have to invoke a choice-of-evils defense (and show that her conduct avoided an injury to the public at large) when she can instead simply establish that her right to obey the federal law against destroying election records was affirmatively protected by the Privileges or Immunities Clause of the Fourteenth Amendment. Yet, Peters has been barred from litigating the latter defense in the state prosecution because she is forbidden to introduce evidence necessary to show that she was exercising her federal constitutional right to obey federal law by not destroying the election records. In short, Rubinstein's waiver argument ignores that Peters is being deprived of a federal constitutional right as well as that she objects to the prosecution in state court because it has been brought to punish her for, and to

5

deter her from, exercising her First Amendment rights to speak out, to associate with others to advance their common beliefs, and to petition her government for redress of grievances. Peters can litigate neither of these constitutional issues in the state prosecution. For that reason, abstention is unwarranted under *Dombrowski, Younger,* and *Phelps.*

Rubinstein argues that a June 3, 2022, order of the state court concluding that probable cause was properly established for each of the counts in the indictment against Peters defeats her bad faith contention. Even if the order defeats Peters' contention that Rubinstein had no reasonably objective hope of securing a valid conviction (and it does not), that is but a single factor in the *Phelps* three-part test of whether a prosecution is commenced in bad faith or to harass. The other factors have also been established by the complaint: whether the prosecution was motivated by Rubinstein in retaliation for Peters' exercise of constitutional rights and whether the prosecution was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion. *Phelps,* 59 F.3d at 1065.

### Peters has presented a *prima facie* case of retaliation by Rubinstein for the exercise of her First Amendment rights.

The Motion to Dismiss argues based on an excerpt from the state court's June 5, 2022, Order (Ex. D to the Motion) that Rubinstein could not have retaliated against Peters for exercising her First Amendment rights because "she herself chose not to exercise them in the first place." ECF No. 23 at 12-14. This is an

absurd statement that ignores the examples of free speech, expressive association activities, and her petitions submitted to the Mesa County Board of County Commissioners for redress of grievances that prompted the retaliation. Complaint ¶¶ 36-42, 70-71, 81-85.  Even if Peters was under an obligation, as the June 5, 2022, Order assumed, to discuss her "issues with the election equipment" with the Secretary of State and with local, state, and federal law enforcement and to file a civil lawsuit to stop the installation of the Trusted Build upgrade, that has nothing to do with Rubinstein's actions to punish her for, and to deter her from continuing: (1) her public exposure of the directive of the Secretary of State to delete election records by installing the Trusted Build upgrade that violated federal and Colorado election records preservation statutes, (2) her expressive association activities with others, such as Sherronna Bishop, to raise public awareness about the vulnerabilities of computerized voting systems, and (3) her submissions of expert reports to the Mesa County Board of County Commissioners with their conclusions about the deletion of election records and the uncertified software on the EMS server that allowed for the creation of additional ballot databases, which could not have been created by personnel in the Clerk's office.

      Reliance on the state court's June 5, 2022, Order as the sole basis for the conclusion that "the prosecution cannot be in retaliation for the exercise of rights

that never occurred" is so preposterous and without merit that the following recital of Rubinstein's retaliatory actions is hardly necessary:

1. He falsely accused Peters of unlawfully downloading the images of the EMS server. Compl. ¶ 47 (Hereinafter, ¶ relates to Complaint unless otherwise indicated.).

2. He declined to investigate Griswold's violation of the election records preservation statutes. ¶ 117.

3. He never investigated the effect of the creation of additional, unauthorized ballot databases during the 2020 and 2021 elections. ¶ 55.

4. He submitted a report to the Board of County Commissioners without expert assistance that erroneously concluded that the additional ballot databases were created by an employee of the County Clerk and Recorder in a failed attempt to undermine the credibility of Peters' experts. ¶ 88-92; Ex. 22 to MPI.

5. He instructed a lawyer representing Peters and her husband not to communicate with Peters because she was under investigation in connection with her exercise of a power of attorney she had been given. ¶ 133.

6. He obtained an indictment of Peters shortly after she made a presentation to the County Board about the problems with its computerized voting system. Ex. 7 and 8 to MPI.

7. He played a role in the exorbitant $500,000 bond requirement imposed on Peters after she was indicted and arrested. ¶ 52.

8. After Peters' bond was reduced to $25,000, he insisted on requirements that prohibited her from contacting members of her staff and barred her from entering her office. ¶ 53.

9. His investigator harassed Peters' family members with telephone calls as he attempted to gather information about Peters after her father's death. ¶ 131.

10. He persuaded the state court to deny Peters' travel requests so that she could speak to audiences about election irregularities and raise funds for her defense. Ex. 2, ¶ 57.

11. When Peters sent an email to other county clerks and recorders regarding her request for a recount of an election, he claimed that the email violated her bond requirements and persuaded the state court to deny her travel requests. Ex. 2, ¶ 59.

12. His investigators repeatedly misrepresented facts in applying for warrants. ¶ 98.

13. His investigator participated in the execution of a search warrant at the residence of Peters' associate, Sherronna Bishop, who had arranged a November 1, 2021, meeting with the County Board to describe the vulnerabilities of the County computerized voting system, and when Ms. Bishop asked the investigator why the warrant was served on her, he answered "because you connect people." Ex. 25 to MPI ¶ 40.

14. He presented the indictment to the grand jury without advising the members that Peters had made the forensic images to preserve election records as federal and Colorado law required. ¶¶ 119, 121- 122.

15. He included a charge in the indictment that Peters had violated a rule or rules of the Secretary of State regarding access of her consultant who made the forensic images when the rule expressly provided that the consultant could have access if supervised by an employee of the Clerk's office who did have authorized access. Secretary of state's Rule 20.5.3(b); MPI at 33-34.

16. When the only grounds for a federal investigation was Griswold's violation of the federal election records preservation statute, he urged the U.S. Department of Justice to investigate Peters without a reasonable basis for doing so, and not to investigate Griswold. ¶¶ 53, 111, 112, 113, and 114.

17. He coordinated his retaliatory efforts against Peters with Griswold, the Colorado Attorney General, and the Department of Justice. ¶ 116; Ex.2 to MPI.

These allegations are more than sufficient to satisfy the *Phelps* test of whether the prosecution and Rubinstein's other actions were undertaken to retaliate or harass Peters for exercising her First Amendment rights. *Phelps,* 59 F.3d at 1065.

For the foregoing reasons, Rubinstein's Motion to Dismiss should be denied.

Date: December 22, 2023

/s/ *Robert J. Cynkar*
Robert J. Cynkar
Patrick M. McSweeney
Christopher I. Kachouroff
Lyndsey L. Bisch
McSweeney, Cynkar & Kachouroff, PLLC
10506 Milkweed Drive
Great Falls, VA 22066
(703) 621-3300
rcynkar@mck-lawyers.com

John Case
John Case, P.C.
6901 South Pierce St. #340
Littleton CO 80128
(303) 667-7407
brief@johncaselaw.com