IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Nina Y. Wang**

Civil Action No. 23-cv-03014-NYW-SKC

TINA PETERS,

  Plaintiff,

v.

UNITED STATES OF AMERICA,
MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and
DANIEL P. RUBINSTEIN, in his official capacity as District Attorney for the Twenty-First Judicial District,

  Defendants.

## ORDER ON MOTION TO DISMISS

In this action, Plaintiff Tina Peters asks this Court to intervene to prevent the State of Colorado from prosecuting her for various criminal charges brought pursuant to a grand jury indictment.  *See* [Doc. 8; Doc. 33 at 39–43].  Defendant Daniel P. Rubenstein moved to dismiss Plaintiff's claims for declaratory and injunctive relief brought against him in his official capacity, arguing that this Court must abstain from interfering with the ongoing state prosecution.  Based on the record before it, this Court concludes that Ms. Peters has failed to establish an exception to *the Younger* doctrine of abstention and accordingly, abstention is appropriate.

## BACKGROUND

The court draws the following facts from the First Amended Complaint for Declaratory and Injunctive Relief (the "First Amended Complaint"),[1] [Doc. 33], and the docket for the United States District Court for the District of Colorado.[2] Plaintiff Tina Peters ("Plaintiff" or "Ms. Peters") is the former Clerk and Recorder for Mesa County, Colorado. [*Id.* at ¶ 5]. On March 8, 2022, a grand jury for Mesa County, Colorado, returned an Indictment against Ms. Peters (the "Indictment" or "Mesa County Indictment"), charging her with 10 criminal counts arising from the Colorado Secretary of State's trusted build election management software update (the "trusted build") that was scheduled to begin in Mesa County on May 25, 2021. [Doc. 1-28].

The Mesa County Indictment alleges that on April 16, 2021, Jessi Romero ("Mr. Romero"), the Voting Systems Manager with the Colorado Secretary of State, informed Mesa County's election staff that only required personnel from Dominion, the Secretary of State, and Mesa County would be permitted to observe the trusted build, but that the

---

[1] Ms. Peters filed her initial Complaint for Declaratory and Injunctive Relief, [Doc. 1], on November 14, 2023. On December 22, 2023, Ms. Peters filed the First Amended Complaint as a matter of right, within 21 days of the filing of Defendant Rubinstein's Motion to Dismiss on December 13, 2023. [Doc. 33]; *see also* Fed. R. Civ. P. 15(a)(1)(B).

[2] Courts may take judicial notice of and consider documents on their own dockets on a motion to dismiss without converting it into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Ms. Peters has also engaged in motions practice and made certain representations about her state criminal prosecution in *Coomer v. Lindell*, Case No. 22-cv-01129-NYW-SKC (D. Colo.). This Court takes judicial notice of that docket and to the extent it relies on certain documents from that docket, uses the convention of *Coomer*, Case No. 22-cv-1129, ECF No. ___. In addition, this Court may take judicial notice of the state court docket in *People v. Peters*, No. 22CR371. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (observing that, whether requested by the parties or not, "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

trusted build would occur under camera, and members of the public could review the footage afterward. [Doc. 1-28 at 9–10]. On April 26, 2021, the Indictment alleges, Mr. Romero informed Ms. Peters and other clerks across Colorado that if unauthorized individuals were onsite during the trusted build, the Secretary of State would "move on to the next county." [*Id.* at 10]. According to the Indictment, by the end of the day on May 17, 2021, the security cameras in the trusted build area had been turned off and remained non-operational through the entire installation process, and on the day of the trusted build, Ms. Peters introduced a person named "Gerald Wood," who participated in the trusted build process. [*Id.* at 11–12]. The actual Gerald Wood later denied accessing the Mesa County Clerk and Recorder's Office, either on the date of the trusted build or on other dates that a key card assigned to him was utilized. [*Id.* at 12]. In August 2021, Secretary of State employees learned that images of the Mesa County election management systems and related passwords were available on the internet and issued Election Order 2021-01, directing Ms. Peters and the Mesa County Clerk and Recorder's Office to provide certain information, documentation, communications, and images related to the May 2021 trusted build. [*Id.*].

Plaintiff is charged with three counts of Attempt to Influence a Public Servant, in violation of Colo. Rev. Stat. § 18-8-306; two counts of Conspiracy to Commit Criminal Impersonation, in violation of Colo. Rev. Stat. §§ 18-5-113(1)(B)(I), 18-2-201; one count of Criminal Impersonation, in violation of § 18-5-113(1)(B)(I); one count of Identity Theft, in violation of Colo. Rev. Stat. § 18-5-902(1); one count of First Degree Official Misconduct, in violation of Colo. Rev. Stat. § 18-8-404; one count of Violation of Duty, in violation of Colo. Rev. Stat. § 1-13-107(1); and one count of Failure to Comply with

3

Requirements of Secretary of State, in violation of Colo. Rev. Stat. § 1-13-114. [Doc. 28-1 at 1–2]. Ms. Peters's trial has been continued twice upon her request, first from March 2023 to August 2023, [*Coomer*, Case No. 22-cv-1129, ECF No. 111-1 at ¶ 3], and now to February 24, 2024. [Doc. 20 at 2]. Ms. Peters disputes these factual allegations and criminal charges. She contends that her actions related to the trusted build were efforts to protect the integrity of the election process and to comply with federal law to maintain election records. *See generally* [Doc. 33].

Believing that the state prosecution and associated state and federal investigations of her election-related activities were in retaliation for her public challenges to the validity of the 2020 presidential election and the reliability of the electronic voting system used by Mesa County as well as her criticism of the trusted build, Ms. Peters initiated this action on November 14, 2023, against the United States of America; Defendant Merrick B. Garland, in his official capacity as Attorney General of the United States ("Defendant Garland" or "Attorney General Garland");[3] Defendant Jena Griswold, in her official capacity as Colorado Secretary of State ("Defendant Griswold" or "Secretary of State Griswold"); and Defendant Daniel P. Rubinstein, in his official capacity as District Attorney for Mesa County, Colorado, ("Defendant Rubinstein" or "District Attorney Rubinstein"), invoking this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1346(a)(2). [Doc. 1].

---

[3] This Court notes that while Ms. Peters separately names as defendants the United States and Attorney General Garland in his official capacity, "[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

Specifically, Count I alleges that the United States and Attorney General Garland retaliated against Ms. Peters for her exercise of her First Amendment rights of free speech, free association, and petition for redress by investigating her election-related conduct. [Doc. 33 at ¶¶ 147–53]. Count II alleges that Defendants Griswold and Rubinstein similarly have undertaken an investigation and prosecution of Ms. Peters in violation of federal law, namely, in retaliation for Ms. Peters's exercise of her above-delineated First Amendment rights and her efforts to comply with federal law with respect to the maintenance of voting records, in violation of her privileges and immunities as a citizen under the Fourteenth Amendment of the United States Constitution. [*Id.* at ¶¶ 154–58]. Ms. Peters seeks declaratory and injunctive relief with respect to both counts. [*Id.* at 42–43].

On November 27, 2023, Ms. Peters moved for a preliminary injunction, seeking to enjoin District Attorney Rubinstein from pursuing conducting, continuing, or participating in any way in proceedings in *People v. Peters*, or any other criminal proceedings against or investigation of Ms. Peters (the "Motion for Preliminary Injunction").[4] [Doc. 8 at 6]. The following day, Ms. Peters filed the return of Service for Defendant Rubinstein, reflecting service that same day. [Doc. 17]. On December 6, 2023, Ms. Peters filed the return of service for the United States,[5] reflecting service on the United States Attorney's Office for

---

[4] The filing of the Motion for Preliminary Injunction caused the case, which had originally been assigned to the Honorable S. Kato Crews, to be drawn to a District Judge. [Doc. 12]. Ultimately, the action was assigned to the undersigned on November 28, 2023. [Doc. 15].

[5] Because Attorney General Garland is sued in his official capacity, Ms. Peters was required to serve the United States. Fed. R. Civ. P. 4(i)(2).

the District of Colorado. [Doc. 18]. To date, Ms. Peters has not filed a return of service for Defendant Griswold.

On December 11, 2023, Ms. Peters moved to expedite the proceedings on her Motion for Preliminary Injunction, given that her state criminal trial was set to begin on February 24, 2024. [Doc. 20]. That same day, counsel for District Attorney Rubinstein first entered his appearance. [Doc. 21]. The Court then ordered Defendant Rubinstein to respond to the Motion to Expedite no later than December 13, 2023. [Doc. 22]. On December 13, 2023, Defendant Rubinstein filed (1) the instant Motion to Dismiss Plaintiff's Complaint [ECF No. 1] Pursuant to Fed. R. Civ. P. 12 (the "Motion to Dismiss"), [Doc. 23]; (2) a Motion to Stay Briefing and Scheduling of Hearing on Motion for Preliminary Injunction (the "Motion to Stay"), [Doc. 24]; and (3) an Opposition to Motion to Expedite Proceedings ("Defendant Rubinstein's Opposition"), [Doc. 25]. Because the Motion to Dismiss raised a significant question as to whether this Court should abstain from reaching the merits of Count II as asserted against Defendant Rubinstein under *Younger v. Harris*, 401 U.S. 37 (1971)—and thus, any request for preliminary injunction—this Court denied Plaintiff's request to expedite the preliminary injunction proceedings and ordered her to file a response to the Motion to Stay on or before December 28, 2023. [Doc. 27]. The following day, Ms. Peters filed (1) a Motion for Reconsideration of the Court's Minute Order [ECF No. 27] Denying Plaintiff's Motion for Expedited Proceedings on Motion for Preliminary Injunction (the "Motion for Reconsideration"), [Doc. 28]; (2) her Response to Defendant Rubinstein's Motion to Stay Briefing and Scheduling of Hearing on Motion for Preliminary Injunction [ECF No. 24] and Opposition to Motion to Expedite Proceedings [ECF No. 25] ("Plaintiff's Response"), [Doc. 29]; and (3) her Opposition to

Defendant Rubinstein's Motion to Dismiss (the "Opposition to Motion to Dismiss"), [Doc. 30].

On December 20, 2023, the Court denied the Motion for Reconsideration; granted the Motion to Stay, staying the briefing on the Motion for Preliminary Injunction pending the Court's resolution of the Motion to Dismiss; and ordered Defendant Rubinstein to file any Reply to the Motion to Dismiss no later than December 29, 2023. [Doc. 32]. Mindful of Ms. Peters's concerns regarding her upcoming February 24 trial date, this Court also ordered Defendant Rubinstein to respond to the Motion for Preliminary Injunction within three days of any ruling on the Motion to Dismiss, if the case was not dismissed. [Doc. 36]. Defendant Rubinstein filed his Reply to Plaintiff's Opposition to Defendant Rubinstein's Motion to Dismiss ("Reply") on December 28, 2023.[6] [Doc. 38]. Neither Party sought an evidentiary hearing or identified any evidence to be presented beyond documents already on the Court's docket with respect to the instant Motion. *See* [Doc. 23; Doc. 28; Doc. 37]. The Motion to Dismiss is now ripe for review, and this Court concludes, based on its review of the record, that oral argument will not materially contribute to the resolution of the issues before it.

---

[6] On December 22, 2023, Ms. Peters filed the operative First Amended Complaint, [Doc. 33], as a matter of right pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure; a Notice of Filing First Amended Complaint, [Doc. 34]; and an Unopposed Motion for Leave to File Amended Opposition to Defendant Rubinstein's Motion to Dismiss (the "Motion to Amend Opposition"), [Doc. 35]. While ordinarily the filing of an amended pleading moots any pending motion to dismiss directed at the prior pleading, *see Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006) (explaining that an amended pleading moots any motions to dismiss aimed at an inoperative pleading), this Court construed the filing of Plaintiff's Motion to Amend Opposition as the Parties' assent that the instant Motion to Dismiss could be construed as directed at the First Amended Complaint. [Doc. 36]. Ms. Peters's Amended Opposition to Defendant Rubinstein's Motion to Dismiss (the "Amended Opposition to Motion to Dismiss" or "Amended Opposition"), [Doc. 37], was docketed that same day.

**LEGAL STANDARDS**

As identified above, the central issue presented by Defendant Rubinstein's Motion to Dismiss is whether this Court should abstain from reaching the merits of Count II, and in turn, Plaintiff's Motion for Preliminary Injunction, based on the *Younger* abstention doctrine.

I.   *Younger* **Abstention Doctrine**

While federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the *Younger* abstention doctrine dictates that "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief," *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (cleaned up).  Generally, pursuant to the *Younger* abstention doctrine, federal courts must refrain from enjoining pending, parallel state criminal proceedings, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), where the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) afford an adequate opportunity to present the federal constitutional challenges, *Murphy v. El Paso Co. (CO) Dist. 4 Dist. Att'y*, No. 23-1188, 2023 WL 5423509, at *2 (10th Cir. Aug. 23, 2023) (citing *Phelps v. Hamilton* (*Phelps II*), 122 F.3d 885, 889 (10th Cir. 1997)).

But exceptions to *Younger* abstention exist; federal courts are permitted to enjoin a pending state criminal prosecution provided that the prosecution was (1) commenced in bad faith or to harass; (2) based on a flagrantly and patently unconstitutional statute; or (3) related to any other such extraordinary circumstance creating a threat of irreparable

8

injury both great and immediate. *See Phelps v. Hamilton* (*Phelps I*), 59 F.3d 1058, 1064 (10th Cir. 1995). According to the Tenth Circuit, however, the "twin rationales of respecting prosecutorial discretion and federalism" dictate that "the exceptions to *Younger* only provide for a 'very narrow gate for federal intervention.'" *Id.* (quoting *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir. 1993)).

## II. Proper Framework

While noting the ambiguities, Defendant Rubinstein proceeds pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [Doc. 23 at 2–4]. In her Amended Opposition, Ms. Peters is silent as to whether Rule 12(b)(1) is the proper vehicle for raising the issue of abstention. *See generally* [Doc. 37].

In *Graff*, the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit") observed that it was unclear whether *Younger* abstention implicates a federal court's subject matter jurisdiction—and thus, whether the framework of Rule 12(b)(1) applies—in this Circuit. *See Graff*, 65 F.4th at 523 n.32 (comparing *D.L. v. Unified School District No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("*Younger* abstention is jurisdictional"), with *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 666 (10th Cir. 2020) ("[W]hen cases present circumstances implicating [abstention] doctrines, no question is raised as to the court's subject matter jurisdiction.")). Though the Tenth Circuit did not revolve the issue in *Graff* and has not spoken to it since, district courts within the Tenth Circuit continue to treat *Younger* abstention as jurisdictional, or akin to jurisdictional. *See, e.g.*, *Halliburton v. Eades*, No. 5:23-cv-970-F, 2023 WL 9007299, at *2 n.4 (W.D. Okla. Dec. 28, 2023) ("Younger abstention is jurisdictional." (citing *D.L*, 392 F.3d at 1232)); *Balderama v. Bulman*, No. 1:21-cv-1037-JB-JFR, 2023 WL 2728148, at

9

*12 (D.N.M. Mar. 31, 2023) (describing abstention as "akin to jurisdictional" (quotation omitted)); *El-Bey v. Lambdin*, No. 22-cv-00682-DDD-MDB, 2023 WL 2187478, at *4 n.4 (D. Colo. Feb. 23, 2023) (observing that "[a]lthough the *Younger* abstention doctrine is often referred to as a 'jurisdictional' issue, technically speaking, '*Younger* is a doctrine of abstention'" (quoting *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir. 2013)).

While mindful of the distinction between a court's subject matter jurisdiction to entertain a matter versus whether a court is required to refrain from exercising jurisdiction, *see, e.g.*, *El-Bey*, 2023 WL 2187478, at *4 n.4, definitive resolution of this issue is beyond the scope of this Court's determination here and ultimately, immaterial. First, the Parties have not placed the issue precisely before the Court. *Cf. Graff*, 65 F.4th at 523 n.32 (observing that "no party has addressed, let alone suggested, that the jurisdictional/non-jurisdictional nature of the *Younger* doctrine affects how this Court should address the issues on appeal"). Second, this Court is unaware of any Supreme Court or en banc decision of the Tenth Circuit that expressly overrules *D.L.*, and thus, this court is bound by it. *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("A published decision of one panel of [the Tenth Circuit] constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit . . . ."). Third, regardless of the procedural framework, a district court must resolve any question of *Younger* abstention before it proceeds to the merits, as a conclusion that *Younger* abstention applies "ends the matter." *Goings v. Sumner Cty. Dist. Attn'y's Office*, 571 F.

App'x 634, 639 (10th Cir. 2014) (quotation and emphasis omitted).  Fourth, dismissals based on lack of subject matter jurisdiction or based on abstention principles are both without prejudice.  *See id.* at 639; *see also Graff*, 65 F.4th at 523 n.32 ("Given that dismissal without prejudice is the proper result whether or not *Younger* abstention affects a federal court's subject matter jurisdiction, this court does not further consider the doctrine's jurisdictional pedigree." (citation omitted)).

With respect to the proper record, the Court may consider evidence outside the four corners of the operative pleading whether or not the instant Motion to Dismiss is considered a factual attack upon this Court's subject matter jurisdiction over Count II.  *See United States v. Rodriquez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) ("In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." (quotation omitted)); *Stein v. Legal Advert. Comm. of Disciplinary Bd.*, 272 F. Supp. 2d 1260, 1264 n.3 (D.N.M. 2003) (observing that "[i]t is proper to consider matters outside the pleadings for purposes of deciding a motion to dismiss that is based on abstention").  In addition, this Court may also consider documents that are attached to or incorporated in the pleading[7] and are central to the First Amended Complaint, without converting the instant Motion to Dismiss to one for summary judgment.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Finally, as previously

---

[7] Ms. Peters did not re-attach exhibits to her First Amended Complaint, but that operative pleading references the same exhibits filed with the original Complaint.  *See* [Doc. 33]. Accordingly, this Court considers [Doc. 1-3] through [Doc. 1-29] incorporated into the First Amended Complaint.

noted, this Court may take judicial notice of the court filings of its own docket and those of the state court. *See supra* n.2.

## ANALYSIS

As discussed above, before a federal court can abstain under the *Younger* doctrine, it must determine that "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Phelps II*, 122 F.3d at 889. It is clear that *People v. Peters* is still ongoing. [Doc. 20 at 2]. There is also little doubt that *People v. Peters* implicates important state interests, as "state criminal proceedings are viewed as a traditional area of state concern." *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (internal quotations omitted); *see also Bruce v. Clementi*, No. 15-cv-01653-REB, 2016 WL 660120, at *11 (D. Colo. Feb. 17, 2016) (citations omitted) (recognizing the important state interests in the administration of its judicial system and enforcement of its criminal laws). And Ms. Peters's own allegations underscore the important state interest in election integrity identified by District Attorney Rubinstein.[8] *See* [Doc. 33 at ¶ 135]; *see also* [Doc. 23 at 9–10]. Thus, this Court's analysis focuses upon Ms. Peters's contention that the Mesa County District Court will not afford her an adequate

---

[8] Although Ms. Peters argues that Colorado's interests pale in comparison to her constitutional rights, [Doc. 37 at 3], *Younger* and its progeny do not command this Court to weigh the state's interests against Ms. Peters's. Rather, *Younger* stands for the proposition that, even in the face of alleged threats to the constitutional rights of individuals, there are certain exceptional circumstances where the principles of equity, comity, and federalism require federal courts to abstain from reviewing such claims so as to "permit state courts to try state cases free from [federal] interference." *See* 401 U.S. at 43–44. Ms. Peters has not presented any authority otherwise, or that contradicts the Tenth Circuit's holding in *Winn*. *See* [Doc. 37 at 3].

opportunity to present her constitutional challenges arising under the First Amendment or the Privileges and Immunities Clause of the Fourteenth Amendment. [*Id.* at 4–5].

I. **State Proceedings Afford an Adequate Opportunity to Present Federal Constitutional Challenges**

The Supreme Court has recognized that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). To that end, the Tenth Circuit explained that a plaintiff has an adequate opportunity to raise federal constitutional claims in state court unless state law clearly bars their interposition. *See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003). Ms. Peters insists that the Mesa County District Court is an inadequate forum to raise her federal constitutional claims, but has presented no authority that state law prohibits her from doing so.

With respect to the purported violation of her First Amendment rights, Ms. Peters makes a single statement: "The Mesa County District Court will not provide Peters with an adequate opportunity to litigate the federal constitutional issues essential to prevailing on her First Amendment claim." [Doc. 37 at 4]. But neither *Younger* nor *Dombrowski v. Pfister*, 380 U.S. 479 (1965)—the only two cases that Ms. Peters cites—stands for the proposition that a Colorado state court prosecution does not afford Ms. Peters a fair and sufficient opportunity for vindication of her First Amendment rights or that Colorado law bars her from raising such an argument in Mesa County District Court.[9]

---

[9] To the extent that Ms. Peters contends she was subject to malicious prosecution and prosecutorial misconduct for exercising her rights to free speech, freedom of association and petitioning for the redress of grievance under the First Amendment, *see, e.g.*, [Doc. 33 at ¶ 118–34], this Court notes that Colorado state district courts may dismiss an indictment for prosecutorial misconduct that arises during grand jury proceedings. *See*

13

Ms. Peters also argues the June 5, 2022, Order by the Honorable Matthew D. Barrett, [Doc. 1-29; Doc. 23-4][10]—in which Judge Barrett concluded that Ms. Peters had failed to show that she was entitled to a choice of evils defense—deprived her of the ability to vindicate her rights under the Fourteenth Amendment Privileges and Immunities clause. *See* [Doc. 37 at 4–6]. But again, Plaintiff cites no authority that state law clearly barred her from raising her Fourteenth Amendment Privileges and Immunities arguments within the context of her criminal prosecution. *See generally* [*id.*]. Nor does she demonstrate that she was prevented by the Mesa County District Court from framing her argument to Judge Barrett as a constitutional issue under the Fourteenth Amendment. *See* [*id.* at 5–6]; *see also Wilson v. Morrissey*, 527 F. App'x 742, 744 (10th Cir. 2013) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.")). In addition, it is undisputed that she did, in fact, raise her desire to present evidence that she engaged in the conduct at issue in order to expose issues with election equipment before Judge Barrett. [Doc. 1-29 at 3, 4]. Thus,

---

*People v. Bergen*, 883 P.2d 532, 543 (Colo. App. 1994) ("Prosecutorial misconduct during grand jury proceedings can result in dismissal if actual prejudice accrues to the defendant or the misconduct compromises the structural integrity of the grand jury proceedings to such a degree as to allow for the presumption of prejudice."). In addition, Ms. Peters sought and received a probable cause review of the grand jury proceedings and indictment from the Mesa County District Court. [Doc. 23-3].

[10] Ms. Peters cites "Ex. 16 at 3" for Judge Barrett's June 5, 2022, Order. [Doc. 37 at 4]. Ms. Peters did not attach any exhibits to her original or Amended Opposition to the Motion to Dismiss. [Doc. 30; Doc. 37]. Elsewhere in the Amended Opposition, the June 5, 2022, Order is cited as "Ex. D to the Motion." [Doc. 37 at 6]. It appears that the June 5, 2022, Order is attached as Exhibit 16 to Plaintiff's Motion for Preliminary Injunction. [Doc. 10-2]. In referring to the June 5, 2022, Order, this Court cites to [Doc. 1-29], as it has the only legible markings from the CM/ECF system.

the June 5, 2022, evidentiary ruling does not persuade this Court that Ms. Peters was deprived of an adequate *opportunity* to raise her constitutional claims. *Younger* requires only the availability of an adequate state-court forum, not a favorable result in that forum. *See Winn*, 945 F.3d at 1258.

Accordingly, this Court concludes that the three requirements of *Younger* are met here.

## II. Bad Faith Exception to *Younger* Abstention

Even where these requirements are met, federal abstention can be overcome in cases of "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction."[11] *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). In determining whether a prosecution was commenced in bad faith or to harass, courts consider whether it was (1) "frivolous or undertaken with no reasonably objective hope of success"; (2) "motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights"; and (3) "conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps I*, 59 F.3d at 1065.

Importantly, it is a federal plaintiff's "heavy burden" to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment. *See*

---

[11] *Younger* also authorizes federal courts to enjoin a state criminal prosecution where it was "based on a flagrantly and patently unconstitutional statute," or was "related to any other such extraordinary circumstance creating a threat of irreparable injury both great and immediate." *Phelps I*, 59 F.3d at 1063–64. As Ms. Peters has not alleged that her prosecution was based on an unconstitutional statute or that "this case fits into the catch-all but ill-defined category of 'extraordinary circumstances,'" this Court need only consider whether Ms. Peters's prosecution was brought in bad faith or to harass. *Id.* at 1064; *see also* [Doc. 37 at 6–11 (arguing only that Plaintiff's prosecution was undertaken in bad faith or to harass)].

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999). To warrant federal court intervention, a plaintiff must offer sufficient evidence to demonstrate that the prosecution was substantially motivated by a bad faith motive or was brought to harass. *Phelps I*, 59 F.3d at 1068.

Ms. Peters has not met her burden here. First, as the *Phelps I* court recognized, a bad faith prosecution will not ordinarily be predicated upon probable cause. 59 F.3d at 1064 n.12. Ms. Peters's criminal charges arise from a thirteen-count Indictment issued by a grand jury for Mesa County, Colorado. [Doc. 1-28]. Ms. Peters sought a probable cause review of the grand jury proceedings and indictment, and, in a thorough and well-reasoned order, Judge Barrett concluded that each of the charges asserted against Ms. Peters was supported by probable cause. [Doc. 23-3 at 5]. Without more evidence, in light of the probable cause finding, Ms. Peters fails to carry her heavy burden of establishing that her prosecution was frivolous or undertaken with no reasonably objective hope of success. *See Carrillo v. Wilson*, No. 12-cv-03007-BNB, 2013 WL 1129428, at *5 (D. Colo. Mar. 18, 2013) ("Because the state district court determined that 24 of the 25 charges in the superseding indictment were supported by probable cause, the Court finds that the state criminal charges are not frivolous or undertaken with no reasonably objective hope of success."); *Wrenn v. Pruitt*, No. 5:21-cv-00059-JD, 2021 WL 1845968, at *4 (W.D. Okla. May 7, 2021) (finding that the plaintiff could not "show that the prosecution was 'undertaken with no reasonably objective hope of success' given that the state court made a finding of probable cause").

Next, the Court considers whether Ms. Peters has made a prima facie *evidentiary* showing that her prosecution was brought in retaliation for the exercise of her

16

constitutionally-protected rights[12] or was otherwise motivated by bad faith or for purposes of harassment.  *See Phelps I*, 59 F.3d at 1066; *Phelps II*, 122 F.3d at 890.  Fundamentally, Ms. Peters's reliance on allegations from her First Amended Complaint, [Doc. 37 at 6–11; *id.* at 8–11 ¶¶ 3, 5, 7–9, 12, 14–16], which are not otherwise supported by evidence, is insufficient to carry her heavy burden.[13]   *Amanatullah*, 187 F.3d at 1165 (rejecting the plaintiff's claim "that Younger *abstention* [wa]s not appropriate because the district court erred in failing to consider his amended complaint," which, the plaintiff argued, "demonstrated the [defendant's] bad faith").  For example, Ms. Peters alleges that District Attorney Rubinstein "instructed a lawyer representing [Ms.] Peters and her husband not to communicate with [Ms.] Peters because she was under investigation in connection with her exercise of a power of attorney she had been given."  [Doc. 37 at 8 ¶ 5 (citing [Doc. 1 at ¶ 133])]; *see also* [Doc. 33 at ¶ 131].[14]   But neither as part of the First Amended Complaint, nor in support of her Amended Response to the Motion to Dismiss, does Ms. Peters proffer an affidavit by the unnamed lawyer to support the allegation.[15]

---

[12] In order to prevail on such a retaliation claim, Ms. Peters must prove that "retaliation was a major motivating factor and played a dominant role in the decision to prosecute." *Phelps I*, 59 F.3d at 1066.

[13] Some of Ms. Peters's citations to her First Amended Complaint are otherwise inapposite because the cited allegations relate only to the conduct of other Defendants, not Mr. Rubinstein, or to the investigation of other individuals.  *See, e.g.*, [Doc. 37 at 8 ¶ 1 (citing allegations regarding Defendant Griswold); *id.* at 8 ¶ 2 (citing allegations related to "the Department of Justice, including the FBI"); *id.* at 10 ¶ 13 (citing allegations regarding the execution of a search warrant at the residence of Sherronna Bishop)].

[14] Although Ms. Peters appears to cite to her original Complaint, [Doc. 1], throughout her Amended Opposition to the Motion to Dismiss, the Court construes these citations as related to the corresponding factual allegations made in her operative First Amended Complaint, [Doc. 33].

[15] This Court further notes that Ms. Peters's characterization of Mr. Rubinstein's alleged contact with this attorney is materially different between the First Amended Complaint and

Plaintiff's reliance upon certain exhibits to her Motion for Preliminary Injunction to demonstrate her prosecution was undertaken in retaliation for her exercise of her First or Fourteenth Amendment rights or commenced in bad faith or for the purpose of harassment is equally unavailing. Some of the documents do not even address the factual allegations for which they are cited. For instance, Ms. Peters cites Exhibit 22 to the Motion for Preliminary Injunction for the proposition that District Attorney Rubinstein intentionally and knowingly submitted a report to the Board of County Commissioners without expert assistance in order to undermine the credibility of Ms. Peters's experts. [Doc. 37 at 8 ¶ 4]. But Exhibit 22 to the Motion for Preliminary Injunction, [Doc. 10-10], is simply an e-mail from District Attorney Rubinstein to an outside media source discussing FBI involvement in Ms. Peters's investigation, and entirely fails to address the factual issue for which it is cited.[16] In any case, Ms. Peters points to no authority for a

---

her Amended Opposition to the Motion to Dismiss. In Paragraph 131 of the First Amended Complaint, Ms. Peters alleges

> [a] lawyer representing [Ms.] Peters and her husband in November 2021 in connection with domestic matters emailed [Ms.] Peters to advise her that a member of the District Attorney's office had left a voicemail on the lawyer's telephone notifying the lawyer that [Ms.] Peters was the subject of a potential investigation into her actions as an agent under a power of attorney. The voicemail prompted the lawyer to advise [Ms.] Peters that he had a conflict of interest and could no longer represent her and her husband.

[Doc. 1 at ¶ 133; Doc. 33 at ¶ 131]. The allegation that the voicemail then prompted the lawyer to advise Ms. Peters that he could no longer represent her is materially different than the allegation that Mr. Rubinstein *instructed* the lawyer not to communicate with Ms. Peters.

[16] This Court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record," *Garrett v. Selby Connor Maddux & Jane*r, 425 F.3d 836, 840 (10th Cir. 2005), particularly when Ms. Peters has been represented by counsel throughout this action, *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10

constitutional requirement that District Attorney Rubinstein retain a computer expert before submitting a report to the Board of County Commissioners.  *Cf. Jaffery v. Atl. Cty. Prosecutor's Office,* 695 F. App'x. 38, 41 (3d Cir. June 19, 2017) (rejecting the plaintiff's argument that the bad faith exception applied based, in part, on the plaintiff's failure to point to any constitutional requirement that police or prosecutors obtain a medical expert prior to prosecuting a doctor for allegedly criminal actions that occured in the course of medical treatment).  Other documents do not support the factual allegation for which they are cited.  For example, Ms. Peters asserts that District Attorney Rubinstein coordinated retaliatory efforts against Ms. Peters with Defendant Griswold, the Colorado Attorney General, and the Department of Justice. [Doc. 37 at 11 ¶ 17].  But the document to which Ms. Peters cites, Exhibit 2 to the Motion for Preliminary Injunction, [Doc. 9], is her own Declaration.  These unsupported, conclusory allegations are insufficient to establish unlawful motivations on the part of District Attorney Rubinstein.  *Carrillo*, 2013 WL 1129428, at *6.

Having found that all three factors of *Younger* abstention have been met, and no exceptions apply, abstention by this Court with respect to the claims against Defendant Daniel P. Rubinstein,[17] is mandatory.  *See Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) ("Once a court finds that the required conditions are present, abstention is mandatory.").

---

(10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

[17] Defendant Rubinstein seeks dismissal of "the Complaint" or "the case and all claims without prejudice."  [Doc. 23 at 15; Doc. 38 at 9].  *Younger* abstention does not apply to claims against the United States, and Defendant Griswold has not appeared. Accordingly, this Court may only properly dismiss Count II as it relates to Defendant Rubinstein.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant Daniel P. Rubinstein's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12 [Doc. 23] is **GRANTED**;

(2) Plaintiff's claims for declaratory and injunctive relief against Defendant Daniel P. Rubinstein in his official capacity are **DISMISSED WITHOUT PREJUDICE**;

(3) Plaintiff's Motion for a Preliminary Injunction [Doc. 8] is **DENIED as moot**; and

(4) Defendant Daniel P. Rubinstein is entitled to his costs pursuant to Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1.

DATED:  January 8, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge