**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-03014-NYW-JPO

TINA PETERS,

     Plaintiff,

v.

UNITED STATES OF AMERICA, and
MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

     Defendants.

---

### MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

---

     In this action, Plaintiff Tina Peters asks this Court to intervene to prevent the United States of America from continuing its ongoing federal criminal investigation of Ms. Peters. *See* [Doc. 33]. Defendants United States of America and Merrick B. Garland, in his official capacity as Attorney General of the United States, move to dismiss Plaintiff's claims for declaratory and injunctive relief brought against the United States, arguing, inter alia, that this Court lacks equitable authority over and must abstain from interfering with the ongoing federal criminal investigation. [Doc. 57, filed February 5, 2024]. Based on the record before it, this Court concludes that Ms. Peters has failed to establish an exception to warrant the exercise of its equitable jurisdiction over her claim and accordingly, dismissal is appropriate.

### BACKGROUND

     The Court has previously discussed the background of this case in detail, *see* [Doc. 39], and therefore, limits this discussion to the most pertinent facts to the instant

Motion to Dismiss filed by the Federal Defendants, drawing the following facts from the First Amended Complaint for Declaratory and Injunctive Relief (the "First Amended Complaint"),[1] [Doc. 33], and the docket for the United States District Court for the District of Colorado.[2]  Plaintiff Tina Peters ("Plaintiff" or "Ms. Peters") is the former Clerk and Recorder for Mesa County, Colorado.  [*Id.* at ¶ 5].  On March 8, 2022, a grand jury for Mesa County, Colorado, returned an Indictment against Ms. Peters (the "Indictment" or "Mesa County Indictment"), charging her with 10 criminal counts arising from the Colorado Secretary of State's trusted build election management software update (the "trusted build") that was scheduled to begin in Mesa County on May 25, 2021.  [Doc. 1-28].

Specifically, Ms. Peters is charged with three counts of Attempt to Influence a Public Servant, in violation of Colo. Rev. Stat. § 18-8-306; two counts of Conspiracy to Commit Criminal Impersonation, in violation of Colo. Rev. Stat. §§ 18-5-113(1)(B)(I), 18-2-201; one count of Criminal Impersonation, in violation of § 18-5-113(1)(B)(I); one count of Identity Theft, in violation of Colo. Rev. Stat. § 18-5-902(1); one count of First Degree

---

[1] Ms. Peters filed her initial Complaint for Declaratory and Injunctive Relief, [Doc. 1], on November 14, 2023.  On December 22, 2023, Ms. Peters filed the First Amended Complaint as a matter of right, within 21 days of the filing of Defendant Rubinstein's Motion to Dismiss on December 13, 2023.  [Doc. 33]; *see also* Fed. R. Civ. P. 15(a)(1)(B).

[2] Courts may take judicial notice of and consider documents on their own dockets when ruling on a motion to dismiss without converting it into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  Ms. Peters has also engaged in motions practice and made certain representations about her state criminal prosecution in *Coomer v. Lindell*, Case No. 22-cv-01129-NYW-SBP (D. Colo.).  This Court takes judicial notice of that docket and to the extent it relies on certain documents from that docket, uses the convention of *Coomer*, Case No. 22-cv-01129, ECF No. ___.  In addition, this Court may take judicial notice of the state court docket in *People v. Peters*, No. 22CR371.  *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (observing that, whether requested by the parties or not, "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

Official Misconduct, in violation of Colo. Rev. Stat. § 18-8-404; one count of Violation of Duty, in violation of Colo. Rev. Stat. § 1-13-107(1); and one count of Failure to Comply with Requirements of Secretary of State, in violation of Colo. Rev. Stat. § 1-13-114.  [Doc. 1-28 at 1–2].   Ms. Peters's trial was originally set for March 2023 but, several continuations later, now is set to begin July 29, 2024.  [*Coomer*, Case No. 22-cv-01129, ECF No. 111-1 at ¶ 3]; [Doc. 20 at 2].  Ms. Peters contends that her actions related to the trusted build were efforts to protect the integrity of the election process and to comply with federal law to maintain election records.  *See generally* [Doc. 33].

In 2022, the Department of Justice convened a grand jury to investigate Ms. Peters's actions with respect to the trusted build, invoking three federal statutes in the process:  18 U.S.C. § 1028(a)(7) (identity theft); 18 U.S.C. § 1030(a)(5)(A) (intentional damage to a protected computer); and 18 U.S.C. § 371 (conspiracy to commit identity theft and/or cause intentional damage to a protected computer).  *See* [*id.* at ¶¶ 107, 111-14].  No federal criminal charges have been filed against Ms. Peters.

Believing that the state prosecution and associated state and federal investigations of her election-related activities were in retaliation for her public challenges to the validity of the 2020 presidential election and the reliability of the electronic voting system used by Mesa County as well as her criticism of the trusted build, Ms. Peters initiated this action on November 14, 2023, against the United States of America; Defendant Merrick B. Garland, in his official capacity as Attorney General of the United States ("Defendant Garland" or "Attorney General Garland", and collectively with the United States, "Federal

Defendants"),[3] Defendant Jena Griswold, in her official capacity as Colorado Secretary of State ("Defendant Griswold"); and Defendant Daniel P. Rubinstein, in his official capacity as District Attorney for Mesa County, Colorado, ("Defendant Rubinstein"), invoking this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1346(a)(2).  [Doc. 1].

Only Count I of the operative First Amended Complaint remains before this Court, and Ms. Peters alleges that the Federal Defendants retaliated against Ms. Peters for her exercise of her First Amendment rights of free speech, free association, and petition for redress by investigating her election-related conduct.   [Doc. 33 at ¶¶ 147–53].[4]   Ms. Peters seeks declaratory and injunctive relief.  [*Id.* at 42–43].  On February 5, 2024, the Federal Defendants filed the instant Motion to Dismiss First Amended Complaint [ECF

---

[3] This Court notes that while Ms. Peters separately names as defendants the United States and Attorney General Garland in his official capacity, "[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States."  *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

[4] Count II alleged that Defendants Griswold and Rubinstein similarly undertook an investigation and prosecution of Ms. Peters in violation of federal law, namely, in retaliation for Ms. Peters's exercise of her above-delineated First Amendment rights and her efforts to comply with federal law with respect to the maintenance of voting records, in violation of her privileges and immunities as a citizen under the Fourteenth Amendment of the United States Constitution.  [*Id.* at ¶¶ 154–58].  Ms. Peters moved for a preliminary injunction seeking to enjoin Defendant Rubinstein from pursuing conducting, continuing, or participating in any way in proceedings in *People v. Peters*, or any other criminal proceedings against or investigation of Ms. Peters (the "Motion for Preliminary Injunction").  [Doc. 8 at 6].  Defendant Rubinstein moved to dismiss Plaintiff's Complaint [Doc. 23].  On January 8, 2024, the Court granted the State Motion to Dismiss, dismissed the claims against Defendant Rubinstein without prejudice, and denied as moot Plaintiff's Motion for Preliminary Injunction.  [Doc. 39 (the "January 8 Order")].  As set forth in the January 8 Order, the Court concluded that Ms. Peters failed to establish an exception to the *Younger* doctrine of abstention and abstention was required.  [*Id.*].  Ms. Peters has appealed this ruling to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit").  [Doc. 41].  In addition, on January 26, 2024, Ms. Peters voluntarily dismissed her claims against Defendant Griswold through a self-effectuating notice of dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  *See* [Doc. 51; Doc. 53].

No. 33] (the "Motion to Dismiss").  [Doc. 57].  The crux of the Federal Defendants' request for dismissal is their argument that the Court lacks equitable jurisdiction over Ms. Peters's remaining claims for declaratory and injunctive relief.   [*Id.* at 1, 4-9].   The Federal Defendants also moves to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim, respectively.  *See* [*id.* at 9-15].

Ms. Peters filed her Response to Federal Defendants' Motion to Dismiss (Doc. 57) ("Response") on February 26, 2024, [Doc. 58], and the Federal Defendants filed their Reply in Support of Motion to Dismiss First Amended Complaint [ECF No. 57] ("Reply") on March 11, 2024, [Doc. 61].  Neither Party sought an evidentiary hearing nor identified any evidence to be presented beyond documents already on the Court's docket with respect to the instant Motion.  *See* [Doc. 57; Doc. 58; Doc. 61].  The Motion to Dismiss is now ripe for review, and this Court concludes, based on its review of the record, that oral argument will not materially contribute to the resolution of the issues before it.

**LEGAL STANDARDS**

**I.      Equitable Jurisdiction**

While Ms. Peters frames her response to the Federal Defendants' equitable jurisdiction argument as one of subject matter jurisdiction, *see* [Doc. 58 at 1], it is not. Equitable jurisdiction, much like subject matter jurisdiction, is a limitation on federal courts.  *See Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975).  Equitable jurisdiction is concerned with "whether consistently with the principles governing equitable relief the court may exercise its remedial powers."   *Id.*   Both subject matter jurisdiction and equitable jurisdiction are required for a federal court to hear the merits of an equitable claim.  Even when a court has subject matter jurisdiction, "[t]here remains the question of

equitable jurisdiction" before "the District Court properly [can] reach the merits." *Id.* Therefore, whenever a federal court is presented with an equitable claim, it must first determine whether it possesses equitable jurisdiction before it can address the merits. *See Guzman v. Polaris Indus.*, 49 F.4th 1308, 1314 (9th Cir. 2022).

It is axiomatic that "a suit in equity does not lie where there is a plain[,] adequate[,] and complete remedy at law." *Terrace v. Thompson*, 263 U.S. 197, 214 (1923). Under the basic doctrine of equity jurisprudence, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). "Only the narrowest of circumstances permit a district court to invoke equitable jurisdiction. Such decisions must be exercised with caution and restraint, as equitable jurisdiction is appropriate only in exceptional cases where equity demands intervention." *Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022) (quotation omitted). Ultimately, the exercise of equitable jurisdiction by a district court lies squarely in its discretion. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946); *Agee v. United States ex rel. Drug Enf't Admin.*, 992 F.2d 1222, 1993 WL 128708 (10th Cir. 1993) (unpublished table opinion).

## II. Subject Matter Jurisdiction

The party invoking federal jurisdiction bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Since the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff

bears the burden of proof." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," since the Court "presume[es] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). In considering jurisdiction, the Court "can elicit information outside the pleadings. This permits the court to undertake an independent investigation to assure itself of its own subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987).

**Proper Record**. With respect to the proper record, the Court may consider evidence outside the four corners of the operative pleading in deciding whether it has authority to exercise jurisdiction over Count I. *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) ("In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." (quotation omitted)); *Stein v. Legal Advert. Comm. of Disciplinary Bd.*, 272 F. Supp. 2d 1260, 1264 n.3 (D.N.M. 2003) (observing that "[i]t is proper to consider matters outside the pleadings for purposes of deciding a motion to dismiss that is based on abstention"). In addition, this Court may also consider documents that are attached to or incorporated in the pleading[5] and are central to the First Amended Complaint, without converting the instant Motion to Dismiss to one for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d

---

[5] Ms. Peters did not re-attach exhibits to her First Amended Complaint, but that operative pleading references the same exhibits filed with the original Complaint. *See* [Doc. 33]. Accordingly, this Court considers [Doc. 1-3] through [Doc. 1-29] incorporated into the First Amended Complaint.

1381, 1384 (10th Cir. 1997).  Finally, as previously noted, this Court may take judicial notice of the court filings of its own docket and those of the state court.  *See supra* n.2.

### III.    Failure to State a Cognizable Claim

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible" (quotation omitted)).  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### ANALYSIS

The Federal Defendants move to dismiss the First Amended Complaint for lack of equitable jurisdiction, lack of standing, and under Rule 12(b)(6) for failure to state a claim.

Because the Court dismisses the claims against the Federal Defendants on equitable jurisdiction grounds, it does not reach the Federal Defendants' other arguments.[6]

## I.     Plaintiff Cannot Use This Civil Action to Collaterally Attack an Ongoing Criminal Investigation

Ms. Peters attempts to enjoin an ongoing federal criminal investigation and any potential prosecution by seeking injunctive and declaratory relief in this civil action.[7]  The Federal Defendants move to dismiss on grounds that this Court lacks equitable authority to grant the requested relief.  Generally, a plaintiff cannot "use [a] civil action as a vehicle

---

[6] A court need not consider its subject matter jurisdiction if it disposes of the case on another non-merits ground.  *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation omitted)); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (approving case resolving *Younger* abstention question before addressing subject matter jurisdiction); *Spargo v. N.Y. Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (holding that federal courts need not follow "a strict 'sequencing of jurisdictional issues,' as it does not violate separation of powers principles to dismiss an action on a non-merits ground before finding subject-matter jurisdiction").

[7] While Ms. Peters contends that her allegations are not limited to a threat of prosecution, all of her alleged injuries arise from acts associated with a law enforcement investigation and potential prosecution.  Indeed, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") observed in a parallel case arising from the same events:

> While he has at times attempted to assert otherwise, Lindell's objective in this action is apparent—this litigation is a tactic to, at a minimum, interfere with and, at most, enjoin a criminal investigation and ultimately hamper any potential federal prosecution related to his, or others, involvement in the public disclosure of forensic images of Mesa County's election management servers.  Affording such relief is not only contrary to the purpose of a preliminary injunction but would open the door to a deluge of similar litigation by those under criminal investigation.

*Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023), *cert. denied*, No. 23-950, 2024 WL 1607801 (U.S. Apr. 15, 2024).

to attack a[n ongoing] criminal [investigation]," *see Manafort v. U.S. Dep't of Just.*, 311 F. Supp. 3d 22, 29 (D.D.C. 2018), and Ms. Peters fails to establish otherwise.[8]

### A.      Separation of Powers and Prosecutorial Discretion

The Constitution "vests the Executive with substantial discretion in choosing when and how to prosecute cases."  *United States v. Bolden*, 353 F.3d 870, 877 (10th Cir. 2003) (collecting cases).  "As a threshold matter, a court may not exercise any supervisory power over the Executive absent a clear basis in fact and law for doing so."  *Id.* (quotation omitted).  Prosecutorial decisions are "'particularly ill-suited to judicial review.'"  *United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  Accordingly, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties."  *Id.* (quoting *Armstrong*, 517 U.S. at 464 (alterations in original)).

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions."  *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943).  The *Younger* decision fundamentally relied on "the basic doctrine of equity jurisprudence," under which "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer

---

[8] The Supreme Court has recognized that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of" law enforcement activities as an injunction, *Samuels v. Mackell*, 401 U.S. 66, 72 (1971), and therefore "'the practical effect of (injunctive and declaratory) relief will be virtually identical,'" *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (quoting *Samuels*, 401 U.S. at 73).  Notwithstanding the difference in effect between injunctive and declaratory relief, and in the absence of any argument by the Parties to the contrary, the Court concludes that the same general equitable principles should apply here in determining whether the Court has equitable authority to grant injunctive or declaratory relief.  *See Samuels*, 401 U.S. at 73.

irreparable injury if denied equitable relief."  401 U.S. at 43–44.  *See also O'Shea*, 414 U.S. at 502 (noting that the basic doctrine of equity jurisprudence requires a "substantial and immediate irreparable injury, and the inadequacy of remedies at law").

Although *Younger* involved a civil action in federal court seeking to enjoin a state criminal proceeding—and thus raised federalism issues not implicated with respect to this instant Motion—federal courts also "traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions."  *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016).  In so doing, courts routinely have applied *Younger* to federal criminal investigations and prosecutions pursuant to separation of powers principles.  *See, e.g.*, *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987) (noting that a party cannot "circumvent federal criminal procedure" by "bringing ancillary equitable proceedings"); *In re Al-Nashiri*, 835 F.3d 110, 126–127 (D.C. Cir. 2016) (noting that "availability of legal remedies in Article III courts has historically *barred* criminal defendants from receiving pretrial equitable relief" and explaining that *Younger* applies beyond "court systems that are wholly separate from the federal judicial establishment"); *Stolt-Nielsen, S.A., v. United States*, 442 F.3d 177, 187 (3d Cir. 2006) (reversing district court's order granting injunction sought by civil plaintiffs over prosecutions in federal court, noting that injunctive relief was unavailable because the plaintiffs had "access to a federal forum post-indictment in which they may assert" defenses under Fed. R. Crim. P. 12); *Ceglia v. Zuckerberg*, 600 F. App'x 34, 37 (2d Cir. 2015) ("[A] court may civilly enjoin a criminal prosecution only 'when absolutely necessary for protection of constitutional rights,' and only 'under extraordinary circumstances, where the danger of irreparable harm is both great and immediate.'" (quoting *Younger*, 401 U.S. at 45)); *United States v. Stone*, 394

F. Supp. 3d 1, 14 (D.D.C. 2019) (denying injunctive relief "in light of traditional abstention principles, the lack of a showing of irreparable harm, and the availability of an adequate remedy at law").

Courts rarely conclude that an ongoing criminal investigation warrants judicial review prior to indictment.  A party seeking to enjoin a criminal investigation or prosecution bears a heavy burden.  *Cf. Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) (*Phelps I*). Courts applying *Younger* in the context of federal criminal investigations have described this burden as "almost insurmountable," *LaRouche v. Webster*, 566 F. Supp. 415, 417 (S.D.N.Y. 1983), and an "all but impossible task," *United States v. Shazad*, No. 2:21-cr-00477-GEKP, 2023 WL 3983794 (E.D. Pa. June 13, 2023) (collecting cases); *see also Boggs v. Bowron*, 842 F. Supp. 542, 548 (D.D.C. 1993) (noting injunctive relief involving criminal investigations carries a "particularly heavy burden").

The strong judicial policy against intervening in ongoing criminal investigations is three-fold and reinforces this Court's conclusion that it lacks authority to review Ms. Peters's substantive claim.  First, permitting pre-indictment challenges would impede the criminal investigation by "saddl[ing] the grand jury with minitrials and preliminary showings."  *United States v. Dionisio*, 410 U.S. 1, 17–18 (1973).  Second, the Federal Rules of Criminal Procedure provide a criminal defendant ample opportunity to vindicate her rights after she is indicted.  *See* Fed. R. Crim. P. 12(b).  Finally, principles of comity and separation of powers counsel courts against intervening in a criminal investigation conducted by another branch of government.  *See North v. Walsh*, 656 F. Supp. 414, 421 (D.D.C. 1987); *cf. Reps. Comm. for Freedom of the Press v. Am. Tel. & Tel. Co.*, 593 F.2d

1030, 1065 (D.C. Cir. 1978) ("Only the most extraordinary circumstances warrant anticipatory judicial involvement in criminal investigations.").

**B.     Adequacy of Remedy at Law**

Ms. Peters argues that she has no adequate remedy at law because (a) even a temporary loss of a First Amendment right constitutes an irreparable injury, and (b) she is not required to "await a subsequent judicial proceeding to vindicate her right."  [Doc. 58 at 6–7 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *Elrod v. Burns*, 427 U.S. 347, 373 (1975))].  However, Ms. Peters offers no explanation for her exclusive reliance on cases involving prior restraints.  *Cf. Roman Cath. Diocese*, 592 U.S. at 19 ("There can be no question that *the challenged restrictions*, if enforced, will cause irreparable harm.  'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (emphasis added) (quoting *Elrod*, 427 U.S. at 373); *Elrod*, 427 U.S. at 373–74 (noting in the context of prior restraints imposed by practice of patronage, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)); *see also New York Times Co.*, 403 U.S. at 714 ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.").

Elsewhere in the Response, Ms. Peters repeats her assertion that the *Dombrowski* decision stands for the proposition that "[a]n individual asserting a First Amendment claim or defense who is involved in a criminal proceeding is not required to await the disposition of that proceeding" because "the criminal proceeding itself violates the individual's First Amendment rights and allows for an injunction of the proceeding."  [Doc. 58 at 6–7 (citing

*Dombrowski*, 380 U.S. at 486, 491)].  But *Dombrowski* involved state prosecution under statutes regulating expression that were challenged as facially overbroad and vague, whereas this case involves a federal investigation unrelated to any prior restraints—in the form of speech-regulating statutes or otherwise.  A closer look at *Dombrowski* confirms that the propositions cited by Plaintiff are directed to prior restraints.  *Compare id.*, *with Dombrowski*, 380 U.S. at 486 ("When the statutes [regulating expression] also have an overbroad sweep, as is here alleged, the hazard of loss or substantial impairment of those precious rights may be critical" and "*in such cases* . . . [t]he assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded" because "*the statutes* lend themselves too readily to denial of those rights . . . ." (emphasis added)), *and Dombrowski*, 380 U.S. at 491 ("We believe that *those affected by a* [vague] *statute* [that restricts expression on its face] are entitled to be free of the burdens of defending prosecutions, however expeditious, aimed at hammering out the structure of the statute piecemeal, with no likelihood of obviating similar uncertainty for others." (emphasis added)).

This case does not involve a challenge to a prior restraint.  Thus, the foregoing cases are clearly distinguishable from this case and, in the absence of any argument by Plaintiff, the Court declines to consider their application.

***Fed. R. Crim. P. 12(b) Affords Plaintiff an Adequate Remedy***.  According to the Federal Defendants, Ms. Peters has "a plain, adequate, and complete remedy:  a motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12."  [Doc. 57 at 7].  The Response does not address the specific remedy advanced by Defendants whatsoever.  *See generally* [Doc. 58].  For the reasons set forth herein, this Court

concludes that the availability of post-indictment, pre-trial First Amendment defenses under Fed. R. Crim. P. 12 provides Ms. Peters with an adequate remedy, thereby precluding this Court's equitable jurisdiction.

Courts have rejected attempts to enjoin federal criminal prosecutions on grounds that criminal defendants have an adequate remedy in the form of a motion to dismiss any indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. *See, e.g.*, *Stone*, 394 F. Supp. 3d at 14 (holding that a motion to dismiss the indictment is "the proper avenue for defendant to mount a legal challenge to the prosecution"); *Stolt-Nielsen, S.A.*, 442 F.3d at 187 (reversing order granting injunction sought by civil plaintiffs over prosecutions in federal court for lack of jurisdiction, and noting injunctive relief was unavailable because the plaintiffs had "access to a federal forum post-indictment in which they may assert" defenses under Fed. R. Crim. P. 12); *Deaver*, 822 F.2d at 69–70 (the adversary system "afford[s] defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution"); *Blalock v. United States*, 844 F.2d 1546, 1549–50 (11th Cir. 1988) (declining to permanently enjoin grand jury investigation of plaintiff, noting that "[e]quity always has been hesitant to act if its remedy would disrupt an ongoing grand jury investigation" and the party seeking the injunction "has an adequate legal remedy in the form of a motion to dismiss his indictment, if one is handed down"); *Manafort*, 311 F. Supp. 3d. at 26 ("It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal."). *See*

*also Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989) ("The First Amendment does not protect against investigation of suspected criminal activity.").

The fact that Ms. Peters is subject to a criminal investigation, and has not been indicted by the Federal Defendants, does not change this Court's analysis. "Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure." *Deaver*, 822 F.2d at 71. The *Deaver* court explains why:

> Congress has established a comprehensive set of rules governing federal criminal prosecutions—the Federal Rules of Criminal Procedure. These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority. The final judgment rule, moreover, generally prevents defendants from bringing appeals until after conviction. We cannot allow [plaintiff] to avoid these rules—and thereby encourage a flood of disruptive civil litigation—by bringing his constitutional defense in an independent civil suit.

*Id.*

As noted above, Ms. Peters does not substantively respond to the Federal Defendants' argument that a motion to dismiss the indictment provides an adequate remedy. *See generally* [Doc. 58]. The closest Plaintiff gets to responding to the Federal Defendants' motion-to-dismiss-the-indictment argument is her challenge to its reliance on *United States v. Ambort*, 193 F.3d 1169, 1172 (10th Cir. 1999). *See* [Doc. 58 at 8]. The Federal Defendants cite *Ambort* for the proposition that "even First Amendment defenses 'are adequately safeguarded by review after any adverse final judgment.'" [Doc. 57 at 7 (quoting *Ambort*, 193 F.3d at 1172)]. Ms. Peters asserts that any reliance on *Ambort* is misplaced because the "*Ambort* defendants made no showing of a criminal proceeding intended to chill their First Amendment rights." [Doc. 58 at 8].

But a closer look at *Ambort* illustrates that its holding is more on point than Ms. Peters's argument suggests. The defendants in *Ambort* appealed the district court's order

denying their motion to dismiss an indictment charging them with various tax-related offenses on the basis that they had a First Amendment "right not to be tried."  193 F.3d at 1170.  The Tenth Circuit dismissed the appeal, finding no exception to the general rule that its jurisdiction in criminal matters is limited to appeals from final judgments—often referred to as the "final judgment rule."[9]  *Id.* at 1171–72.

On appeal, the defendants argued that the case was analogous to another Tenth Circuit case, *United States v. P.H.E., Inc.*, 965 F.2d 848, 855 (10th Cir. 1992).  The court held:

> *P.H.E.* is distinguishable.  In that case, federal prosecutors engaged in a nationwide campaign against pornography.  The *P.H.E.* holding rests upon a finding that this campaign was "designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights."  [965 F.2d] at 855.  A review of the record confirms that, at this stage, Defendants have made no such showing.  *Cf. Pleasant v. Lovell*, 974 F.2d 1222, 1233 (10th Cir. 1992) (no evidence "that [governmental] defendants' motive was to harass or disrupt the NCBA in any legal political pursuits").  Thus, no factual predicate exists for the invocation of *P.H.E.*

*Ambort*, 193 F.3d at 1172.

The Court also finds guidance from other Tenth Circuit cases involving the collateral order exception to the final judgment rule in the context of jurisdiction over criminal appeals.  For example, in *United States v. Quaintance*, 523 F.3d 1144, 1147 (10th Cir. 2008), the Tenth Circuit considered and dismissed an appeal of the district court's order denying a motion brought under Fed. R. Crim. P. 12(b).  There, the defendants argued that, because prosecution threatened to "chill the exercise of the [First Amendment] right" at issue, their First Amendment rights would be "lost" if not vindicated before trial.  *Id.* at 1146.  The court rejected defendants' argument because, "[l]ike the

---

[9] The exception is often referred to as the "collateral order exception."

defendants in *Ambort*, the defendants [in *Quaintance*] asserted only a First Amendment defense rather than a right not to be tried." *Id.* The court further noted the absence of the "unusual, perhaps unique confluence of factors" present in *P.H.E.*:

> Unlike the scenario in *United States v. P.H.E., Inc.*, where this court considered the chilling effect a prosecution had on a First Amendment right, the defendants here have not shown "substantial evidence of an extensive government campaign . . . designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights." 965 F.2d 848, 855 (10th Cir. 1992) (noting the case presented "an unusual, perhaps unique confluence of factors").

*Quaintance*, 523 F.3d at 1147.

Like the defendants in *Ambort* and *Quaintance*, Ms. Peters does not allege "an extensive government campaign designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights." And the rationale applied in *Quaintance* for limitations to the collateral order exception applies with equal force to policies against allowing a defendant (or prospective defendant) to collaterally attack a prosecution or investigation through ancillary civil proceedings. Without such limiting principles, both threaten to "swallow the final judgment rule." *Id.*; *see also Deaver*, 822 F.2d at 71 (equitable jurisdiction over ongoing criminal proceedings promises "a flood of disruptive civil litigation" that would improperly circumvent the final judgment rule); *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) (noting that exercising equitable jurisdiction to enjoin a criminal investigation in cases like this "would open the door to a deluge of similar litigation by those under criminal investigation"); *Trump*, 54 F.4th at 698 (before intervening in an ongoing investigation, courts must "ensure[] that equitable jurisdiction remains extraordinary" and "guard[] against needless judicial intrusion into the course of criminal investigations—a sphere of power committed to the executive branch").

Moreover, Ms. Peters's First Amendment retaliation claim is analogous to the First Amendment defense of vindictive prosecution expressly contemplated by the Federal Rules of Criminal Procedure.   Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) authorizes a post-indictment, pretrial motion to dismiss on grounds that the indictment is a product of "selective or vindictive prosecution."  While the term "vindictive prosecution" ordinarily arises in criminal proceedings, the Tenth Circuit has also characterized First Amendment retaliation claims like Ms. Peters's as "vindictive prosecution" defenses.  *See, e.g.*, *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996) (comparing a First Amendment claim to a "vindictive prosecution action"); *Gehl Grp. v. Koby*, 63 F.3d 1528, 1534 (10th Cir. 1995) (stating that a First Amendment claim alleging retaliatory prosecution "is essentially one of vindictive prosecution"), *overruled on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001).

Because "First Amendment defenses like those asserted here are adequately safeguarded by review after any adverse final judgment," *see Ambort*, 193 F.3d at 1172; *accord Quaintance*, 523 F.3d at 1147, the Court concludes that Ms. Peters has an adequate remedy at law.  Accordingly, her claims must be dismissed for lack of equitable jurisdiction unless Ms. Peters makes a showing of bad faith, harassment, or other extraordinary circumstances sufficient to overcome the jurisdictional bar.

### C.   Separation of Powers Concerns

In her Response to the Motion to Dismiss, Ms. Peters cites several cases for the proposition that courts have denied separation-of-powers arguments against the exercise of jurisdiction in "similar retaliation cases."  [Doc. 58 at 2 (citing *Smith v. Meese*, 821 F.2d 1484, 1491–93 (11th Cir. 1987); *Olagues v. Russoniello*, 797 F.2d 1511 (9th Cir. 1987),

*vacated as moot*, 484 U.S. 806 (1987); *Angola v. Civiletti*, 666 F.2d 1 (2d Cir. 1987))]. However, she fails to elaborate on how these cases are "similar."  Respectfully, this Court is not persuaded.

As Defendants point out in Reply, *Angola* did not involve an attempt to enjoin an ongoing criminal investigation.  *See generally* 666 F.3d 1.  Ms. Peters also appears to have overlooked key aspects of *Smith* and *Olagues*—namely, that both cases involved allegations of a *pattern* of unconstitutional investigations and prosecutions that here are lacking.  *Olagues*, 797 F.2d at 1520 (noting that "the challenged investigation targeted recently registered, foreign-born voters who requested bilingual ballots"); *Smith*, 821 F.2d at 1490 (noting allegations of a "pattern of baseless or weak prosecutions and investigations aimed at interfering with an on-going voter registration drive").

In *Smith*, the Eleventh Circuit vacated the district court's dismissal of the plaintiffs' complaint, which sought to enjoin the defendants from "following a deliberate policy of discriminatory investigations and prosecutions."   821 F.2d at 1490.  The lower court ruled that the plaintiffs' remedy for claims of selective prosecution was to defend against the prosecutions brought against them.  In so doing,

> [t]he district court missed the point of the complaint (which is certainly not a model of clarity and careful draftsmanship); instead of saying that the plaintiffs have been selectively prosecuted, or have been hurt solely by selective prosecutions, the complaint alleges that the defendants' entire prosecutorial and investigative policy (including selective prosecutions) has chilled the plaintiffs' free exercise of their political and associational rights. The injury claimed in this case is not the harm from an unconstitutional prosecution, but the broader harm from an unconstitutional pattern and policy of discriminatory prosecutions and investigations.

*Id.* at 1495.  Noting that "'the decision to prosecute is particularly ill-suited to judicial review,'" the *Smith* court emphasized the "important" distinction between claims predicated on an unconstitutional prosecution and claims predicated on an

unconstitutional *pattern* of prosecutions.  *Id.* at 1490 ("It is important to note that the plaintiffs in this case are not attempting to have the federal judiciary review individual decisions to investigate or prosecute anyone.").  Here, Ms. Peters's allegations concern her individual state prosecution and associated state and federal investigations.  And, as set forth in greater detail below, to the extent the First Amended Complaint can be construed as alleging a broader unconstitutional policy or campaign attributable to the Federal Defendants, these allegations are not entitled to the presumption of truth.

## II.   No Exceptions Otherwise Warrant Judicial Intervention

While Ms. Peters relies heavily on cases involving prosecutions under allegedly unconstitutional laws restricting expression, *see* [Doc. 58 at 4–9], and/or repeated prosecutions involving a "pattern" of unconstitutional actions by prosecutors, *see* [*id.* at 2], she fails to cite any published decision in which a court enjoined an ongoing federal criminal investigation under the circumstances presented by the facts and allegations of *this* case.

Importantly, Ms. Peters fails to meaningfully distinguish two cases cited in the Motion to Dismiss that involved dismissals for lack of equitable jurisdiction *despite* allegations of investigations intended to chill First Amendment rights—including one that arises from the same trusted build.  In support of their arguments for dismissal on equitable jurisdiction grounds, the Federal Defendants rely on *Lindell v. United States*, 639 F. Supp. 3d 853, 875 (D. Minn. 2022), *aff'd in relevant part*, 82 F.4th 614, and *LaRouche*, 566 F. Supp. at 416–17.  *See* [Doc. 57 at 4–9; Doc. 61 at 5].  In both cases, notwithstanding the assertion of First Amendment claims, the respective courts held that the plaintiff could not use a civil action to collaterally attack an ongoing federal

investigation. *See Lindell*, 639 F. Supp. 3d at 875 (request to enjoin criminal investigation into the publishing of forensic images of Mesa County election software was improper despite claim that the investigation violated plaintiff's First Amendment rights); *LaRouche*, 566 F. Supp. at 416–17, 419 (where plaintiffs argued that an investigation was "intended to chill the exercise of their First Amendment rights," the court concluding that "[a]bsent a showing of imminent and irreparable harm, it is clear that this Court cannot intervene in the investigative process").

Rather than distinguish the foregoing persuasive authority, Ms. Peters asserts, inaccurately, that *LaRouche* did not involve a First Amendment claim. [Doc. 58 at 8]. *Cf. LaRouche*, 566 F. Supp. at 416. As to *Lindell*, Plaintiff asserts only that the case "ignored binding precedent" for "several propositions"—without any elaboration as to the propositions or the binding precedent allegedly ignored. [Doc. 58 at 4 n.1].[10] Thus, Ms. Peters fails to substantively address relevant, persuasive legal authority in the Federal Defendants' Motion to Dismiss.

The Court has carefully reviewed Ms. Peters's filings in this case and finds that she fails to make the requisite showing of bad faith, harassment, or other unusual circumstance sufficient to meet her heavy burden. *See Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir.1997) (*Phelps II*) ("[I]t is the plaintiffs heavy burden to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.") (quotation omitted); *see also United States v. Rivers*, 355 F. App'x 163,

---

[10] Insofar as Ms. Peters directs the Court to the fact that a petition for writ of certiorari was filed in that case, [Doc. 58 at 4 n.1], the Court notes that the Supreme Court denied certiorari on April 15, 2024, *Lindell v. United States*, No. 23-950, 2024 WL 1607801 (U.S. Apr. 15, 2024) (denying certiorari).

166 (10th Cir. 2009) (applying the bad faith standard set forth in *Phelps I* to successive state and federal prosecutions).

In determining whether a prosecution was commenced in bad faith or to harass, courts consider whether it was (1) "frivolous or undertaken with no reasonably objective hope of success"; (2) "in retaliation for the defendant's exercise of constitutional rights"; and (3) "conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps I*, 59 F.3d at 1065; *cf. Rivers*, 355 F. App'x at 166 (applying *Phelps I* to allegedly bad faith federal prosecution). Importantly, it is a federal plaintiff's "heavy burden" to overcome the jurisdictional bar by setting forth more than mere allegations of bad faith or harassment. *Phelps I*, 59 F.3d at 1068; *see also LaRouche*, 566 F. Supp. at 417.

Ms. Peters has not met her burden here. First, as the Supreme Court has recognized, a bad faith prosecution will not ordinarily be predicated upon probable cause. *See Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *cf. LaRouche*, 566 F. Supp. at 417 (review limited to whether federal prosecutor's investigation was supported by "reasonable cause to believe that criminal activity may have taken place"); *McBeth v. Himes*, 598 F.3d 708,718 (10th Cir. 2010) ("To bridge the gap between the nonprosecuting . . . agent's motive and the prosecutor's action, . . . a plaintiff bringing a claim for retaliatory prosecution must allege . . . an absence of probable cause." (cleaned up)).

In *LaRouche*, supporters of a congressman sued for injunctive and declaratory relief from an investigation into his campaign. The investigation was triggered by a series

of newspaper stories indicating potentially illegal campaign financing activities. The plaintiffs argued that the investigation was undertaken in bad faith to chill the plaintiffs' exercise of their First Amendment rights of association. Noting that plaintiffs faced an "almost insurmountable burden", the district court emphasized that the "decision to investigate, like the decision to prosecute, is one which the Constitution places in the executive branch. The constitutional separation of powers prevents the courts from interfering with the exercise of prosecutorial discretion except under the rarest of circumstances." 566 F. Supp. at 417. Accordingly, that court limited its review to a determination of whether there was "reasonable cause to believe that criminal activity may have taken place." *Id.* at 418.

The same rationale applies here. Indeed, in its January 8 Order granting the State Motion to Dismiss, this Court found that, in light of Judge Barrett's probable cause finding on all state charges, Ms. Peters failed to carry her heavy burden of establishing that her state criminal prosecution was pursued in bad faith. [Doc. 39 at 16]. And as the Federal Defendants point out, Ms. Peters alleges that the federal investigation is based on the same, or substantially similar, facts underlying the state criminal prosecution. *See* [Doc. 57 at 6 (citing [Doc. 33 at ¶ 107])].

In *Lindell*, the Eighth Circuit held that the plaintiff failed to "meet his burden of showing the exercise of equitable jurisdiction over the return of [property] seized [during the government's investigation] was warranted." 82 F.4th at 619. In reaching this holding, the *Lindell* court, in relevant part, considered and rejected the argument that the Federal Defendants lacked probable cause:

> [A] federal magistrate judge determined there was probable cause to seize and search Lindell's cell phone . . . for records and information constituting "fruits, evidence, or instrumentalities" of three federal offenses—18 U.S.C. § 1028(a)(7) (identity theft); 18 U.S.C. § 1030(a)(5)(A) (intentional damage to a protected computer); and 18 U.S.C. § 371 (conspiracy to commit identity theft and/or cause intentional damage to a protected computer).

*Id.*  The Federal Defendants invoked the same three federal offenses in their investigation of Ms. Peters.  *See* [Doc. 33 at ¶ 111 (alleging Federal Defendants "exercised bad faith in launching the investigation of Peters" under the same three federal offenses)]; *see also* [*id.* at ¶¶ 112–14].

Next, the Court considers whether Ms. Peters has made a prima facie *evidentiary* showing that the federal investigation was brought in retaliation for the exercise of her constitutionally protected rights or was otherwise motivated by bad faith or for purposes of harassment.[11]  *See Phelps I*, 59 F.3d at 1066; *Phelps II*, 122 F.3d at 890; *see also Rivers*, 355 F. App'x at 166.  The Federal Defendants argue that Ms. Peters (a) relies on documents referenced in the First Amended Complaint that do not demonstrate any intent to suppress constitutionally protected speech, and (b) fails to allege any non-conclusory facts sufficient to connect the federal criminal investigation to any improper motivation. [Doc. 61 at 10].  This Court respectfully agrees.

Fundamentally, Ms. Peters's reliance on allegations from her First Amended Complaint, [Doc. 58 at 4–7, 9-–10 (citing [Doc. 33])], which are speculative, conclusory, or contradicted by documents properly before this Court and not otherwise supported by

---

[11] In order to prevail on such a retaliation claim, Ms. Peters must prove that the Federal Defendants' investigation is "substantially motivated as a response to [her] constitutionally protected activity."  *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

evidence, is insufficient to carry her heavy burden.[12]  *See Wilson v. Morrissey*, 527 F. App'x 742, 744 (10th Cir. 2013) (finding that bad faith exception was not met where the plaintiff "offer[ed] nothing beyond his own assertions that these prosecutions were somehow wrongful").

Next, the Court considers Ms. Peters's assertion that various documents and the federal investigation, in combination, create a First Amendment chilling effect.  [Doc. 58 at 4–5].  Several allegations cited in the Response fail to support the proposition for which they are cited.  For example, Ms. Peters asserts in her Response that the "Government seized electronic devices of Peters, Bishop, and others and retained them since 2021 while it reviewed the First Amendment privileged communications stored on those devices in violation of Peters' freedom of association."  [*Id.* at 5 (citing [Doc. 33 at ¶¶ 144, 150])].  But paragraphs 144 and 150 of the First Amended Complaint make no mention of the seizure of electronic devices or alleged privileged communications stored thereon; in fact, the First Amended Complaint contains no such allegations.  *See generally* [Doc. 33].

Plaintiff's reliance upon certain documents referenced in her First Amended Complaint to demonstrate that the criminal investigation was undertaken in retaliation for her exercise of her First Amendment rights is equally unavailing.  Some of the documents do not even address the factual allegations for which they are cited.  For instance, Ms.

---

[12]  Some of Ms. Peters's citations to her First Amended Complaint are otherwise inapposite because the cited allegations relate only to the conduct of other defendants, not the Federal Defendants, or to the investigation of other individuals.  *See, e.g.*, [Doc. 58 at 6 (citing allegations regarding Defendant Griswold); *id.* at 5–6 (citing allegations related to Defendant Rubinstein); *id.* at 4–5 (citing allegations regarding the execution of a search warrant at the residence of Sherronna Bishop)].

Peters cites "Doc. 10" for the proposition that the Federal Defendants executed search warrants on one of her associates "in a manner calculated to intimidate anyone who would associate with Ms. Peters in questioning the legitimacy of the 2020 election." [Doc. 58 at 4–5 (citing [Doc. 33 at ¶¶ 74–76][13] and [Doc. 10 at ¶¶ 24–41])]. But Document 10 is an Affidavit in Support of Arrest Warrant for Sandra M. Brown from Ms. Peters's *state* court case, dated July 11, 2022, and entirely fails to address the factual issue for which it is cited. *See* [Doc. 10].[14]

Many other documents referenced in the First Amended Complaint do not support the factual premise for which they are cited. For example, Ms. Peters's assertion that "the Government announced its intention to deter free expression through a program that treats any individual who questioned the legitimacy of the 2020 presidential election as a 'domestic violent extremist,'" [Doc. 58 at 4 (citing [Doc. 33 at ¶¶ 99–105])], is wholly unsupported by the allegations and "evidence" on which Plaintiff relies.[15]

---

[13] The cited paragraphs from the First Amended Complaint fare no better insofar as they allege only that search-and-seizure warrants were executed on the residences of Plaintiff and three other individuals as part of a "joint operation" between state and federal agents. Plaintiff's only allegation as to the way the warrants were executed is conclusory. *See* [Doc. 33 at ¶ 75 ("Those warrants were executed in a manner that involved excessive force and unnecessary damage to private property.")].

[14] This Court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), particularly when Ms. Peters has been represented by counsel throughout this action, *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

[15] Notably, Ms. Peters cites paragraphs 99 through 105 of the First Amended Complaint as her "best evidence" that the Federal Defendants' investigation was "substantially motivated as a response to her protected activity," insofar as it "was the fulfillment of the

First, none of the cited documents "announce[]" an "intention to deter free expression."  For example, the Biden Administration's National Strategy for Countering Domestic Terrorism, cited in paragraph 99 of the First Amended Complaint, includes the following introduction:

> Preserving and safeguarding constitutionally protected expression and freedom of association are national security priorities. . . .  So this Strategy is narrowly tailored to focus specifically on addressing violence and the factors that lead to violence – violence that violates the law, threatens public safety, and infringes on the free expression of ideas.

WHITE HOUSE NAT'L SEC. COUNCIL, *National Strategy for Countering Domestic Terrorism*, 2–3 (June 2021), https://www.whitehouse.gov/wp-content/uploads/2021/06/National-Strategy-for-Countering-Domestic-Terrorism.pdf.    Similar statements are repeated throughout the document.  *See, e.g.*, *id.* at 6–7 ("focusing specifically on terrorist violence and the factors that contribute to it while safeguarding constitutionally protected activity").  Indeed, Plaintiff fails to grapple with what appears to this Court to be a fatal flaw to her argument:  that the documents all concern threats posed by *violence*—and how best to combat increasingly violent domestic terrorism—while *preserving* First Amendment rights.  As the *National Strategy for Countering Domestic Terrorism* makes clear:

> [The Biden Administration] will focus specifically on violence and factors which contribute to it while respecting civil rights, civil liberties, and privacy protections, and while recognizing and maximizing the positive benefits of modern communications technologies such as the Internet.
>
> The First Amendment to the U.S. Constitution, as well as other U.S. law, protects a wide range of expression – even expression that many might disagree with or find abhorrent, and even expression that certain foreign allies and partners of the United States prohibit and criminalize under their own laws.  Ours is a distinctively American tradition of robust speech; and it is a tradition we cherish.  Violence and its incitement, however, are

---

threats made by Defendant Garland and other cabinet officers in the first months of the Biden Administration."  [Doc. 58 at 10].

generally neither tolerated nor protected; indeed, violence is generally criminal, as are incitement to imminent violence and true threats of violence.

This Strategy focuses specifically on unlawful violence that poses a threat to public safety, to national security, and to the genuine free expression of ideas – indeed, to our democracy. Our country and its laws leave wide open the space for political and ideological views and their articulation, including through peaceful protest. But they leave no room for unlawful violence. **This Strategy is designed to preserve the former while preventing the latter.**

*Id.* at 12–13 (emphasis added). Other documents on which Ms. Peters relies similarly focus on violence, as demonstrated by the following excerpts:

- "For the purposes of this assessment, the IC defines a DVE as an individual . . . who seeks to further political or social goals wholly or in part through **unlawful acts of force or violence.** This assessment does **not** evaluate the actions of individuals **engaged solely in activities protected by the First Amendment** or other rights secured by the Constitution of the United States."[16]

- "DHS is collaborating with industry partners to identify and respond to those individuals **encouraging violence and attempting to radicalize others** through spreading disinformation, conspiracy theories, and false narratives on social media and other online platforms."[17]

Second, none of the cited documents support the contention that, through efforts to combat domestic *violent* extremists, the Federal Defendants would "treat[] *any individual* who questioned the legitimacy of the 2020 presidential election as a 'domestic violent extremist.'" [Doc. 58 at 4 (emphasis added)]. Rather, the documents include definitions of domestic violent extremists expressly contrary to the position adopted by Ms. Peters. *See, e.g.*, *Domestic Violent Extremism Poses Heightened Threat in 2021*

---

[16] OFF. OF THE DIR. OF NAT'L INTEL., *Domestic Violent Extremism Poses Heightened Threat in 2021*, 3 (Mar. 1, 2021) (emphasis added), https://www.dhs.gov/sites/default/files/publications/21_0301_odni_unclass-summary-of-dve-assessment-17_march-final_508.pdf. *Cf.* [Doc. 33 at ¶¶ 101, 104].

[17] U.S. DEP'T OF HOMELAND SEC., *National Terrorism Advisory System Bulletin* (May 14, 2021, 2:00 PM) (emphasis added), https://www.dhs.gov/ntas/advisory/national-terrorism-advisory-system-bulletin-may-14-2021. *Cf.* [Doc. 33 at ¶ 103].

(defining a domestic violent extremist as "an individual . . . who seeks to further political or social goals wholly or in part through *unlawful acts of force or violence*" and excluding from scope of DVE assessment "the actions of individuals *engaged solely in activities protected by the First Amendment*" (emphasis added)); *National Terrorism Advisory System Bulletin* (DHS seeking to identify and respond to individuals "*encouraging violence*" (emphasis added)).

Third, Attorney General Merrick Garland's Report on Forensic Audits of 2020 Election (July 28, 2021) ("Report on Forensic Audits") did not threaten to prosecute individuals for pursuing election audits.   Plaintiff alleges that Defendant Garland "gratuitously announced in July 2021 that . . . the Department of Justice would investigate and prosecute individuals who pursued audits of elections that *violated federal law*." [Doc. 33 at ¶ 102]; *cf.* [*id.* at ¶ 43 (alleging that Report on Forensic Audits "committed the [DOJ] to ensure full compliance with all federal laws that govern the retention and preservation of election records" (quotation omitted))].   Plainly, the Attorney General's statement "is not the Government threatening retaliation for speech or association," but is instead "the Government threatening criminal actions against people who are alleged *to have violated federal law* in their efforts to pursue audits . . . ."   *See Lindell*, 639 F. Supp. 3d at 872 (emphasis added).

Plaintiff's unsupported, conclusory allegations are insufficient to establish unlawful motivations on the part of the Federal Defendants or any countervailing "extraordinary circumstances" to justify this Court's equitable intervention in matters of prosecutorial discretion.   Because Ms. Peters has not plausibly alleged, much less established, facts supporting bad faith, retaliatory motive, or any other "extraordinary circumstances," she

cannot use her civil suit to enjoin the federal criminal investigation and this Court must dismiss her claim for lack of equity jurisdiction.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Defendants United States of America and Merrick B. Garland's Motion to Dismiss First Amended Complaint [Doc. 57] is **GRANTED**;

(2)     Plaintiff's claims for declaratory and injunctive relief against Defendant Merrick B. Garland in his official capacity and Defendant United States are **DISMISSED WITHOUT PREJUDICE**;

(3)     The Federal Defendants are entitled to their costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

(4)     The Clerk of Court is directed to close this case.

DATED:  May 20, 2024                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge